# EXHIBIT "B"
## PART II

## R. RIGHTS AND OBLIGATIONS OF THE UNIT OWNERS AND THE BOARD OF MANAGERS

### 1. Sales and Leases of Units

Each Hotel Suite Unit Owner may sell his or her Hotel Suite Unit, or lease his or her Hotel Suite Unit, provided, however, with respect to any lease of a Hotel Suite Unit, no Hotel Suite Unit may be occupied or used other than in compliance with the Occupancy Restrictions, the Restrictive Declaration, the Declaration and the By-Laws. In the case of a sale, the Hotel Suite Unit Owner must first give the Board notice of intention to sell such Hotel Suite Unit, accompanied by a fully executed copy of the contract of sale. The Board will then have the right to purchase the Hotel Suite Unit at the same price and on the same terms as were offered in good faith by the prospective purchaser, as more specifically set forth in Article 8 of the By-Laws. If the Board does not elect to purchase the Hotel Suite Unit within 20 days after receipt of the notice, or waives such election in writing, the Hotel Suite Unit Owner will have 60 days thereafter to consummate the transaction set forth in the contract of sale with the prospective purchaser, as the case may be, as more particularly set forth in Section 8.1 of the By-Laws. In the event that such sale is not consummated, or if such contract is renegotiated or modified in any way (whether orally, in writing or by a side agreement) to be on terms less favorable to the Hotel Suite Unit Owner, the Hotel Suite Unit Owner will be required again to offer the same first to the Board. The Board may not exercise its option to purchase any Hotel Suite Unit without prior approval of a majority in interest of Unit Owners present in person or by proxy and voting at a meeting at which a quorum is present. The Board will have the right to release or waive such option without the prior approval or a vote of the Unit Owners.

In connection with the foregoing, the Board may not discriminate against any person on the basis of race, creed, color, national origin, gender, sexual orientation, age, disability, marital status or other grounds prohibited by Legal Requirements.

If a Hotel Suite Unit Owner is a corporation, any sale, assignment, transfer or other disposition of any of its stock, or if a Hotel Suite Unit Owner is a partnership, limited liability company or other entity, any sale, assignment, transfer or other disposition of any interest in such partnership, company or other entity, in each case other than through any recognized national securities exchange or "over-the-counter" market, which results in a change in the majority beneficial or legal ownership of such entity, will also subject the Unit owned by such entity to the requirement that the Unit first be offered to the Board for purchase.

Notwithstanding the foregoing, without complying with the foregoing restrictions, a Hotel Suite Unit Owner may sell or convey his or her Unit, and the owner of any interest in a Unit Owner which is a corporation, partnership, limited liability company or other entity, may sell or convey such interest, to an affiliate or one or more family members, as hereinafter defined, or convey a Unit or interest in a Unit Owner, as the case may be, by gift, or devise it by will, or have it pass by intestacy. (An "affiliate" is defined for purposes hereof as a person or entity that owns 75% or more of the legal and beneficial interest of such Unit Owner or owner of an interest in a Unit Owner, as the case may be, or an entity with respect to which such Unit Owner or owner of an interest in a Unit Owner owns 75% or more of the legal and beneficial interest, and "family member" is defined for purposes hereof as a spouse, adult child, parent or adult sibling, or a trust for the benefit of any one or more of the foregoing and/or one or more

minor children of any of the foregoing.) Article 8 of the By-Laws more specifically describes the right of first refusal and those situations in which a Unit Owner may sell or convey his or her Unit to a related or controlled individual or entity.

The restrictions upon the sale of Hotel Suite Units will not apply to Sponsor or its designee with respect to any Unsold Units, to the Board, to any Units acquired by a mortgagee in foreclosure or by deed in lieu of foreclosure, the Commercial Units, the resale of a Hotel Suite Unit to Sponsor or its designee or any subsequent sale of a Hotel Suite Unit by Sponsor or its designee.

Each conveyance of a Unit by the Owner thereof will include as part of the property to be conveyed, such Unit Owner's (i) undivided interest in the Common Elements, (ii) undivided interest in any Unit or Units acquired by the Board from Unit Owners (or the proceeds received at a foreclosure or other judicial sale of a Unit) and (iii) undivided interest in any other asset of the Condominium. No part of a Unit Owner's interest in the Common Elements may be sold, transferred or otherwise disposed of, except as part of a sale, transfer or other disposition of the Unit to which such interest appertains or as part of a sale, transfer or other disposition of the specific interest in the Common Elements by all affected Unit Owners.

A Unit may not be conveyed unless all unpaid Common Charges and liens against such Unit (other than Permitted Mortgages) are paid and satisfied at or prior to closing. In addition, the Board may establish reasonable fees for the processing of such offers for sale, which will be payable by the selling or leasing Unit Owner to the Hotel Management Company.

## 2. Use of Hotel Suite Units

Except to the extent otherwise permitted by law and approved by the Board as set forth in the By-Laws, each Hotel Suite Unit may only be used in accordance with the Zoning Resolution (i.e., transient occupancy). Without limiting any other provision of the Condominium Documents, Hotel Suite Units may not be used in fact or in effect, as part of or in furtherance of any Occupancy Plan (as defined below).

In order to facilitate the operation of a full service hotel in the Building by the Hotel Management Company and maintain a high standard of service and decor, as well as standards of appearance and maintenance generally, certain costs and expenses in connection with the Building staff (e.g., lobby attendants, superintendent and handymen) and the appearance, decoration and management of the common areas will be reimbursable to the Hotel Management Company by the Hotel Suite Unit Owners, and such amounts will be assessed and collected by the Board, for the account of the Hotel Management Company, against and from the Hotel Suite Unit Owners as Common Charges.

There is no limit on the number of Unit Owners who may purchase a Unit for investment, rather than for personal occupancy, purposes.

No animals, livestock, reptiles, insects, poultry or other animals of any kind will be kept in any Unit except usual and ordinary domestic dogs and cats capable of being transported in a handheld carrier. No pitbull dogs, Doberman dogs, or any other animals determined in the Board's or the Hotel Management Company's sole discretion to be dangerous

or a nuisance may be brought into or kept in the Building at any time. The Board will have the right to require that any pet which, in the Board's opinion, endangers the health or security of any Unit Owner or occupant of a Unit or creates a nuisance or unreasonable disturbance, be permanently removed from the Building upon seven (7) days' written notice. If the Unit Owner or occupant fails to do so, the Board may remove the pet. Any pet which, in the Board's sole discretion, presents an immediate danger to the health, safety, or property of any Unit Owner or other occupant of a Unit may be removed by the Board without prior notice to the pet's owner. Animals belonging to Unit Owners, occupants or their licensees or invitees within the Building must be kept inside a Hotel Suite Unit, and must be held by a person capable of controlling the animal when outside of the Hotel Suite Unit. Furthermore, each Unit Owner will be liable to other Unit Owners and all occupants, their guests and Invitees, for any unreasonable noise or damage to person or property caused by any animals brought to or kept in the Building by such Unit Owner, its licensees or invitees. It will be the duty and responsibility of each such Unit Owner to clean up after such animals which have deposited droppings on any public street abutting or visible from the Building and properly dispose of any animal waste. Any Unit Owner, its licensees or invitees who keeps or maintains any pet upon or in the Building will be deemed to have indemnified and agreed to hold the Board, its directors, officers, and agents, and Sponsor free and harmless from any loss, claim, or liability of any kind or character whatever arising by reason of keeping or maintaining such pet within the Building.

Generally, no Hotel Suite Unit may be used, in fact or in effect, as part of or in furtherance of an Occupancy Plan (as defined below). For purposes of the foregoing requirement, an "Occupancy Plan" means a plan for the use, occupancy, marketing, advertising or promotion of one or more Hotel Suite Units, under any timeshare or fractional plan, residence, destination or club, equity or non-equity program, interval exchange (whether the program is based on direct exchange of occupancy rights, cash payments, reward programs or other point or accrual systems) or other membership plans or arrangements through which a participant in the plan or arrangement acquires the right to use and occupy such unit(s) or a portfolio of accommodations including such unit(s). The foregoing prohibitions will not apply to Hotel Suite Units that are owned or leased by, or any Occupancy Plan that is operated by Sponsor, the Hotel Management Company or their affiliates, nor will such prohibitions apply to the rental of individual Hotel Suite Units.

As described in Special Risk #30 and in Section A(2) of the Plan above, Sponsor may subdivide the Commercial Units and//or designate any newly created Unit as a Hotel Suite Unit and/or designate up to 20% of the Hotel Suite Units as a new class of Unit (e.g., fractional/timeshare ownership) and to amend the Declaration, and the By-Laws, and/or create and record a fractional/timeshare ownership declaration with respect to such new classification of Units (including, among other things, by-laws and other related documents to address issues affecting only the administration and management of such Units and a plan of fractional/timeshare ownership with respect thereto).

## 3. General Provisions with Respect to Use

No portion of a Hotel Suite Unit, other than the entire Hotel Suite Unit, may be leased. No nuisance or offensive or unlawful use will be allowed in the Condominium or any portion thereof. All laws, zoning ordinances and regulations of governmental bodies having jurisdiction thereof, relating to any portion of the Property, will be complied with at the sole

expense of the respective Unit Owners or the Board, whoever will have the obligation to maintain or repair such portion of the Property.

The Rules and Regulations concerning the use of the Hotel Suite Units may be amended from time to time by the Board, provided that copies thereof are furnished to each Hotel Suite Unit Owner prior to the time that they become effective. Further provisions with respect to the use of the Units are set forth in the By-Laws and the Rules and Regulations. However, no amendment of the Rules and Regulations will apply to Sponsor, the Commercial Units or the Unsold Units, unless agreed to by all the owners of same who are affected by such amendment.

### 4. Mortgage of Units by Unit Owners

Each Unit Owner may mortgage his or her Unit, in accordance with the provisions of Article 7 of the By-Laws, which requires that the Board be notified in writing of the making of such mortgage and receive a conformed copy of the note and mortgage and that the Unit Owner first satisfy all unpaid liens against the Unit, other than Permitted Mortgages. Commercial Unit Owners will have the right to mortgage or otherwise encumber their Commercial Units without any restriction or limitation.

### 5. Common Charges: Determination and Assessment

At least once per year, the Board will prepare or cause to be prepared a budget setting forth its projections of the Operating Common Expenses and Overhead Common Expenses for the next fiscal year and will allocate and assess the Common Expenses among: (a) the Hotel Suite Units, and (b) the Commercial Units. The Overhead Common Expenses will be assessed to the Hotel Suite Unit Owners. The Common Charges payable by each Hotel Suite Unit Owner will be in proportion to the Hotel Suite Unit's percentage Common Interest compared to the total of all Hotel Suite Units. The Commercial Unit Owners will be assessed Common Charges to meet the share of only those Common Expenses allocated to their Commercial Units. As discussed in the footnotes to Schedule B and in Article 6 of the By-Laws, the Commercial Unit Owners' shares of Common Expenses will be limited to a share of only certain components of the Common Expenses.

The respective Common Interests of the Units have been allocated among the Units based primarily upon a comparison of the floor space, subject to the location of such space and the additional factors of relative value to other space in the Condominium, the uniqueness of the Unit, the availability of Common Elements for exclusive or shared use and the overall dimensions of the particular Unit in accordance with Section 339-i(1)(iv) of the New York State Real Property Law. The aggregate Common Interests of all of the Units equals 100%.

The Board will furnish copies of the budgets to all Unit Owners and advise each Unit Owner of the amount of Common Charges payable. Unless otherwise determined by the Board, Common Charges will be payable in monthly installments, in advance, on the first day of each month.

### 6. Collection and Lien for Non-Payment of Common Charges

Unit Owners may not exempt themselves from liability for Common Charges by waiving use of any of the Common Elements or by abandoning their Units. No Unit Owner, however, will be liable for the payment for any part of the Common Charges assessed against his or her Unit subsequent to a permissible sale, transfer or other conveyance by him or her of such Unit. In addition, as more specifically set forth in Section 6.2 of the By-Laws, a Unit Owner, by conveying his or her Unit (without consideration) to the Board and provided that such Unit is free and clear of liens and encumbrances other than the statutory lien for unpaid Common Charges (provided no amounts are owing under any such lien) and that no violation of the Declaration, the By-Laws or the Rules and Regulations then exists with respect to such Unit, may be exempt from Common Charges thereafter accruing.

On a resale of any Unit, the purchaser will be liable for the payment of any unpaid Common Charges against such Unit; except that, to the extent then permitted by applicable Legal Requirements, a Permitted Mortgagee acquiring a Hotel Suite Unit at a foreclosure sale will not be liable for a lien for the payment of Common Charges assessed against such Hotel Suite Unit for the period following the recording of the Permitted Mortgagee and prior to such Hotel Suite Unit's acquisition by the Permitted Mortgagee. However, such Permitted Mortgagee or purchaser at a foreclosure sale will be liable for payment of all Common Charges after the acquisition of title to such Unit. In the event of a foreclosure by the Board of its lien on any Unit for unpaid Common Charges, or otherwise, if the net proceeds of the foreclosure sale are insufficient for the payment of such unpaid charges, or if a Unit is acquired by a mortgagee or purchaser in foreclosure, the original Unit Owner can be sued for the unpaid balance. The Board will also have the right to assess such unpaid balance as a Common Charge among all Unit Owners.

Pursuant to Section 339-z of the Real Property Law and under the provisions of the By-Laws, the Board, on behalf of all Unit Owners, will have a lien on each Unit for unpaid Common Charges together with interest thereon, assessed against such Unit. All such liens, however, to the extent permitted by applicable Law, will be subordinate to the lien of any first Permitted Mortgage of record and to liens for real estate taxes on the particular Unit. Pursuant to Section 339-aa of the Real Property Law, any lien for unpaid Common Charges against a Unit will be effective from and after filing of a verified notice thereof in the City Register's Office until all sums secured thereby with interest accrued thereon will have been fully paid, or until six years from the date of filing (unless foreclosure of such lien is started within such six-year period), whichever will occur sooner. Such liens may be foreclosed by a suit brought in the name of the Board (acting on behalf of all Hotel Suite Unit Owners) in the same manner as the foreclosure of a mortgage on real property, or an action may be brought by the Board to recover unpaid Common Charges without foreclosing such lien. In addition, the Board may assess Unit Owners a late charge of $.04 for each dollar of Common Charges which remains unpaid for more than ten (10) days after the date when due, and interest at the rate of 1.5% per month on such unpaid amounts (plus any "late charges" theretofore collected), plus all expenses of collection. Sponsor obligates itself to cause any members of the Board related to or affiliated with Sponsor to vote in favor of filing a lien against any Unsold Units owned by Sponsor with respect to which payments of Common Charges have not been made within thirty (30) days after the date when due.

7. **Borrowing by Board**

The Board may, at any time, borrow money on behalf of the Condominium when required in connection with the operation, care, upkeep and maintenance of, or the making of repairs, replacements, restorations, additions or improvements to, or alterations or replacements of, the General Common Elements or Hotel Suite Limited Common Elements, respectively; provided, however, that: (A) except as otherwise provided in the By-Laws, the consent of at least a majority in common interest of all Unit Owners or all Hotel Suite Unit Owners, as the case may be, will be required for any borrowings for such purposes with respect to the General Common Elements or Hotel Suite Limited Common Elements, respectively, if such borrowings are in excess of $100,000 (subject to increase by the CPI Increase Factor) in total any one fiscal year or $250,000 (subject to increase by the CPI Increase Factor) in the aggregate (including borrowings from prior periods) at any one time; (B) no lien to secure repayment of any sum borrowed may be created on any Unit or its appurtenant interest in the Common Elements (except to the extent permitted by applicable law) without the prior written consent of the owner of such Unit; and (C) no Unit Owner other than the Hotel Suite Unit Owners will be liable for the repayment of any such borrowing with respect to the Hotel Suite Limited Common Elements exclusively, and the loan documentation in such case will so provide. Any such debt may be secured by future income and Common Charges in which event the Common Charges will be deemed trust funds for the purpose of paying such debt. The Board cannot secure such debt by a lien on the Common Elements without the consent of all Unit Owners.

In addition to the debt described above, the Board, without approval of the Unit Owners may, at any time, incur, or refinance, debt from time secured by a lien on any Unit acquired by the Board pursuant to the Declaration and/or By-Laws; provided, however, that no such financing or refinancing may be secured by an encumbrance or hypothecation of any portion of the Property other than the Unit to be purchased together with its appurtenant interest in the Common Elements. If any sum borrowed by the Board is not repaid by the Board, a Unit Owner who pays to the creditor such proportion thereof as his or her interest in the Common Elements bears to the interest of either all Unit Owners or all Hotel Suite Unit Owners (depending on whether the borrowing was made on behalf of all Unit Owners or only the Hotel Suite Unit Owners, respectively), in the Common Elements will be entitled to obtain from the creditor a release of any judgment or other lien which said creditor has filed or has the right to file against such Unit Owner's Unit, and all loan documentation entered into by or on behalf of the Board will specifically so provide. The dollar amounts set forth above, and all other dollar amounts referenced elsewhere in the By-Laws, will be adjusted to reflect any increase in the cost of living, as reflected by an increase in the CPI Increase Factor (as described in the By-Laws).

8. **Repairs to and Maintenance of Units and Common Elements**

Except as may otherwise be provided in the By-Laws, generally, all painting, decorating, maintenance, repairs and replacements, whether structural or non-structural, or ordinary or extraordinary: (a) in or to any Unit (other than, in general, to the Common Elements included therein) will be made by the Hotel Management Company pursuant to the Unit Management Agreement in accordance with the terms thereof at the expense of the Unit Owner, (b) in or to the General Common Elements will be made by the Board and the expense thereof will be charged to the Unit Owners as a Common Expense, or (c) in or to the Hotel Suite Limited Common Elements will be made by the Board and the expense thereof will be charged to all

Hotel Suite Unit Owners in the proportion that their respective Common Interests bear to the aggregate Common Interests of all Hotel Suite Unit Owners. Without limiting the foregoing, Unit Owners will be responsible for all maintenance, repairs and replacements of all plumbing, appliances and lighting fixtures, and heating and air conditioning units in their respective Units. Furthermore, the Hotel Management Company will be responsible for all ordinary maintenance and cleaning of the common areas; however, the costs and expenses of any repairs or replacements, structural or otherwise with respect to the common areas (unless caused by or attributable to the Hotel Management Company), will be charged to all Hotel Suite Unit Owners as a Common Expense.

Each Unit Owner will promptly comply with all Legal Requirements applicable to the Unit. No Unit Owner will use or permit the use of Hazardous Materials (as defined in the By-Laws) on, about, under, or in his or her Unit or the Property. Each Unit Owner agrees to indemnify and hold harmless the Board and each other Unit Owner from and against any and all claims or demands, including any action or proceeding brought thereon, and all costs, losses, expenses and liabilities of any kind relating thereto, including, but not limited to, costs of investigation, remedial response, and reasonable attorneys' fees and cost of suit, arising out of or resulting from any Hazardous Material used or permitted to be used by such Unit Owner on, about, under or in his or her Unit or the Property.

The washing and cleaning of interior glass surfaces of windows in the Hotel Suite Units will be the responsibility of the Board or the Hotel Management Company, as its delegee, and the cost thereof will be charged as a Common Expense to the Hotel Suite Unit Owners. The exterior glass surfaces will be washed and cleaned approximately three (3) times per calendar year and the cost thereof charged as a Common Expense to the Hotel Suite Unit Owners. The Hotel Management Company may perform additional cleaning of the exterior of the lobby windows at its own cost and expense. It is anticipated that exterior windows will, during the First Year of Condominium Operation, be cleaned at least three (3) times, weather permitting. Hotel Suite Unit Owners are prohibited from cleaning or allowing to be cleaned any window from the outside in violation of Section 202 of the New York State Labor Law, any other applicable Legal Requirements, any insurance policy or requirement or otherwise.

If any repairs or replacements to the Common Elements, whether structural or non-structural, ordinary or extraordinary, or any replacement of glass windows in any Unit because of breakage or otherwise, are necessitated by the negligence, misuse or abuse of a Unit Owner or such Unit Owner's agents, workers, guests, etc., such maintenance, repairs or replacements will be made by the Board, and any portion of the cost thereof which is not covered by the insurance maintained by the Board will be paid by such Unit Owner.

The By-Laws provide that each Unit and all portions of the Common Elements will be kept in a clean and sanitary condition, and in good working order (and all portions thereof exposed to public view will be kept in a neat appearance and in first-class condition in accordance with the high quality, character and dignity of the Building), in each case, by the Unit Owner or the Board, whichever is responsible, under the By-Laws, for the maintenance thereof. In the event that any Unit Owner fails to keep his or her Unit in such condition, the Board, at the expense of such Unit Owner, may enter such Unit and perform such acts as are necessary to cure such default. (See subsection entitled "Rights of Access" below.)

Any alteration, addition, improvement or repair in or to a Unit or any Common Elements must comply with all legal requirements.

### 9.   Alterations and Improvements of Units

No Hotel Suite Unit Owner may make any alteration, addition, improvement or repair in or to such Unit Owner's Unit or that affects the structure of the Building and/or the Building's systems without the prior written approval of the Board but, as more fully set forth in the Declaration and By-Laws, this provision does not apply to an Unsold Unit. Except as otherwise permitted in the Declaration and By-Laws, no Unit Owner may make any alteration, addition, improvement or repair in or to the Common Elements without the prior written approval of the Board. Subject to the applicable provisions of the Declaration and By-Laws and compliance with all applicable Legal Requirements, Hotel Suite Unit Owners may, without the consent of the Board, divide or combine one or more Hotel Suite Units (except that alterations, additions or improvements which would affect the structural, mechanical, electrical or plumbing elements of the Building or the exterior appearance of the Building will be subject to the approval, not to be unreasonably withheld, of the Board).

The Hotel Management Company, pursuant to the Unit Management Agreement, will have the right, but not the obligation unless required for purposes of causing the Hotel Suite Unit to comply with the Operating Standard and the other requirements of the Condominium License Agreement, to maintain, repair, alter and decorate the Hotel Suite Units at the Hotel Suite Unit Owner's sole cost and expense.

Commercial Unit Owners may make alterations, additions, improvements and repairs in or to their Commercial Units (including any decorations that are compatible with the first class character and location of the Building) without obtaining the approval of the Board, except that alterations which would affect the structural, mechanical, electrical or plumbing elements of the Building, or the exterior appearance of the Building, will be subject to the approval of the Board, which approval will not be unreasonably withheld. Notwithstanding the foregoing, all decisions regarding the repair, maintenance, operation, insurance, alteration and upkeep of the common areas, and the expenses of the Hotel Management Company in providing or facilitating the services described herein and in the By-Laws (to be provided by such Unit Owner), will be made and controlled by the Hotel Management Company and the cost thereof billed to the Board (and included in Common Expenses and collected as Common Charges) in the manner provided in the By-Laws.

In the event that a dispute arises between a Commercial Unit Owner and the Board regarding any Alteration subject to the Board's approval, such dispute will be submitted to arbitration in accordance with the By-Laws.

To the extent any alteration, addition, improvement or repair is permitted, or required to be made to a Unit, in accordance with the By-Laws and the Unit Management Agreement, the Board, at its option, may require a Hotel Suite Unit Owner to execute an agreement in form and substance satisfactory to the Board setting forth the terms and conditions under which such alteration, addition, improvement or repair may be made. Any Unit Owner making or permitting an alteration, addition, improvement or repair in its Unit is required by the By-Laws to (i) obtain such insurance as the Board or the Hotel Management Company may

require; (ii) indemnify the Board, all other Unit Owners and the Hotel Management Company against any liability arising from the work; (iii) reimburse the Board for its architectural, engineering and legal fees incurred in connection with such work; (iv) employ such architects, engineers, contractors, workers, suppliers and other laborers who are reasonably acceptable to the Board and the Hotel Management Company; and (v) perform such work in a manner which will not interfere with, or cause any labor disturbances or stoppages (which may result from, among other things, the use of non-union labor) in, the work of Sponsor, the Board, the Commercial Unit Owners, or other contractors or subcontractors employed by such parties or otherwise in the Building. In addition, no work or change by or on behalf of a Hotel Suite Unit Owner will be permitted without the consent of the Board (which consent may be withheld or conditioned in the sole discretion of such Board) if such work or change would result in a delay in obtaining a temporary or permanent Certificate of Occupancy for the Building, or any amendment to, or extension of, the same if theretofore issued.

The foregoing restrictions affecting Hotel Suite Units will not apply to Sponsor or its designee in respect of the Unsold Units or to the Commercial Units. There are no restrictions on the ability of Sponsor or its designee to alter or improve any Unsold Unit (including, without limitation, dividing, subdividing and combining one or more Unsold Units or portions of same). Additionally, to the extent permitted by applicable Legal Requirements, and subject to certain restrictions set forth in the Declaration and By-Laws, each Commercial Unit Owner will have the right with regard to its Unit, without the consent of the Board, the Hotel Management Company, other Unit Owners, or any other party, to mortgage or otherwise hypothecate its Unit, to decorate or make alterations, additions or improvements to its Unit (except that alterations, additions or improvements which would affect the structural, mechanical, electrical or plumbing elements of the Building or the exterior appearance of the Building will be subject to the approval, not to be unreasonably withheld, of the Board) and to combine or subdivide its Commercial Unit into one or more new constituted Commercial Units.

Any alteration, addition, improvement or repair in or to a Unit or any Common Elements must comply with all Legal Requirements.

## 10. **Alterations and Improvements of Common Elements**

Generally, all alterations, additions or improvements in or to the Common Elements will be made by the Board. Except as otherwise provided in the By-Laws, the costs of alterations, additions or improvements to the General Common Elements will be charged to all Unit Owners as a Common Expense; and costs attributable to the Hotel Suite Limited Common Elements will be charged to all Hotel Suite Unit Owners in the proportion that their respective Common Interests bear to the aggregate Common Interests of all Hotel Suite Unit Owners. Whenever, in the judgment of the Board, the Common Elements require additions, alterations, improvements, or repairs which are capital in nature and would cost more than $500,000 (subject to increase by the CPI Increase Factor), in the aggregate, in any calendar year, such additions, alterations, improvements or repairs may not be made unless the same have been approved by the Unit Owners owning a majority of the Common Interests of all Units liable for the cost thereof pursuant to the preceding sentence, including Sponsor, if it then owns any Unit, at a duly constituted meeting of Unit Owners and by the representatives of institutional mortgagees of Units, if any, appointed pursuant to the By-Laws (the "Mortgagee Representatives"), or unless the same is a non-capital repair or necessary to comply with applicable Legal Requirements, to

remedy any violation imposed against the Property, to comply with a proper work order of an insurer of the Property, or for the health or safety (but not the general comfort or welfare) of the residents or occupants of the Property. In any such event, the Board may, in its discretion, assess each Unit Owner liable therefor for his or her pro-rata share of the cost of such additions, alterations, or improvements, according to his or her Common Interest, as part of the Common Charges.

Any additions, alterations, or improvements costing $500,000 (subject to increase by the CPI Increase Factor) or less, in the aggregate, in any calendar year or which is a non-capital repair may be made by the Board without the approval of the Unit Owners.

In addition, as set forth in the By-Laws and to the extent permitted by applicable Legal Requirements, the Owner or Owners of any one or more Hotel Suite Units, if such Unit or Units are the only Unit or Units serviced or benefited by any Common Elements adjacent or appurtenant thereto (for example, that portion at the end of a hallway that is directly adjacent to the Unit or Units located at the end of such hallway) and not affecting access or service (including, without limitation, heating, ventilating and air-conditioning) to any other Unit or to any other portion of the Common Elements will, with the consent of both the Hotel Management Company and the Board (which consent may be granted or withheld in their sole discretion but will not be required if such Unit Owner or Owners are Sponsor or its designee), have the right to use such Common Elements exclusively (including the right, in the above example of a portion of a hallway, to enclose such portion), and no amendment to the Declaration or reallocation of Common Interests will be made by reason thereof. In such an event, however, such Unit Owners will, at their sole expense, (i) operate, maintain and repair such Common Element for so long as such Owners exercise such exclusive right of use and (ii) restore such Common Element to its original condition, reasonable wear and tear excepted, after such Owners cease to exercise such exclusive right of use.

In addition, Sponsor (or its designee or other owner of Unsold Units) and Commercial Unit Owners will have such rights as are described in the Declaration, to erect, maintain, repair and replace, or permit their tenants to erect, maintain, repair or replace, from time to time, one or more signs on the Property for the purpose of advertising the availability for sale or rental of any Unsold Unit or Commercial Unit or the operation of any business of Sponsor or that of any owner, tenant, occupant, managing agent or operator of the Commercial Units including, but not limited to, signs on the facade of the Building and on any awnings, canopies or other protrusions from the facade of the Building.

## 11. **Rights of Access**

As more fully set forth in the Declaration and By-Laws, the Board and any managing agent, manager and other persons authorized by the Board will have a right of access to any Unit for the purposes, among others, of: (a) making inspections of, or removing violations of governmental laws or regulations against, any part of the Property; (b) curing defaults under the By-Laws, Declaration or Rules and Regulations by the owner of such Unit; (c) performing maintenance, installations, alterations, repairs or replacements to the mechanical plumbing or electrical systems, or other portions of the Common Elements, located within such Unit or elsewhere in the Building; or (d) correcting any conditions originating in any Unit and threatening another Unit or any Common Element.

In the event that the Board or any Unit Owner fails to maintain or repair parts of the Building required to be maintained or repaired by the Board or Unit Owner, or in the event of any breach of the Declaration, By-Laws or Rules and Regulations, Article 6 of the By-Laws provides for certain specified rights to perform such maintenance or repairs or cure such breach.

## 12. Compliance with Terms of Declaration, By-Laws and Rules and Regulations

Each Unit Owner must strictly comply with the provisions of the Declaration, By-Laws and Rules and Regulations. Pursuant to Section 339(j) of the Condominium Act, failure so to comply will be grounds for an action for damages or injunctive relief, or both. The By-Laws, together with the initial form of Rules and Regulations, will be recorded with the Declaration in the City Register's Office.

## 13. Repair or Reconstruction after Fire or Other Casualty

In the event that the Building or any part thereof is damaged or destroyed by fire or other casualty (unless three-fourths or more of the Building is destroyed or substantially damaged and more than 75% in Common Interest of all Unit Owners do not duly and promptly resolve to proceed with repair or restoration), the Board will arrange for the prompt repair and restoration thereof (including each Unit, but excluding appliances, fixtures, furniture, furnishings and other personal property not constituting a part of such Unit).

If the insurance proceeds are insufficient to cover the cost of repairs or restoration, Unit Owners may be assessed for such deficiency. If there is a surplus of insurance proceeds, the surplus will be paid to Unit Owners in accordance with the following paragraph, except that no payment will be made to a Unit Owner until there has first been paid out of his or her share, such amounts as may be necessary to reduce unpaid liens on his or her Unit, other than Permitted Mortgages, in the order of priority of such liens.

If only the Commercial Units are destroyed or damaged by fire or other casualty and if the net insurance proceeds are insufficient to cover, or exceed, the cost of repairs and restoration, the Commercial Unit Owners will bear the entire amount of the deficit, or will receive all of the excess, as the case may be, in proportion to their respective Common Interests. Similarly, if only the Hotel Suite Units and/or the Hotel Suite Limited Common Elements are damaged or destroyed by fire or other casualty and the insurance proceeds are insufficient to cover, or exceed, the cost of repairs and restoration, the deficit or surplus, as the case may be, will be shared by all Hotel Suite Unit Owners in proportion to their respective Common Interests. If said damage or destruction by fire or other casualty affects the General Common Elements, or any combination of the Commercial Unit, the Hotel Suite Units, then any deficit or surplus in insurance proceeds will be borne or shared by all Unit Owners, or by the Unit Owners of the affected portions of the Building, as appropriate, in proportion to their respective Common Interests.

In the event of a loss for which the proceeds of all policies of physical damage insurance maintained by the Board exceed $2,500,000, the proceeds will be payable to a New York City bank or trust company designated by the Board as insurance trustee pursuant to the

Trump Park Avenue
502 Park Avenue
New York, New York                    CD020133

The Residences at Trump National Golf Club
339 Pine Road
Briarcliff Manor, New York            CD000154

Trump Parc East
100 Central Park South
New York, New York                    CD970005

The Secretary of State has been designated to receive service of process for Sponsor.

There have been no prior felony convictions of Sponsor, or any principals of Sponsor; and no prior convictions, injunctions or judgments against Sponsor, or any principals of Sponsor that may be material to the Plan or an offering of securities generally, that occurred within 15 years prior to the submission of the Plan.

Except as set forth above, Sponsor, its principals and affiliated entities have not been involved in any cooperative or condominium offerings in the State of New York within the past five years and do not own 10% or more of the Unsold Units or unsold shares in any building.

## 2. Attorneys for Sponsor

Sponsor's Counsel: Sponsor has retained the law firm of Kramer Levin Naftalis & Frankel LLP, having an office at 1177 Avenue of the Americas, New York, New York 10036, to represent it in connection with the Plan. Jay A. Neveloff supervised the preparation of the Plan, the Declaration, the By-Laws and the forms of Agreement, Unit Deed and Unit Power of Attorney. Sponsor's Counsel has also rendered opinions with respect to the possible availability of income tax deductions to Purchasers of Hotel Suite Units.

Sponsor's Closing Counsel: Sponsor has also retained Akerman Senterfitt LLP, having an office at 335 Madison Avenue, New York, New York 10017, to serve as Escrow Agent under the Agreements and will represent Sponsor in connection with the closings of the Hotel Suite Units.

## 3. Selling Agent

The Selling Agent for the project is, collectively, Core Group Marketing LLC and Prodigy International NYC, LLC, as co-exclusive marketing and sales agents.

There have been no prior felony convictions of any party constituting Selling Agent, or any principals of any party constituting Selling Agent; and no prior convictions,

injunctions or judgments against any party constituting Selling Agent, or any principals of any party constituting Selling Agent that may be material to the Plan or an offering of securities generally, that occurred within 15 years prior to the submission of the Plan.

### 4. Budget Expert

Warnick and Company, LLC, having an address at 725 Fifth Avenue, New York, New York 10022, has been engaged as the budget expert. The budget expert has no financial interest in the Property, in Sponsor, in the Hotel Management Company, or in any other party interested in this transaction, except for its fees for services rendered in connection with the same.

### 5. Real Estate Tax Counsel

Marcus & Pollack LLP, having an address at 708 Third Avenue, New York, New York 10017, has been engaged as real estate tax counsel in connection with the Plan. The firm prepared a forecast of the assessed valuation of the Units following construction and submission of the Property to a condominium regime of ownership that was used in preparing the provisions of Schedule A and other disclosures in the Plan regarding projected real estate taxes. The forecast was prepared by Joel R. Marcus, Esq., member of the firm. The real estate tax counsel has no financial interest in the Property, in Sponsor, in the Hotel Management Company, or in any other party interested in this transaction, except for its fees for services rendered in connection with the same.

### 6. Construction Professionals

Handel Architects, LLP, having an office at 150 Varick Street, 8th Floor, New York, New York 10013, is the architect of record for the Building ("Architect"). The Architect prepared Floor Plans of Units set forth in Part II of the Plan and Floor Plans which will be filed with the New York City Real Property Assessment Department required in order to create the Condominium. The Architect has rendered its report with respect to the proposed Building and a Certification which is set forth in Part II of the Plan. The Architect has been providing architectural services for many years. The Architect has participated in the following projects: Ritz-Carlton Georgetown Hotel, Washington, D.C., St. Moritz Hotel and Residences – New York, Four Seasons Hotel – San Francisco, Lincoln Square Condominium, New York, Four Seasons Hotel, Miami, EOS Orchestra Space, New York, 505 Greenwich Street, New York and 255 Hudson Street, New York.

Cosentini Associates, having an office at 2 Penn Plaza, New York, New York 10121, is the mechanical, electrical, fire protection and plumbing engineer for the Building and prepared the mechanical report for the Building included in the Description of Property and Proposed Building and the estimates of utilities consumption used in the preparation of Schedule B, "Projected Budget for First Year of Condominium Operation."

DeSimone Consulting Engineers PLLC, having an office at 18 West 18th Street, 10th Floor, New York, New York 10010, is the structural engineer for the construction work at the Property.

## AA. GENERAL

Except as set forth herein, there are no lawsuits, administrative proceedings or other proceedings, the outcome of which may materially affect the offering, the Property, Sponsor's capacity to perform all of its obligations under the Plan, the Condominium or the operation of the Condominium.

To the best of Sponsor's knowledge, the Property has not been the subject of any prior cooperative or condominium offerings. No preliminary binding agreements have been entered into and no money has been collected from prospective Purchasers.

Sponsor and the Selling Agent each hereby represent that it will not discriminate against any person on the basis of race, creed, color, national origin, gender, sexual orientation, age, disability, marital status or other grounds prohibited by Legal Requirements.

The Plan does not knowingly omit any material fact or knowingly contain any untrue statement of any material fact. Sponsor believes that the Plan contains a fair summary of the material provisions of the documents referred to in the Plan, including those documents contained in Part II of the Plan. Exact copies are contained in Part II of the Plan of the form of Declaration, form of By-Laws, form of Agreement, form of Unit Deed, form of Unit Power of Attorney and other documents. Statements made in Part I of the Plan as to the provisions of such documents or any other document referred to herein, copies of which are on file with Sponsor, are necessarily not complete. Each such statement is qualified in all respects by the contents of such documents and, in the case of any such documents executed by or with the written consent of a Purchaser pursuant to the Plan, any rider or separate agreement changing or adding provisions to such document.

No party other than any Purchaser will have any right or benefit herein or herefrom, including, without limitation, the right to insist upon or enforce against Sponsor the performance of all or any of Sponsor's obligations hereunder and no party other than any Purchaser will be deemed to have received any benefit as a result of any of the provisions of the Plan.

Sponsor reserves the right, from time to time prior to the First Closing, to substantially revise the terms and conditions upon which the Units are to be sold, including changes affecting the rights, obligations and liabilities of Sponsor and/or prospective Purchasers under the Plan. However, no such change with respect to any Unit for which an Agreement is then in effect may be made without the consent of the Purchaser thereunder. All substantive or material revisions will be contained in a duly filed amendment to the Plan. If there is a material change that adversely affects any Purchasers, Sponsor will grant such Purchasers a right to rescind their respective Agreements by written notice to Sponsor given within fifteen (15) days after the date of presentation of such amendment. In such event, Sponsor will direct the Escrow Agent to return the Deposit of any Purchasers who duly rescind their Agreements.

No person has been authorized to make any statement or representation or furnish any information not expressly contained herein. Any information, data, or representations not contained herein or in the documents and exhibits referred to herein must not be relied upon. The Plan may not be changed or modified orally.

## BB. SPONSOR'S STATEMENT OF PROPERTY AND PROPOSED BUILDING

Sponsor hereby adopts the Description of Property and Proposed Building set forth as Exhibit 4 in Part II of the Plan and represents that it has no knowledge of any material defects or need for major repairs to the Property.

SPONSOR:

BAYROCK/SAPIR ORGANIZATION LLC

## SCHEDULE B

## PERMITTED ENCUMBRANCES

1.     Building and zoning laws and other regulations, resolutions and ordinances (including, but not limited to, any variances or use regulations) and any amendments thereto now or hereafter adopted.

2.     The terms, burdens, covenants, restrictions, conditions, easements and rules and regulations, all as set forth in the Declaration, the Condominium By-Laws (and the Rules and Regulations made thereunder), the By-Laws (and the Rules and Regulations made thereunder), the Power of Attorney from Purchaser to the Board and the Floor Plans, all as may be amended from time to time.

3.     Any declaration or other instrument affecting the Property which Sponsor deems necessary or appropriate to comply with any Law, ordinance, regulation, zoning resolution or requirement of the Department of Buildings, the City Planning Commission, the Board of Standards and Appeals, or any other public authority, applicable to the demolition, construction, alteration, repair or restoration of the Building or any portion or element thereof.

4.     Consents by Sponsor or any former owner of the Land for the erection of any structure or structures on, under or above any street or streets on which the Property may abut.

5.     Any easement or right of use in favor of any utility company for construction, use, maintenance or repair of utility lines, wires, terminal boxes, mains, pipes, cables, conduits, poles, connections and other equipment and facilities on, under and across the Property.

6.     Any easement or right of use required by Sponsor or its designee to obtain a temporary, permanent or amended Certificate of Occupancy for the Building or any part of same.

7.     Any encumbrance as to which the Title Company (or the title insurance company that insures Purchaser's title to the Unit) would be willing to insure, at its regular rates and without additional premium, in a fee policy issued by it to Purchaser, that such encumbrance will not be collected out of or enforced against the Unit if it is a lien, or that such encumbrance is not a blanket lien encumbering the Common Elements.

8.     Any other encumbrance, covenant, easement, agreement, or restriction against the Property other than a mortgage or other lien for the payment of money, which does not prevent the use of the Unit for its permitted purposes.

9.     Revocability of licenses for vault space, if any, under the sidewalks and streets and the lien of any unpaid vault tax.

10.     Encroachments of trim, copings, retaining walls, stoops, bay windows, balconies, sidewalk elevators, fences, fire escapes, cornices, foundations, footings, chutes, fuel oil lines, drainage and standpipes, and similar projections, if any, on, over or under the Property or the streets, sidewalks or premises abutting the Property, and the rights of governmental authorities to require the removal of any

such projections, and variations between record lines of the Property and retaining walls and the like, if any.

11.    Leases and service, maintenance, employment, concessionaire and license agreements, if any, of other Units or portions of the Common Elements.

12.    The lien of any unpaid Common Charges, real estate tax, water charge or sewer rent, provided the same are adjusted at the closing of title.

13.    The lien of any unpaid assessment payable in installments (other than assessments levied by the Board), except that Sponsor shall pay all such assessments due prior to the Closing Date and Purchaser shall pay all assessments due from and after such date (however, the then current installment shall be adjusted at the closing of title).

14.    Franchise taxes and New York City Business Corporation taxes of any corporation in the chain of title, provided that the Title Company would be willing in a fee policy issued by it to Purchaser, to insure that such taxes will not be collected out of the Unit.

15.    Standard printed exceptions contained in the form of fee title insurance policy then issued by the Title Company (or the title insurance company insuring Purchaser's title to the Unit).

16.    Any Certificate of Occupancy for the Building, so long as the same permits, or does not prohibit, use of the Unit for its stated purposes.

17.    Any lease or other occupancy agreement for the Unit made by Sponsor and Purchaser.

18.    Any violations against the Property (other than the Unit) that are the obligation of the Board or another Unit Owner to correct.

19.    Survey (the "Existing Survey") made by Vollmer Associates LLP dated April 23, 2004 and last updated March 6, 2007.

21.    Any state of facts which an update of the Existing Survey or any other accurate survey or a personal inspection of the Property and the Unit would show; provided such state of facts would not prevent the use of the Unit for its stated purposes; although any encroachment of a portion of the Unit structure upon another Unit or Units or upon the Common Elements may remain undisturbed as long as the same shall stand.

22.    All other covenants, restrictions and matters of record, including the Restrictive Declaration.

23.    Covenants and Restrictions contained in deed recorded July 9, 1853 in Liber 636 Cp. 418.

24.    Declaration of Zoning Lot Restrictions made among Bayrock/Sapir Organization LLC, f/k/a Bayrock/Zar Spring LLC, the Board of Managers of 145 Americas Condominium and Peter Moore dated as of February 3, 2006 and recorded May 3, 2006 as CRFN 2006000246975.

25.     Zoning Lot Development and Easement Agreement made among Bayrock/Sapir Organization LLC, f/k/a Bayrock/Zar Spring LLC, 145 Americas Condominium, acting through its Board of Managers, and Peter Moore dated as of February 3, 2006 and recorded May 3, 2006 as CRFN 2006000246976.

26.     Zoning Lot Description and Ownership Statement made by 246 Spring Street LLC dated December 2, 2004 and recorded December 14, 2004 as CRFN 2004000770645.

27.     Zoning Lot Certification dated October 8, 2004 and recorded December 14, 2004 as CRFN 2004000770644.

28.     Zoning Lot Certification dated February 3, 2006 and recorded May 3, 2006 as CRFN 2006000246974.

29.     Waiver of Execution of Declaration of Zoning Lot Restrictions made by Fortress Credit Opportunities I LP, dated as of February 3, 2006 and recorded May 3, 2006 as CRFN 2006000246977.

30.     Notice of Certification (re: Urban Plaza) made by 246 Spring Street, LLC dated as of May 18, 2005 and recorded June 13, 2006 as CRFN 2006000332139.

31.     Notice of Certification made by Bayrock/Sapir Organization, LLC and Peter Moore, as authorized representative of the Board of Managers of the 145 Americas Condominium, dated as of August 7, 2006 and recorded August 23, 2006 as CRFN 2006000476797.

32.     Covenants and Restrictions contained in deed recorded July 9, 1853 in Liber 636 Cp. 418.

33.     Declaration of Zoning Lot Restrictions made among Bayrock/Sapir Organization LLC, f/k/a Bayrock/Zar Spring LLC, the Board of Managers of 145 Americas Condominium and Peter Moore dated as of February 3, 2006 and recorded May 3, 2006 as CRFN 2006000246975.

34.     Zoning Lot Development and Easement Agreement made among Bayrock/Sapir Organization LLC, f/k/a Bayrock/Zar Spring LLC, 145 Americas Condominium, acting through its Board of Managers, and Peter Moore dated as of February 3, 2006 and recorded May 3, 2006 as CRFN 2006000246976.

35.     Zoning Lot Description and Ownership Statement made by 246 Spring Street LLC dated December 2, 2004 and recorded December 14, 2004 as CRFN 2004000770645.

36.     Zoning Lot Certification dated October 8, 2004 and recorded December 14, 2004 as CRFN 2004000770644.

37.     Zoning Lot Certification dated February 3, 2006 and recorded May 3, 2006 as CRFN 2006000246974.

38.     Waiver of Execution of Declaration of Zoning Lot Restrictions made by Fortress Credit Opportunities I LP, dated as of February 3, 2006 and recorded May 3, 2006 as CRFN 2006000246977.

39.     Zoning Lot Description and Ownership Statement made by Bayrock/Sapir Organization LLC dated April 27, 2007 and recorded May 3, 2007 as CRFN 2007000230105.

40.     Notice of Certification (re: Urban Plaza) made by 246 Spring Street, LLC dated as of May 18, 2005 and recorded June 13, 2006 as CRFN 2006000332139.

41.     Notice of Certification made by Bayrock/Sapir Organization, LLC and Peter Moore, as authorized representative of the Board of Managers of the 145 Americas Condominium, dated as of August 7, 2006 and recorded August 23, 2006 as CRFN 2006000476797.

42.     Restrictive Declaration made by Bayrock/Sapir Organization, LLC dated as of April 26, 2007 and recorded May 4, 2007 as CRFN 2007000233248.

## EXHIBIT A

### PURCHASER'S EXPRESS ACKNOWLEDGEMENT
### REGARDING CERTAIN MATTERS AND DISCLAIMERS

Purchaser:

Hotel Suite Unit:

Date: _____, 20___

In connection with the execution of an Agreement to purchase the above-referenced Hotel Suite Unit in the Trump SoHo Hotel Condominium New York, I/we ("Purchaser") hereby acknowledge, for the benefit of Bayrock/Sapir Organization LLC ("Sponsor") and all parent, subsidiary and affiliate entities thereof, and at the closing of title, I/we hereby undertake to further confirm my/our acknowledgement that:

1.     The Agreement is being (and was) entered into by Purchaser without reliance upon any representations by Seller or any of its agents, employees or representatives concerning potential economic or tax benefits to be derived from purchasing the Hotel Suite Unit, including appreciation in value, rental income and depreciation.

2.     No statements or representations have been made by Seller, or any of its agents, employees or representatives with respect to the ability or willingness of Seller or its affiliates to assist Purchaser in financing, renting or selling the Hotel Suite Unit, any economic or tax benefits to be derived from any managerial efforts of a third party as a result of renting the Hotel Suite Unit or other units, or any economic or tax benefits to be derived from ownership of the Hotel Suite Unit.

3.     Purchaser shall neither have nor acquire, by virtue of the purchase of a Hotel Suite Unit or otherwise, any rights to the Trump Mark (as defined in the Plan) or any other intellectual property pertaining to the Condominium.

4.     Sponsor has made no representation or warranty that the Hotel Suite Unit will be or will continue to be owned or operated as a hotel (as described in the Plan) or as Trump SoHo Hotel Condominium New York or otherwise under the Trump hotel brand or any other hotel brand, or that the current Hotel Management Company, if any, will continue to be the manager.

5.     Use of the Hotel Suite Unit shall be subject to the Occupancy Restrictions (as defined in the Plan) and the terms and conditions of the Restrictive Declaration (as defined in the Plan).

6.     The right to submit the Hotel Suite Unit to any Occupancy Plan (as defined in the Plan) shall extend only to Sponsor and shall specifically not be available to Purchaser, other owners of Hotel Suite Units, the Board, any Commercial Unit Owner, including their successors, or assigns, except with the prior written consent of Sponsor.

7.     Sponsor intends to submit (or has submitted for review) to the Department of Law, an amendment to the Plan providing for a reduction in the number of Hotel Suite Units in the Condominium to 400 Hotel Suite Units, changes in the floor plans and the addition of a new commercial unit as well as certain non-

material revisions. Such amendment will cause the square footage and the Common Interest (and therefore the Common Charges) of certain Hotel Suite Units in the Condominium to increase (or decrease). We/I acknowledge that a copy of the new floor plan, if any, for the Hotel Suite Unit is attached hereto as Exhibit A-1, and that the amendment will reflect an increase (decrease) in the square footage, the Common Interest of the Hotel Suite Unit of _____ square feet and _____ %, respectively. We/I further acknowledge that such amendment shall not give rise to any claim of rescission or constitute a material change to the terms of the offering. Sponsor shall, in accordance with applicable regulations, provide you with a copy of such amendment as and when the same is accepted for filing by the Department of Law.

**PURCHASER:**

[Purchaser Signature Block]

# EXHIBIT "B-2"

# DECLARATION

Establishing a Plan for Condominium Ownership
of the Premises known as 246 Spring Street, New York, New York
Pursuant to Article 9-B of the Real Property
Law of the State of New York

Name

### TRUMP SOHO HOTEL CONDOMINIUM NEW YORK

Declarant

### BAYROCK/SAPIR ORGANIZATION LLC

Date of Declaration

_____, 200__

Block 491

Lots 34 and 36

Borough of Manhattan

When Recorded, Return to:

Kramer Levin Naftalis & Frankel LLP
Attorneys for Declarant
1177 Avenue of the Americas
New York, New York 10036
Attention: Jay A. Neveloff, Esq.

# INDEX TO DECLARATION

**Page**

ARTICLE 1 SUBMISSION OF THE PROPERTY; BY-LAWS ................................................... 1
ARTICLE 2 THE LAND ................................................................................................ 1
ARTICLE 3 THE PROPERTY ........................................................................................ 2
ARTICLE 4 THE BUILDING ......................................................................................... 3
ARTICLE 5 THE UNITS ............................................................................................... 3
ARTICLE 6 DIMENSIONS OF UNITS ............................................................................ 3
ARTICLE 7 COMMON ELEMENTS ............................................................................... 4
ARTICLE 8 USE OF UNITS AND COMMON ELEMENTS .................................................. 8
ARTICLE 9 CHANGES IN UNSOLD HOTEL SUITE UNITS ............................................. 10
ARTICLE 10 CHANGES BY THE COMMERCIAL UNIT OWNER ..................................... 11
ARTICLE 11 PERSON TO RECEIVE SERVICE ............................................................. 12
ARTICLE 12 DETERMINATION OF PERCENTAGE INTERESTS IN COMMON
            ELEMENTS ........................................................................................... 13
ARTICLE 13 ENCROACHMENTS ............................................................................... 13
ARTICLE 14 FACILITIES AND ALL OTHER COMMON ELEMENTS ................................ 13
ARTICLE 15 EASEMENTS ......................................................................................... 14
ARTICLE 16 POWER OF ATTORNEY TO THE BOARD .................................................. 17
ARTICLE 17 ACQUISITIONS OF UNITS BY THE BOARD .............................................. 18
ARTICLE 18 COVENANTS RUNNING WITH THE LAND ............................................... 19
ARTICLE 19 AMENDMENTS OF DECLARATION ......................................................... 20
ARTICLE 20 TERMINATION OF CONDOMINIUM ........................................................ 20
ARTICLE 21 WAIVER ............................................................................................... 21
ARTICLE 22 CAPTIONS ............................................................................................ 21
ARTICLE 23 CERTAIN REFERENCES ......................................................................... 21
ARTICLE 24 SEVERABILITY ..................................................................................... 21
ARTICLE 25 COVENANT OF FURTHER ASSURANCES ................................................. 22
ARTICLE 26 NAME OF CONDOMINIUM AND BUILDING ............................................. 22
ARTICLE 27 SUCCESSORS AND ASSIGNS ................................................................. 24

Schedule A — The Land ........................................................................................... 24
Schedule B — Description of Units ............................................................................ 25

Exhibit A – By-Laws ............................................................................................... 26

# DECLARATION

## OF

## TRUMP SOHO HOTEL CONDOMINIUM NEW YORK

### (Pursuant to Article 9-B of the Real Property Law
### of the State of New York)

BAYROCK/SAPIR ORGANIZATION LLC, a Delaware limited liability company, having an office at c/o Bayrock Group L.L.C., 725 Fifth Avenue, New York, New York 10022 ("Declarant"), does hereby declare as follows:

## ARTICLE 1

## SUBMISSION OF THE PROPERTY; BY-LAWS

1.1 Submission of Property. Declarant hereby submits the Land and Building (each as hereinafter defined), all other improvements erected and to be erected thereon, all easements, rights and appurtenances belonging thereto and all other property, real, personal or mixed, intended for use in connection therewith (collectively, the "Property"), to the provisions of Article 9-B of the Real Property Law of the State of New York (as the same may be amended from time to time, the "New York Condominium Act") and pursuant thereto does hereby establish a condominium to be known (subject to the provisions of this Declaration) as "Trump SoHo Hotel Condominium New York" (the "Condominium").

1.2 By-Laws. Annexed to this Declaration as Exhibit A and made a part hereof are the by-laws of Trump SoHo Hotel Condominium New York which set forth detailed provisions governing the general operation, use and occupancy of the Condominium (said by-laws, as they may be amended from time to time in accordance with the provisions hereof and thereof governing amendments, are hereinafter referred to as the "By-Laws"). All capitalized terms which are not separately defined herein shall have the meanings given to such terms in the By-Laws.

1.3 Conflicting Provisions. In the event of a conflict between the terms and provisions of this Declaration, on the one hand, and the terms and provisions of any of the By-Laws, on the other hand, the terms of this Declaration shall in all events govern.

## ARTICLE 2

## THE LAND

Included in the Property described in Article 1 is all that certain tract, plot, piece and parcel of land described in Schedule A annexed hereto and made a part hereof (the "Land"), situate, lying and being in the City, County and State of New York. The Land is owned, as of

the date hereof, by Declarant in fee simple absolute and has an area of approximately 24,727 square feet.

## ARTICLE 3

## THE PROPERTY

 3.1 General. Included in the Property described in Article 1 is a building (the "Building") containing, in addition to the General Common Elements (hereinafter described):

 (a) 413 individual hotel suite units (each a "Hotel Suite Unit" and collectively the "Hotel Suite Units") designated as "Hotel Suite Units – Tax Lot Nos. _____" on the Floor Plans and located on portions of Floors 8 through 45 of the Building;

 (b) a single unit identified as the "Antenna Unit" and comprised of the areas designated as "Antenna Unit – Tax Lot No. _____" on the Floor Plans and located on portions of the Cellar Floor of the Building;

 (c) a single unit identified as the "Restaurant Unit" and comprised of the areas designated as "Restaurant Unit – Tax Lot No. _____" on the Floor Plans and located on portions of the Ground Floor and Floor 2 of the Building;

 (d) a single unit designated as the "Lobby Bar Unit" and comprised of the areas identified as "Lobby Bar Unit – Tax Lot No. _____" on the Floor Plans and located on portions of the Ground Floor of the Building;

 (e) a single unit designated as the "Retail Unit" and comprised of the areas identified as "Retail Unit – Tax Lot No. _____" on the Floor Plans and located on portions of the Ground Floor of the Building;

 (f) a single unit designated as the "Accessory Unit" and comprised of the areas identified as "Accessory Unit – Tax Lot No. _____" on the Floor Plans and located on portions of the Floor 3 of the Building;

 (g) a single unit designated as the "Pool Bar Unit" and comprised of the areas identified as "Pool Bar Unit – Tax Lot No. _____" on the Floor Plans and located on portions of the Floor 5 of the Building; and

 (h) a single unit designated as the "Spa Unit" and comprised of the areas identified as "Spa Unit – Tax Lot No. _____" on the Floor Plans and located on portions of the Floor 5 of the Building.

 3.2 Unit and Unit Owners. The owner of a Hotel Suite Unit is herein called a "Hotel Suite Unit Owner", and the owners of all such Hotel Suite Units are herein collectively called the "Hotel Suite Unit Owners". The owner of the Antenna Unit is herein called the "Antenna Unit Owner," the owner of the Restaurant Unit is herein called the "Restaurant Unit Owner," the owner of the Lobby Bar Unit is herein called the "Lobby Bar Unit Owner," the owner of the Accessory Unit is herein called the "Accessory Unit Owner," the owner of the Pool

Bar Unit is herein called the "Pool Bar Unit Owner," the owner of the Spa Unit is herein called the "Spa Unit Owner." The Antenna Unit, the Restaurant Unit, the Lobby Bar Unit, the Retail Unit, the Accessory Unit, the Pool Bar Unit and the Spa Unit are referred to collectively as the "Commercial Units", and the owners thereof, collectively, as the "Commercial Unit Owners."

   3.3  Street Address The overall street address of the Property is 246 Spring Street, New York, New York 10013.

## ARTICLE 4

## THE BUILDING

   The Building is classified as being of fireproof construction and is constructed of a reinforced concrete foundation supported by reinforced concrete with steel piles driven to refusal in rock and a reinforced concrete superstructure with concrete columns and floor slabs. A combination of aluminum-framed storefronts and masonry supported metal panels will enclose the base floors (Ground Floor through Floor 5) and a unitized aluminum curtain wall system will enclose the tower (Floor 8 through Floor 45).

## ARTICLE 5

## THE UNITS

   5.1  The location of each Unit is shown on and is governed by the floor plans of the Building certified by Handel Architects LLP intended to be filed in the New York County office of the Register of the City of New York (the "City Register's Office") simultaneously with the recording of this Declaration (as the same may be amended from time to time, the "Floor Plans"). Schedule B annexed hereto and made a part hereof sets forth the following supplementary data with respect to each Unit necessary for the further proper identification thereof: Unit designation; tax lot number; direction in which each Unit faces; approximate square foot area; number of rooms; the portions of the Common Elements (as hereinafter defined) to which the Unit has immediate access; and the proportionate undivided interest in fee simple absolute (expressed as a percentage) in the Common Elements (the "Common Interest") appurtenant to such Unit.

## ARTICLE 6

## DIMENSIONS OF UNITS

   The approximate (i.e., within reasonable tolerances) square foot area of each Unit is measured horizontally on each floor from the exterior side of the glass or the exterior walls, at the Building line and/or Property line to the midpoint of the interior walls and partitions separating one Unit from another Unit, or the midpoint of the interior walls and partitions separating a Unit from public corridors, stairs, elevators and other mechanical equipment spaces or any Common Elements. Columns and mechanical pipes (whether along the perimeter or within the Unit) are not deducted from the square foot area of the Units. Outdoor floor areas of the terrace appurtenant to a Unit are not included in the Unit's indoor floor area. Measured

vertically, each Unit will consist of the volume from the top of the floor slab below (located under the finished flooring and sub-floor materials) to the underside of the floor slab above. The method of measurement is applicable to all Units. The Board, Declarant and Declarant's designee will each have an easement to install and maintain pipes, conduits, wires, ducts and other facilities in the space between the underside of each such floor slab and the top surface of each Unit's finished ceiling, without any need to obtain the consent of any Unit Owner with respect to the same.

## ARTICLE 7

## COMMON ELEMENTS

7.1    The Common Elements of the Condominium (the "Common Elements") consist of the entire Property including the Land and all parts of the Building and improvements thereon other than the Units. The Common Elements include, but are not limited to, those rooms, areas, corridors, spaces and other parts of the Building and all facilities[*] located or contained therein for the common use of the Units and the Unit Owners (except for the Limited Common Elements, as described below) or which are necessary or convenient for the existence, maintenance, operation or safety of the Property. The Common Elements are comprised of the General Common Elements, the Hotel Suite Limited Common Elements and the Commercial Limited Common Elements, all of which are described in Sections 7.2 through 7.11 of this Article 7, respectively, subject in all events however to any specific designation for any portion of the Property as may be reflected on the Floor Plans (whether or not consistent with the general descriptions contained in this Article).

7.2    The General Common Elements include those portions of the Building that are designated as "General Common Elements" on the Floor Plans and, to the extent not specifically identified as part of the General Common Elements on the Floor Plans, all other parts of the Property (other than those areas and items specifically identified as part of a Unit and/or the Limited Common Elements) the common use of which is necessary or convenient for

---

[*]    As used herein, the words "facility" and "facilities" include, but are not limited to, the following fixtures, apparatus, equipment, personalty, appurtenances, installations, systems and other items (grouped more or less functionally) which are set forth only for the purpose of illustrating the broad scope of those terms: convector, radiator, heater, convertor, heat exchanger, mechanism, device, machinery, induction unit, fan coil unit, motor, pump, control, tank or tank assembly, condenser, compressor, fan, damper, blower, thermostat, thermometer, coil, vent, sensor, shut-off valve or other valve, gong, panel, receptacle, outlet, relay, alarm, sprinkler head, electric distribution facility, wiring, wireway, switch, switchboard, circuit breaker, transformer, fitting, siamese connection, hose, plumbing fixture, lighting fixture, other fixture, bulb, sign, telephone, meter, meter assembly, scaffolding, piping, line duct, conduit, cable, riser, main, shaft, soffit, pipe, pit, flue, lock or other hardware, rack, screen, strainer, trap, drain, catch basin, leader, filter, incinerator, canopy, closet, cabinet, door, railing, coping, step, furniture, mirror, furnishing, appurtenance, urn, carpeting, tile, marble or other floor covering, drapery, shade or other window covering, wallpaper or other wall covering, tree, shrubbery, flower or other plantings.

the existence, maintenance, operation or safety of the Property. More specifically, the General Common Elements consist of the following (whether or not covered by the preceding sentence):

7.2.1   The Land, together with all easements, rights and privileges appurtenant thereto (except as otherwise expressly provided in this Declaration).

7.2.2   All structural elements, foundations, foundation walls, main roof, footings, columns, girders, beams, supports, interior load-bearing walls, floor slabs and ceilings.

7.2.3   All structures on the roof, including without limitation, the cooling towers including the structure provided for the cooling towers and water storage tank.

7.2.4   All halls, passages and corridors, storage rooms, housekeeping areas, mechanical and other rooms, all fire staircases, landings, lobbies and stairs, areas and spaces (including their respective floors, ceilings and enclosing walls) located in the Building, serving or benefiting all or any combination of the Hotel Suite Units and the Commercial Units, including the lobby, entrance, elevators, service entrance and accessway to service elevators, all located on the Ground Floor.

7.2.5   Ventilation supply system consisting of pumps, motors, ductwork, fans and controls, steam and condensate return piping, serving or benefiting all or any combination of the Hotel Suite Units and the Commercial Units.

7.2.6   Hot water, chiller and condenser water systems.

7.2.7   All enclosing walls and doors and all mechanical equipment and associated piping and controls and all utilities and mechanical and electrical transfers and equipment serving or benefiting all or any combination of the Hotel Suite Units and the Commercial Units.

7.2.8   All electrical risers, feeders, lines and equipment, including incoming service, emergency generator, main switchgear and distribution panelboards, conduits, wires, meters, transformers and panelboards, excluding, however, all such items located within a Unit and serving only that Unit.

7.2.9   All plumbing fixtures, equipment for distribution of cold water and equipment for producing and distributing hot water and chilled water (including pumps, valves, pressure reducers, meters and water heaters and chillers), excluding, however, all such items located within a Unit and serving only that Unit.

7.2.10   All fire protection equipment for distribution of sprinkler and standpipe systems, including the water storage tank and the structure provided therefor.

7.2.11   All storm and sanitary sewer equipment and pipes (including vent lines, ejectors, interceptors, filters and valves), excluding, however, all such items located within a Unit and serving only that Unit.

7.2.12  All steam rooms, electric service rooms, gas and water meter rooms, generator rooms, building storage rooms, washrooms, locker rooms, telephone rooms and other service, mechanical and utility rooms serving or benefiting all or any combination of the Hotel Suite Units and the Commercial Units.

7.2.13  All elevators (including both passenger and service elevators) which are for the use of all or any combination of the Hotel Suite Units and the Commercial Units in each case including the shafts, elevator equipment, elevator pits and entrances and appurtenant facilities.

7.2.14  All other parts, systems, installations and facilities of the Building (including shafts, pipes, wires, ducts, vents, flues, cables, conduits and lines) which serve or benefit or are necessary or convenient for the existence, maintenance, operation or safety of all or any combination of the Hotel Suite Units and the Commercial Units.

7.2.15  All other parts of the Property either existing for the common use of all or any combination of the Hotel Suite Units and the Commercial Units or the Unit Owners or that serve or benefit or are necessary or convenient for the existence, maintenance, operation or safety of the Property or all or any combination of the Hotel Suite Units and the Commercial Units.

7.2.16  All emergency generator rooms, elevator pit/runbys, compactor room, uniform room, workshops, maintenance storage, maintenance offices, locker rooms, engine room, pump room, electrical vault and all mechanical equipment serving same.

7.2.17  All loading/receiving areas, elevators and lobby, egress stairs and corridors and all associated mechanical equipment serving same; and the exterior space at the Building entries consisting of any stairs, railings, lighting and other electrical equipment, marquees and ornamental fixtures, planters and other freestanding structures; excluding, in all instances, such of these as only serve the Hotel Suite Units or the Unit Owners.

7.2.18  Enclosing walls and doors and all mechanical equipment servicing same; all utilities and mechanical and electrical transfers and equipment used for all or any combination of the Hotel Suite Units and the Commercial Units.

7.2.19  With respect to the rooftop, egress stairs, elevator machine rooms, house tank rooms and their enclosing walls and doors and all mechanical equipment serving same.

7.2.20  Smoke and carbon monoxide detection alarm system, telephone system and cable television system.

7.2.21  All security monitors and equipment and other security facilities serving or benefiting all or any combination of the Hotel Suite Units and the Commercial Units.

7.2.22  The Common Elements also include the installations, equipment, apparatus, facilities, exterior walls, interior walls, doors, partitions, floors, roofs, ceilings,

hallways, lobbies, corridors and vestibules that enclose or service any one of the Units but are no part of such Unit.

7.2.23  Whether or not specifically identified as part of the General Common Elements (or identified at all) on the Floor Plans, all other parts of the Property and all Equipment existing in the Building or on the Property (other than those areas and items specifically identified on the Floor Plans as part of a Unit and/or Limited Common Elements) the common use of and/or benefit from which is necessary or convenient for the existence, maintenance, operation or safety of the Property.

7.3     The Hotel Suite Limited Common Elements consist of those portions of the Property designated on the Floor Plans as Hotel Suite Limited Common Elements, including the areas marked "Fitness Center", "Library" and "Pool"; and also those Common Elements (other than vertical shaftways and penetrations) which exclusively serve or exclusively benefit all or a combination of the Hotel Suite Units or the Hotel Suite Unit Owners whether or not designated as Hotel Suite Limited Common Elements (or designated at all) on the Floor Plans (but excluding any items therein or in the Building which are not part of the Property, including, without limitation, any equipment, wiring and devices owned by telecom providers).  The Hotel Suite Limited Common Elements include, without limitation, the following:

7.3.1   Any elevators serving the Hotel Suite Units which are shown on the Floor Plans as Hotel Suite Limited Common Elements, together with the elevator cabs, overruns, bulkheads, shafts, pits, tanks, pumps, motors, fans, compressors, control and other related equipment in connection therewith, but excluding the walls of such elevator shafts (which are General Common Elements) and excluding those passenger and service elevators (together with the elevator cabs, overruns, bulkheads, shafts, pits, tanks, pumps, motors, fans, compressors and control equipment in connection therewith) which serve the Hotel Suite Units but which are shown on the Floor Plans as a Common Element (but not an Hotel Suite Limited Common Element) or as part of a Unit; the halls, passages, corridors, landings and lobbies, on, or connecting, the portions of floors of the Building constituting the Hotel Suite Units and/or on which the Hotel Suite Units are located, whether or not specifically identified on the Floor Plans as part of the Hotel Suite Limited Common Elements, to the extent not shown on the Floor Plans as constituting part of another Common Element or Unit;

7.3.2   Those stairs and stairways in the Building shown on the Floor Plans as Hotel Suite Limited Common Elements (and excluding those stairs, stairways and fire stairways in the Building shown on the Floor Plans as constituting part of another Common Element or Unit);

7.3.3   All other Equipment existing in the Building or on the Property which exclusively serves or exclusively benefits all or a combination of the Hotel Suite Units or the Hotel Suite Unit Owners; and

7.3.4   Those portions of the various systems of the Building from and after the point at which such systems are no longer part of the "Building Systems" by virtue of their exclusive service, beyond such point, to the Hotel Suite Section.

7.4     The Commercial Limited Common Elements of the Condominium consist of those portions of the Property designated on the Floor Plans as Commercial Limited Common Elements; and also those Common Elements (other than vertical shaftways and penetrations and Exclusive Use General Common Elements) which exclusively serve or exclusively benefit the Commercial Units or the Commercial Unit Owners whether or not designated as Commercial Limited Common Elements (or designated at all) on the Floor Plans (but excluding any items therein or in the Building which are not part of the Property, including, without limitation, any equipment, wiring and devices owned by telecom providers.

7.5     Without limiting the foregoing, with respect to all or any portion of the Building's plaza area (the "Plaza") which is initially shown on the Floor Plans of the Building as a General Common Element, the Restaurant Unit Owner shall have the right to seek approvals from the New York City Planning Commission or such other governmental authority/ies as shall have jurisdiction thereover to designate a portion of the Plaza for use by the Restaurant Unit Owner. Upon approval thereof, the Restaurant Unit Owner shall have the right to amend this Declaration and the Floor Plans, from time to time, to reclassify such area as a Limited Common Element dedicatd to the exclusive use of the Restaurant Unit Owner. In such case, the Restaurant Unit Owner will be responsible for the cleaning and maintenance with respect to the portion of the Plaza so designated for so long as such exclusive use shall be permitted by Law; and in the event such use shall no longer be permitted by Law, the Restaurant Unit Owner shall have the further right to reclassify such area as a General Common Element, in which case the Board shall again be responsible therefor.

## ARTICLE 8

## USE OF UNITS AND COMMON ELEMENTS

8.1     Use of the Hotel Suite Units.

8.1.1     General. Except to the extent otherwise permitted by Law and approved by the Board as set forth in the By-Laws, each Hotel Suite Unit may only be used as for Transient Occupancy and for no other purpose, and in all events subject to all Laws and to the further provisions of this Declaration and the By-Laws. As used in the Condominium Documents, "Transient Occupancy" means occupancy by the Unit Owner for not more than twenty nine (29) days per thirty-six (36) day period and not more than one hundred twenty (120) days (in the aggregate) per three hundred sixty-five day (365) day period, and, when not occupied by such Unit Owner, available for rental as a "Transient Hotel Room", i.e., a room or single suite of rooms used for transient occupancy and which may be rented on a transient basis as part of a transient hotel. Without limiting any other provision of the Condominium Documents (except as provided below in this Section 8.1), Hotel Suite Units may not be used in fact or in effect, as part of or in furtherance of any Occupancy Plan (as hereinafter defined); provided, however, if, as and when, and for so long as, the Hotel Suite Units are being used by the Hotel Management Company in connection with an Occupancy Plan, the Hotel Suite Units may be so used on the same basis. As used in the Condominium Documents, "Hotel Management Company" means any Person operating the hotel within the Building pursuant to a hotel management agreement or otherwise, and an "Occupancy Plan" means a plan for the use, occupancy, marketing, advertising or promotion of one or more Hotel Suite Units, under any

timeshare or fractional plan, residence, destination or luxury club, equity or non-equity program, interval exchange (whether the program is based on direct exchange of occupancy rights, cash payments, reward programs or other point or accrual systems) or other membership plans or arrangements through which a participant in the plan or arrangement acquires the right to use and occupy such unit(s) or a portfolio of accommodations including such unit(s). Notwithstanding the foregoing, Sponsor or its designee shall have the right, from time to time, to submit any Hotel Suite Units (or any Units created from the subdivision of any of the Commercial Units) to an Occupancy Plan program, and, among other things, to designate such units as a new class of Unit (e.g., fractional/timeshare ownership) and to amend the Declaration, and the By-Laws, and/or to create and record a fractional/timeshare ownership declaration with respect to such new classification of Units (including, among other things, by-laws and other related documents to address issues affecting only the administration and management of such Units and a plan of fractional/timeshare ownership with respect thereto).

8.1.2   Unsold Hotel Suite Units.  Notwithstanding the foregoing or anything contained herein, in the By-Laws or any Rules and Regulations to the contrary, Declarant (and their its designee) may, without the permission of the Board or any other Person use or grant permission for the use of any Unsold Hotel Suite Unit for any lawful purpose, including, but not limited to, the use of any Unsold Hotel Suite Units as models and sales and/or promotion offices in connection with the sale or rental of the Hotel Suite (or other) Units or subject to Section 8.1, for any other purpose, subject only to compliance with applicable Laws. As used in the Condominium Documents, "Unsold Hotel Suite Unit" refers to any Hotel Suite Unit owned or retained, by way of lease or any other arrangement by which management and/or financial responsibility is retained, by Declarant or any designee as the holder of one or more Unsold Hotel Suite Unit(s); any Hotel Suite Unit that is acquired, individually or collectively, by a principal of Declarant or a group of which Declarant or one or more of its principals is a member; or a Hotel Suite Unit that is acquired, individually or collectively, by either the holder of a Permitted Mortgage given by Declarant or the designee of a holder of such a Permitted Mortgage.

8.2   Use of Commercial Units.  The Commercial Units may be operated for any legally permitted purpose, including, without limitation, retail, hotel, restaurant, bar, banking, conference, catering, commercial, office, storage, spa and utility purposes, provided, however, that the Commercial Units shall not be for any purpose that is materially inconsistent with the operation of a hotel.  No income derived from any use of any of the Commercial Units will constitute income to the Board or any other Unit Owner.

8.3   Use of Common Elements.  (a) Except as otherwise provided herein or in the By-laws: (i) the Common Elements may be used only for the furnishing of the services and facilities and for the other uses for which they are reasonably suited; and (ii) Terraces may be used only for purposes commensurate with the uses permitted of the Units to which they are appurtenant.

(b)   Subject to any easements (exclusive or otherwise) and/or rights of access provided in this Declaration with respect to the Common Elements, neither the Board nor any Unit Owner shall impede the exercise of or encroach upon the rights of the other Unit Owners or

anyone claiming, by, through or under them, including, but not limited to, the occupants of the Units and their respective invitees, to use the same.

        8.4    Nuisance. No nuisance shall be allowed in the Property nor shall any use or practice be allowed in the Property which interferes with the peaceful possession or proper use thereof by the Unit Owners or the occupants of their respective Units. No improper, offensive or unlawful use shall be made of the Property or any portion thereof. All Legal Requirements relating to any portion of the Property shall be complied with at the sole expense of whichever of the Unit Owners or the Board shall have the obligation pursuant to the By-Laws or this Declaration to maintain or repair such portion of the Property.

## ARTICLE 9

## CHANGES IN UNSOLD HOTEL SUITE UNITS

        9.1    Hotel Suite Units.

        9.1.1   Unsold Hotel Suite Units. Notwithstanding anything to the contrary in Article 8 of the By-Laws, except to the extent prohibited by, or to the extent that the same will cause the Property or any portion thereof not to comply with, any applicable Laws, Declarant and any other owner of an Unsold Hotel Suite Unit shall have the right, at any time and from time to time, without the vote or consent of any Board, Unit Owner or other Person, to: (a) make Alterations and/or Repairs whether structural or non-structural, interior or exterior, ordinary or extraordinary, in, to and upon its Unsold Hotel Suite Unit(s); (b) change the use (subject to compliance with all Laws) or layout of, or number of rooms in, any Unsold Hotel Suite Unit(s) from time to time; (c) change the size and/or number of Unsold Hotel Suite Unit(s) by subdividing one or more Unsold Hotel Suite Units into two or more separate Hotel Suite Units, combining separate Unsold Hotel Suite Units (including those resulting from such subdivision or otherwise) into one or more Hotel Suite Units, converting an Unsold Hotel Suite Unit or any portion thereof to a Common Element, altering the boundary walls between any Unsold Hotel Suite Units, or otherwise, including incorporating the use of any portion of the Hotel Limited Common Elements adjacent or appurtenant thereto (but only to the extent that such Hotel Limited Common Elements are not required to be maintained as Hotel Limited Common Elements prior to and/or following such alterations); (d) whether in respect of subdivisions or combinations of the Unsold Hotel Suite Units or otherwise, designate all or any part of an Unsold Hotel Suite Unit or a Common Element as part of a newly created or expanded Unsold Hotel Suite Unit or Common Element; and (e) if appropriate, reapportion among the Units affected by such change in size, use or number pursuant to the preceding clauses (b), (c) and (d) their percentage interests in the Common Elements; provided, however, that: (i) such changes are in compliance with Section 339 of the New York Condominium Act; (ii) the Common Interest of any other Units (other than the Unsold Hotel Suite Units (or other Units) owned by such person) shall not be changed by reason thereof unless the owners of such other Units shall consent thereto; and (iii) Declarant or such other owner of an Unsold Hotel Suite Unit, as the case may be, shall comply with all Laws and shall agree to defend and hold each Board and all other Unit Owners harmless from any liability arising therefrom. Declarant or such other owner of an Unsold Hotel Suite Unit, as the case may be, shall have the right, without the consent of any Board, Unit Owner or other Person to amend (and/or cause the Board to

amend) the Declaration, the By-Laws and the Floor Plans and any other documentation to reflect the foregoing changes. Without limiting the foregoing, Declarant shall have the right (subject to the consent of its Registered Mortgagee, if otherwise required) to designate any Unsold Hotel Suite Unit as a new class of Unit (e.g., fractional ownership) and to amend this Declaration and the Condominium By-Laws, and/or to create and record a fractional ownership declaration with respect to such new classification of Units (including by-laws and other related documents to address issues affecting only the administration and management of the such Units and a plan of fractional ownership with respect thereto), provided however, no more than twenty (20%) percent of the Hotel Suite Units be designated as part of a fractional ownership program.

9.1.2  Hotel Suite Units Generally.  Subject to this Declaration and the By-Laws, the Unit Owner(s) of one or more Hotel Suite Units (other than Unsold Hotel Suite Units), with the consent of the Board, shall have such rights with respect to changing, combining and/or subdividing such Hotel Suite Unit(s) as are provided in the By-Laws.

9.2  Consents.  Subject to the immediately succeeding sentence, the provisions of Sections 9.1 and 9.3 of this Declaration may not be added to, amended, modified or deleted without the prior written consent of Declarant or any other owner of an Unsold Unit. Wherever the consent, approval or satisfaction of Declarant (as the owner of any Unsold Unit(s)) or the owner of any Unsold Hotel Suite Unit(s) is required under this Declaration or the By-Laws, such consent, approval or satisfaction of such party shall not be required when such party no longer owns any Unsold Units.

9.3  Certification Regarding Common Interest Reallocation.  Notwithstanding the other provisions of this Article 9, no reapportionment of the interests in the Common Elements appurtenant to any Unit shall be made unless there is first delivered to the Board a written certification stating, in each case with respect to the Unit(s) in question that the percentage interests of the affected Unit(s) in the Common Elements, immediately after such reapportionment, are consistent with the terms of this Declaration and in compliance with the terms of Section 339-i(1) of the Condominium Act. The certification referred to herein shall be delivered: (a) in the case of any Unsold Unit(s), at the election of Declarant, by Declarant, the managing agent of the Condominium or any other Person reasonably acceptable to the Board; and (b) in the case of any other Unit(s) by the managing agent of the Condominium or any other person reasonably acceptable to the Board.

## ARTICLE 10

## CHANGES BY THE COMMERCIAL UNIT OWNER

10.1  General.  Except to the extent prohibited by Law or as otherwise provided herein or in the By-Laws, the each of the Commercial Unit Owners shall have the right, without the vote or consent of the Board or any other Person to: (a) mortgage or otherwise hypothecate its Unit; (b) decorate or make alterations, additions or improvements, and repairs or replacements, in, to and upon its Unit (provided, however, that such Unit Owner, if other than Declarant or its designee, must obtain the prior consent of the Board, which consent shall not be unreasonably withheld, to any alterations, additions or improvements, and repairs or replacements, to its Commercial Unit which would have a material adverse effect on the

structural, mechanical, electrical or plumbing elements of the Building or the exterior appearance of the Building or which would increase insurance premiums or maintenance costs for any other Unit or the Common Elements); (c) change the layout of, or number of rooms in, its Commercial Unit from time to time; (d) change the size of its Commercial Unit by subdividing the same into any desired number of condominium units or by combining any units resulting from each such subdivision, altering the boundary walls between the Commercial Unit, or otherwise; (e) designate a Commercial Unit as part of a newly created or expanded commercial condominium unit or designate all or part of a Commercial Unit as a newly created or expanded commercial common element; and (f) if appropriate, reapportion among the Units or newly created Units affected by such changes pursuant to the preceding clauses (c), (d) and (e) their percentage interests in the Common Elements; provided, however, that: (i) such changes are in compliance with Section 339 of the New York Condominium Act; (ii) the Common Interest of any other Units (other than the Commercial Unit(s) owned by such Person) shall not be changed by reason thereof unless the owners of such other Units shall consent thereto; and (iii) the Commercial Unit Owner(s) in question shall comply with all Laws of all governmental authorities having jurisdiction and shall agree to defend and hold the Board and all other Unit Owners harmless from any liability arising therefrom. Each of the Commercial Unit Owners shall have the right with regard to its Unit, without the consent of the Board, any Unit Owner or other Person to amend (and/or cause the Board to amend) the Declaration, the By-Laws and the Floor Plans and any other documentation to reflect the foregoing changes. If any of the Commercial Units is subdivided or combined, the Owner of each Unit resulting from a subdivision or combination will generally have all of the rights (without the consent of the Board or other Unit Owners) set forth above in this Section 10.1, described as pertaining to the Unit Owner of the Commercial Unit or Units in question.

10.2    Certification Regarding Common Interest Reallocation. Notwithstanding the other provisions of this Article 10, no reapportionment of the interests in the Common Elements appurtenant to any Commercial Unit(s) shall be made unless there is first delivered to the Board a written certification stating, in each case with respect to the Unit(s) in question, that the percentage interests of the affected Unit(s) in the Common Elements, immediately after such reapportionment, are consistent with the terms of this Declaration and in compliance with the terms of Section 339-i(1) of the Condominium Act. The certification referred to herein shall be executed and delivered by all of the affected Commercial Unit Owners or any other Person reasonably acceptable to the Board.

## ARTICLE 11

## PERSON TO RECEIVE SERVICE

The Secretary of State of the State of New York (the "Secretary of State") is hereby designated to receive service of process in any action which may be brought against the Condominium or the Board. The Condominium and the Board shall each notify the Secretary of State of the address to which a copy of any process received should be mailed.

## ARTICLE 12

## DETERMINATION OF PERCENTAGE
## INTERESTS IN COMMON ELEMENTS

The Common Interest of each Unit has been determined, pursuant to Section 339-i(1)(iv) of the Condominium Act. In accordance with such method of calculation, the Common Interests have been determined based upon a comparison of the floor space, subject to the location of such space and the additional factors of relative value to other space in the Condominium, the uniqueness of the Unit, the availability of Common Elements for exclusive or shared use and the overall dimensions of the particular Unit. The aggregate Common Interests of all of the Units equals 100%.

## ARTICLE 13

## ENCROACHMENTS

If: (a) any portion of the Common Elements encroaches upon any Unit or upon any other Common Element; (b) any Unit encroaches upon any other Unit or upon any portion of the Common Elements; or (c) any encroachment shall hereafter occur as a result of (i) settling or shifting of the Building; (ii) any Alteration or Repair made to the Common Elements in accordance with the terms of this Declaration and the By-Laws by, or with the consent (when required by the By-Laws), of the Board, or made by Declarant or its designee, as the case may be; or (iii) any Alteration or Repair of the Building (or any portion thereof) or of any Unit or Common Element after damage by fire or other casualty or any taking by condemnation or eminent domain proceedings of all or any portion of any Unit or the Common Elements, then, in any such event, a valid easement shall exist for such encroachment and for the maintenance of the same as long as the Building shall stand (or during any period in which it is being rebuilt or restored, in accordance with the By-Laws, following any such fire or other casualty, taking or eminent domain proceeding); provided that in the case of any such encroachment described in subparagraph (c)(ii) or (iii) above, such encroachment does not unreasonably interfere with the use of any of the Units for their permitted purposes and/or the use of the Common Elements for their intended purposes.

## ARTICLE 14

## FACILITIES AND ALL OTHER COMMON ELEMENTS

Except as may otherwise be expressly set forth herein or in the By-Laws, each Unit Owner shall have, and is hereby granted, in common with all other Unit Owners, an easement to use any and all General Common Elements located anywhere on the Property without hindering the exercise of or encroaching upon the rights of the other Unit Owners in respect of such easement, including, but not limited to, such easement as will be necessary to maintain, such Unit Owner's Unit.

Each Hotel Suite Unit Owner will have, in common with all other Hotel Suite Unit Owners, an easement for the use of the Hotel Suite Limited Common Elements and any

facilities located therein, including, but not limited to, such easement as will be necessary to operate and maintain as necessary, such Hotel Suite Unit Owner's Unit, and the Board, on behalf of all Hotel Suite Unit Owners, shall have an easement to maintain, and to make Repairs and Alterations to, the Hotel Suite Limited Common Elements.

Each Unit shall be subject to an easement in favor of the Board, on behalf of all Unit Owners, to use, operate, maintain, repair, alter, rebuild, restore and replace all Common Elements located in such Unit or elsewhere on the Property. In addition, Declarant (or its designee) and the Board shall have the right to erect scaffolding on or upon any of the Terraces for a temporary period of time in connection with maintenance and repairs of the Building and its Common Elements. The Board and any managing agent, manager and other persons authorized by the Board shall have a right of access to each Unit and any Hotel Suite Limited Common Element appurtenant to such Unit, whether exclusive or not, (and such is hereby granted) to inspect the same or remove violations of governmental laws or regulations against any part of the Property; to cure defaults by the owner of such Unit under the By-Laws, this Declaration or the Rules of Regulations; to perform maintenance, installations, alterations, repairs or replacements to the mechanical, plumbing or electrical systems or other portions of the Common Elements (including, without limitation, all Limited Common Elements) contained therein or elsewhere in the Property; or correcting any conditions originating in any Unit and threatening another Unit or any Common Element; provided such right of access shall be exercised in such a manner as will not unreasonably interfere with the Units for their permitted purposes. Such entry shall be permitted on not less than one day's notice, except that no notice will be necessary in the case of any "emergency" (i.e., a condition requiring repair or replacement immediately necessary for the preservation or safety of the Building or for the safety of occupants of the Building, or other persons, or required to avoid the suspension of any necessary service in the Building).

## ARTICLE 15

## EASEMENTS

15.1    Each Unit Owner shall have, in common with all other Unit Owners, and each Unit shall be subject to, an easement: (a) to install, operate, maintain, repair, alter, rebuild, restore and replace the Common Elements located in, over, under, through or upon any Unit, or any other Common Elements or elsewhere on the Property; and (b) to maintain any encroachment on any Unit or the Common Elements resulting from the repair, alteration, rebuilding, restoration or replacement of the Units or the Common Elements; provided that access to any Unit or the Common Elements in furtherance of such easement shall be exercised in such a manner as will not unreasonably interfere with the normal conduct of business of the tenants and occupants of the Commercial Units or with the use of the Hotel Suite Units for their permitted purposes. Such entry shall be permitted on not less than one day's notice, except that no notice will be necessary in the case of an emergency. Furthermore, for so long as any portion of the space specified as "Pool" on the Floor Plans and all improvements thereto or thereon shall exist and be used as a pool (the "Pool"), Hotel Suite Unit Owners shall have an easement, subject to the hours of operation of the Pool, through and across the Pool Bar Unit, together with use of the deck area surrounding the Pool, for the purpose of access to the Pool.

15.2    Each Hotel Suite Unit Owner of a Unit with a Terrace appurtenant thereto shall have an easement for the exclusive use of such Terrace, which use shall be subject to the terms and conditions of this Declaration and the By-Laws. Each Terrace (and the Unit to which such Terrace is appurtenant) shall be subject to the easement(s) in favor of Declarant and the Board as set forth herein.

15.3    Each Unit Owner shall have, to the extent reasonably necessary, in common with all other Unit Owners, an easement for ingress and egress to and from its Unit, and, to the extent reasonably necessary, for the use of any Common Element (excluding all Limited Common Elements). The Units shall each be subject to such easement.

15.4    Each Unit Owner shall have, in common with all other Unit Owners, and each Unit shall be subject to, an easement: (a) to install, operate, maintain, repair, alter, rebuild, restore and replace the Common Elements located in, over, under, through or upon any Unit, or any other Common Elements or elsewhere on the Property; and (b) to maintain any encroachment on any Unit, the General Common Elements or any Hotel Suite Limited Common Elements resulting from the repair, alteration, rebuilding, restoration or replacement of the Units or the Common Elements; provided that access to any Unit or the Common Elements in furtherance of such easement shall be exercised in such a manner as will not unreasonably interfere with the normal conduct of business of the tenants and occupants of the Commercial Units or with the use of the Hotel Suite Units for their permitted purposes. Such entry shall be permitted on not less than one day's notice, except that no notice will be necessary in the case of an emergency.

15.5    Each Unit and the Common Elements shall have easements of subjacency, support and necessity, and the same shall be subject to such easements in favor of all the other Units and the Common Elements.

15.6    Each Unit Owner (except as otherwise set forth below) grants an easement over its Unit and the Common Elements (including, without limitation, its appurtenant Limited Common Elements), and the Board grants an easement over and through the General Common Elements: (a) in the case of the Unit Owners, to the Board for the purpose of (and to the extent reasonably necessary for) maintaining, Repairing, Altering, preventing or minimizing damage to and causing to be in compliance with Laws and Insurance Requirements such granting Unit Owner's Unit, the Limited Common Elements, if any, appurtenant to its Unit; (b) in the case of the Board and the Unit Owners, to each Unit Owner, in common with each other Unit Owner, for the purpose of (but only in the absence of a commercially practicable alternative and only to the extent necessary for) maintaining, Repairing, Altering, preventing or minimizing damage to and causing to be in compliance with Laws and Insurance Requirements any portions of the grantee Unit Owner's Unit and its appurtenant Limited Common Elements; (c) to each Unit Owner, and to each Board, in common with each other, for the purpose of (but only in the absence of a commercially practicable alternative and only to the extent necessary for) installing, allowing to remain (and using for their respective intended purposes), maintaining, Repairing, Altering, preventing or minimizing damage to and causing to be in compliance with Laws and Insurance Requirements any Common Elements or other facilities located in or only readily accessible through such granting Unit Owner's Unit or Limited Common Elements, if any, which serve other Units (including, without limitation, reading, maintaining or replacing utility meters

relating to the Common Elements, such Unit or any other Unit in the Building); (d) to the Board (only to the extent permitted under the other provisions of the Condominium Documents) for the purpose of (and to the extent reasonably necessary for) preventing or minimizing damage to such Unit or to any other portion of the Property; (e) to the Board for the purpose of (and only to the extent reasonably necessary for) making inspections of, or removing violations noted or issued by any governmental authority against, the Common Elements or any other part of the Property; and/or (f) to the Board for the purpose of (and only to the extent reasonably necessary for) curing defaults hereunder or under the By-Laws, or correcting any conditions originating in such Unit Owner's Unit or Limited Common Elements and threatening the health, safety and welfare of the occupants of, or the property located within, another Unit or all or any part of the Common Elements).

15.7    Declarant (or its designee) and the Board with respect to the Property and the Commercial Unit Owners with respect to their respective Commercial Units, shall each have the right to grant such additional electric, gas, steam or other utility easements or relocate any existing utility easements in any portion of the Property or the Commercial Units, as the case may be, as Declarant (or its designee) or the Board, or the Commercial Unit Owners, as the case may be, shall deem necessary or desirable for the proper operation and maintenance of the Building, or any portion thereof, or for the general health or welfare of the owners, tenants and occupants of the appropriate Units, provided that such additional utilities or the relocation of existing utilities will not prevent or unreasonably interfere with the normal conduct of business of the tenants and occupants of the Commercial Units or with the use of any of the other Units for their permitted purposes. Any utility company and its employees and agents shall have the right of access to any Unit or the Common Elements in furtherance of such easement, provided such right of access shall be exercised in such a manner as shall not unreasonably interfere with the normal conduct of business of the tenants and occupants of the Commercial Units or with the use of any of the other Units for their permitted purposes.

15.8    Declarant (or its designee) and its successors and assigns, shall, to the extent permitted by law, have an easement to erect, maintain, repair and replace, from time to time, one or more signs, canopies, flags or awnings or other protrusions on the Property, including without limitation, on the exterior of the walls of the Building, for the purposes of advertising the sale or lease of any Unsold Unit, the sale or lease of all or any portion of the Commercial Units, and/or the operation of any business of a tenant or occupant of all or any portion of any Commercial Units or of any Unsold Hotel Suite Units, as the case may be. In addition, Declarant and its designee(s) shall have the right, until the tenth anniversary of the First Closing, to use, without charge, portions of the Building, including the Common Elements, for exhibitions, events, promotional functions (e.g., with respect to any sales programs for Unsold Units) or otherwise.

15.9    Each easement and other right granted under this Article 15 shall be deemed to permit the benefited party's/ies' contractors, subcontractors, agents, representatives, occupants, employees and other designees (and, in the case of a grant to the Board, the Hotel Management Company), to use such easement or other right, as applicable, if such Unit Owner so elects.

15.10 Any grant of an easement "on", "over", "across" or "through" a given area shall be deemed to mean "on, over, across, through, and upon" such area, unless the context otherwise requires.

15.11 The Accessory Unit Owner and/or its designee (and their respective successors and assigns) shall have an easement for so long as the Condominium shall remain in existence: (i) to erect, use, lease, license, maintain, repair, replace and operate a platform and other facilities for the purpose of erecting, using, leasing, licensing, maintaining, repairing, replacing and operating antennae, satellite dishes and other communications equipment on any part of the roof of the Building that is not occupied as of the date hereof for any other Building installations; and (ii) to erect, use, lease, maintain, repair, replace and operate related electronic and other communications equipment in any portion of any mechanical equipment room that is not occupied as of the date hereof by any other Building installations, and the right to erect partitions separating such portion from the balance of such equipment room; in each case, without the consent of, or charge by, the Board or any other Unit Owners; provided, however, that Accessory Unit Owner (or its designee) shall give prior notice to the Board of the type and location of any such equipment before installation. Any obligations of the Accessory Unit Owner (or its designee) under any lease, license or other right of use granted by Accessory Unit Owner (or its designee) with respect to the roof or the aforesaid mechanical equipment room shall be the obligation solely of the owner of Accessory Unit Owner (or such designee) and not of the Condominium and any rights of Accessory Unit Owner (or such designee), including, without limitation, the right to receive rent or other consideration for such lease, license or other right of use, shall be the right solely of Accessory Unit Owner (or such designee) and not of the Condominium. In connection with such easements and related rights, Accessory Unit Owner and its designee (and their respective successors and assigns) and the respective tenants and licensees shall each have, to the extent necessary or advisable for such erection, use, lease, maintenance, repair, replacement and operation, an easement in common with all Unit Owners for ingress, egress and the use of any Common Elements. The Hotel Suite Units and the Commercial Units shall each be subject to such easement. The word "utility" or "utilities" as used in this Section 15.11 shall be deemed to include fiber optic cable and other communications liens, wires, cables and conduits.

15.12 Declarant and its designee(s) shall have the right, until the tenth anniversary of the First Closing, to use, without charge, portions of the Building, including the Common Elements, for exhibitions, events, promotional functions (e.g., with respect to any sales programs for Unsold Units) or otherwise.

15.13 Except as may otherwise be set forth in this Declaration, any easement created or granted hereunder shall be perpetual and irrevocable for so long as the Condominium shall remain in existence.

## ARTICLE 16

## POWER OF ATTORNEY TO THE BOARD

16.1 Each Unit Owner shall grant to the persons who shall from time to time constitute the Board, an irrevocable power of attorney, coupled with an interest (in such form

and content as the Board shall determine): (a) to acquire or lease on behalf of all Unit Owners any Unit, together with its Appurtenant Interests (as hereinafter defined), from any Unit Owner desiring to sell, convey, transfer, assign or lease the same, upon such terms and conditions as shall be approved by the Board in its reasonable discretion; (b) to acquire on behalf of all Unit Owners any Unit, together with its Appurtenant Interests, whose Owner elects to surrender the same to the Board; (c) to acquire any Unit, together with its Appurtenant Interests, which becomes the subject of a foreclosure or other similar sale, on such terms and at such price or rental as the case may be, as the attorneys-in-fact deem proper, in the name of the Board or its designee, corporate or otherwise, on behalf of all Unit Owners, and after any such acquisition or leasing, to convey, sell, lease, sublease, mortgage or otherwise deal with (but not vote the interest appurtenant thereto) any such Unit so acquired by them, or to sublease any Unit so leased by them without the necessity of further authorization by the Unit Owners, on such terms as the attorneys-in-fact may determine; and (d) to execute, acknowledge and deliver (i) any declaration or other instrument affecting the Condominium which the Board deems necessary or appropriate to comply with any law, ordinance, regulation, zoning resolution or requirement of the Department of Buildings, the City Planning Commission or any other public authority applicable to the maintenance, demolition, construction, alteration, repair or restoration of the Condominium, or (ii) any consent, covenant, restriction, easement or declaration, or any amendment thereto, affecting the Condominium or the Common Elements which the Board, in its reasonable discretion, deems necessary or appropriate.

16.2   Each Unit Owner shall grant to Declarant a power of attorney to amend this Declaration and to effectuate the rights granted to Declarant under this Declaration and the By-Laws and the Offering Plan and to consent on behalf of each Unit Owner, as a party in interest, to any declaration or other agreement effecting a merger or division of the zoning lot in which the Property is located, with any other tax lots to form a single zoning lot (the "Merger") for the purpose of transferring to or from Declarant, or its successors or assigns, all or any portion of the Development Rights.

## ARTICLE 17

## ACQUISITIONS OF UNITS BY THE BOARD

17.1   If (a) any Unit Owner surrenders his or her Unit, together with (i) the undivided interest in the Common Elements appurtenant thereto, (ii) the interest of such Unit Owner in any other Units theretofore acquired by the Board or its designee, corporate or otherwise, on behalf of all Unit Owners, or the proceeds of the sale or lease thereof, if any, and (iii) the interest of such Unit Owner in the Common Elements and any other assets of the Condominium (such interests in (i), (ii) and (iii) being hereinafter collectively called the "Appurtenant Interests"), pursuant to the provisions of Section 339-x of the New York Condominium Act; (b) the Board, pursuant to Article 8 of the By-Laws, acquires or leases a Unit, together with its Appurtenant Interests; or (c) the Board purchases, at a foreclosure or other similar sale, a Unit, together with its Appurtenant Interests, then, in any such event, title to any such Unit, together with its Appurtenant Interests, shall be held by the Board or its designee, on behalf of all Unit Owners, in proportion to their respective interests in the Common Elements. The lease or sublease covering any Unit leased or subleased by the Board or its designee shall be

held by the Board or its designee, corporate or otherwise, on behalf of all Unit Owners, in proportion to their respective interests in the Common Elements.

## ARTICLE 18

## COVENANTS RUNNING WITH THE LAND

18.1    All provisions of this Declaration, the By-Laws and the Rules and Regulations (true copies of which are annexed hereto and made a part hereof), including, without limitation, the provisions of this Article 18 and of any Rules and Regulations as may be adopted and amended from time to time, shall, to the extent applicable and unless otherwise expressly herein or therein provided to the contrary, be perpetual and be construed to be covenants running with the Land and with every part thereof and interest therein, and all of the provisions hereof and thereof shall be binding upon and inure to the benefit of the Unit Owners of all or any part thereof, or interest therein, and their heirs, executors, administrators, legal representatives, successors and assigns, but the same are not intended to create nor shall they be construed as creating any rights in or for the benefit of the general public. All present and future owners, tenants and occupants of Units shall be subject to and shall comply with the provisions of this Declaration, the By-Laws and the Rules and Regulations, as they may be amended from time to time. The acceptance of a deed or conveyance or the entering into a lease or the entering into occupancy of any Unit shall constitute an agreement that the provisions of this Declaration, the By-Laws and the Rules and Regulations, as they may be amended from time to time, are accepted and ratified by such owner, tenant or occupant, and all of such provisions shall be deemed and taken to be covenants running with the Land and shall bind any person having at any time any interest or estate in such Unit, as though such provisions were recited and stipulated at length in each and every deed or conveyance or lease thereof.

18.2    If any provision of this Declaration or the By-Laws is invalid under, or would cause this Declaration and the By-Laws to be insufficient to submit the Property to the provisions of, the New York Condominium Act, such provision shall be deemed deleted from this Declaration or the By-Laws, as the case may be, for the purpose of submitting the Property to the provisions of the New York Condominium Act but shall nevertheless be valid and binding upon and inure to the benefit of the owners of the Property and their heirs, executors, administrators, legal representatives, successors and assigns, as covenants running with the Land and with every part thereof and interest therein under other applicable law to the extent permitted under such applicable law with the same force and effect as if, immediately after the recording of this Declaration and the By-Laws, all Unit Owners had signed and recorded an instrument agreeing to each such provision as a covenant running with the Land. If any provision which is necessary to cause this Declaration and the By-Laws to be sufficient to submit the Property to the provisions of the New York Condominium Act is missing from this Declaration or the By-Laws, then such provision shall be deemed included as part of this Declaration or the By-Laws, as the case may be, for the purposes of submitting the Property to the provisions of the New York Condominium Act.

18.3    Subject to the provisions of Section 18.2, if this Declaration and the By-Laws are insufficient to submit the Property to the provisions of the New York Condominium Act, the provisions of this Declaration and the By-Laws shall nevertheless be valid and binding

upon and inure to the benefit of the owners of the Property, and their heirs, executors, administrators, legal representatives, successors and assigns, as covenants running with the Land and with every part thereof and interest therein under other applicable law to the extent permitted under such applicable law with the same force and effect as if, immediately after the recording of this Declaration and the By-Laws, all Unit Owners had signed and recorded an instrument agreeing to each such provision as a covenant running with the Land.

18.4    Notwithstanding anything in Section 18.1, however, at the request of any of any Commercial Unit Owner made from time to time, the Board shall, at the sole cost and expense of the requesting Commercial Unit Owner, execute and deliver a non-disturbance agreement (in such form as may be reasonably proposed by the requesting Unit Owner and reasonably acceptable to the Board to any occupant of such Commercial Unit Owner's Unit.

## ARTICLE 19

## AMENDMENTS OF DECLARATION

Article 13 of the By-Laws is incorporated herein in its entirety; and, except as otherwise expressly set forth herein, the provisions thereof shall govern the amendment and/or modification of, addition to and/or deletion of any of the provisions of this Declaration.

## ARTICLE 20

## TERMINATION OF CONDOMINIUM

20.1    The Condominium shall continue and the Property shall not be subject to an action for partition until: (a) terminated by casualty loss, condemnation or eminent domain, as more particularly provided in the By-Laws; or (b) such time as withdrawal of the Property from the provisions of the New York Condominium Act is authorized by a vote of at least 80% both in number and aggregate of the Common Interests of all Unit Owners. No such vote shall be effective, however: (a) without the written consent (which consent shall not be unreasonably withheld or delayed) of a majority of the Mortgage Representatives, if any; and (b) without the written consent of Declarant or any other owner of Unsold Units for so long as any such Person owns any Unsold Unit(s), provided that in no event shall any such consents in this clause (b) be required more than five years after the earlier to occur of the First Closing.

20.2    To the fullest extent permissible under the law, each Unit Owner shall be deemed to have waived any right to seek partition of the Property. In the event said withdrawal is authorized as aforesaid, and only to the extent the waiver contained in the preceding sentence shall be inapplicable or unenforceable, the Property shall be subject to an action for partition by any Unit Owner or lienor as if owned in common, in which event the net proceeds of sale, together with the net proceeds of any applicable insurance policies, shall be divided among all Unit Owners: (i) first, by apportioning such proceeds in the aggregate among each class of Units (i.e., Hotel Suite Units and Commercial Units) pursuant to an appraisal of fair market values to be performed by a panel of three independent appraisers (one of whom shall be selected by the Board, one of whom shall be selected by the Commercial Unit Owners, and the third chosen by

the other two appraisers selected); and (ii) then, among the Unit Owners of each class of Unit in proportion to their respective Common Interests, provided, however, that no payment shall be made to a Unit Owner until there has first been paid out of its share of such funds, such amounts as may be necessary to discharge all unpaid liens on its Unit (other than mortgages which are not Permitted Mortgages) in the order of the priority of such liens.

## ARTICLE 21

## WAIVER

No provision contained in this Declaration shall be deemed to have been abrogated or waived by reason of any failure to enforce the same, irrespective of the number of violations or breaches which may occur.

## ARTICLE 22

## CAPTIONS

The captions herein are inserted only as a matter of convenience and for reference, and in no way define, limit or describe the scope of this Declaration nor the intent of any provision hereof.

## ARTICLE 23

## CERTAIN REFERENCES

23.1    A reference in this Declaration to any one gender, masculine, feminine or neuter, includes the other two, and the singular includes the plural, and vice versa, unless the context otherwise requires.

23.2    The terms "herein," "hereof" or "hereunder" or similar terms used in this Declaration refer to this entire Declaration and not to the particular provision in which the terms are used.

23.3    Unless otherwise stated, all references herein to Articles, Sections or other provisions are references to Articles, Sections or other provisions of this Declaration.

## ARTICLE 24

## SEVERABILITY

Subject to the provisions of Sections 18.2 and 18.3, if any provision of this Declaration is invalid or unenforceable as against any person or under certain circumstances, the remainder of this Declaration and the applicability of such provision to other persons or circumstances shall not be affected thereby. Each provision of this Declaration shall, except as otherwise herein provided, be valid and enforceable to the fullest extent permitted by law.

## ARTICLE 25

## COVENANT OF FURTHER ASSURANCES

25.1    Any party which is subject to the terms of this Declaration, whether such party is a Unit Owner, a lessee or sublesee of a Unit Owner, an occupant of a Unit, a member or officer of the Board, or otherwise, shall, at the expense of any such other party (or the holder of a lien on its Unit) requesting the same, execute, acknowledge and deliver to such other party (or the holder of a lien on its Unit) such instruments, in addition to those specifically provided for herein, and take such other action, as such other party (or the holder of a lien on its Unit) may reasonably request to effectuate the provisions of this Declaration or of any transaction contemplated herein or to confirm or perfect any right to be created or transferred hereunder or pursuant to any such transaction. Without intending to limit the generality of the foregoing, the Board and each Unit Owner shall be required, upon the request of Declarant or the Development Rights Purchaser, to execute and deliver any documents or applications reasonably required in connection with any Merger, any declaration of zoning lot restrictions, any ZLDA or the transfer of the Development Rights to the Development Rights Purchaser.

25.2    If any Unit Owner, the Board or any other party which is subject to the terms of this Declaration fails to execute, acknowledge or deliver any instrument, or fails or refuses, within ten (10) days after receipt of a written request therefor, to take any action which such Unit Owner or party is required to take pursuant to his Declaration and such failure continues for an additional ten (10) day period following receipt of a second written request therefor (together with written advice that the requesting party shall be entitled to take action upon the recipient's failure or refusal to perform) then the Board is hereby authorized as attorney-in-fact for such Unit Owner, or other party, coupled with an interest, to execute, acknowledge and deliver such instrument, or to take such action, in the name of such Unit Owner or other party and such document or action shall be binding on such Unit Owner or other party.

25.3    If any Unit Owner, the Board or any other party which is subject to the terms of this Declaration fails to execute, acknowledge or deliver any instrument, or fails or refuses, within ten (10) days after receipt of a written request therefor, to take any action which the Board, Unit Owner or party is required to execute, acknowledge and deliver or to take pursuant to this Declaration at the request of Declarant, then Declarant is hereby authorized as attorney-in-fact for such Unit Owner, Board or other party, coupled with an interest, to execute, acknowledge and deliver such instrument or to take such action, in the name of such Unit Owner, Board or other party and such document or action shall be binding on such Unit Owner, Board or other party, as the case may be.

## ARTICLE 26

## NAME OF CONDOMINIUM AND BUILDING

26.1    Subject to the Condominium License Agreement (as hereinafter defined), the By-Laws and otherwise as set forth in the Condominium Documents, the Condominium and the Building shall be designated and known as "Trump SoHo Hotel Condominium New York." In addition, Declarant shall have the right, for so long as the Property is a condominium, to

maintain a plaque identifying Declarant (or its affiliate(s)) as the sponsor of the Condominium and/or development of the Property, together with such other information as Declarant (or its designee) determines in its sole discretion.

26.2    Trump Marks LLC (the "Licensor") is the owner with respect to the use of certain rights in the name, trademark, service mark, designation and identification of "Trump" (the "Trump Marks") in connection with the advertising, marketing and promotion of the Condominium  Licensor and the Board have entered or will enter into a license agreement with respect to the use of the Trump Marks in connection with, among other things, the identification of and operation of the Condominium. Except as expressly provided herein, in no event shall any Unit Owner without the express consent of the Licensor, use the Trump Mark, or any part or derivation thereof, in connection with any advertisement, promotion, rental or sale of any such Unit (or portion thereof or interest therein) or any business being operated therein or therefrom or in any other commercial manner. The consent requirements of the preceding clause shall not apply in the event that a person subject to such clause is using only the name of the Building or the name "Trump Soho Hotel Condominium New York" (*i.e.*, excluding any logos or other proprietary elements of the Trump Marks) in a descriptive manner as necessary and consistent with identifying the location of its Unit in conjunction with the sale or rental of its Unit or the provision of any services therein or therefrom. Without limiting any other right or remedy available at law or in equity, the foregoing may be enforced by an action for specific performance and/or injunctive relief. Under no circumstances shall any of the Trump Marks be deemed part of the Property or an appurtenance of any Unit or any person subject to the foregoing. The Trump Marks shall at all times remain the sole and exclusive property of Licensor.

26.3    Each of the persons subject to the above shall, to the extent and for the duration that such person is permitted to use the Trump Marks hereunder, maintain and/or operate the portion of the Property that such person owns and/or for which such person is responsible as well as any services within the control of such person(s) that are associated with such portion(s) of the Property, in accordance with the Operating Standard (as defined in the Condominium License Agreement) and as otherwise required by the Condominium License Agreement.

26.4    In the event that there shall be a default beyond any applicable notice and/or grace period under the Condominium License Agreement, the Condominium License Agreement may be terminated by Licensor, and in such event, all Unit Owners will be required to cease using the Trump Mark and any other tradenames, trademarks or service marks bearing the Trump name. Accordingly, all signs or other materials bearing any of the Trump tradenames, trademarks or servicemarks shall be removed from the Building, the Condominium and otherwise as required by the Condominium License Agreement.

26.5    For so long as the Condominium License Agreement is in effect, all deeds and any similar conveyance instruments in respect of any Unit in the Condominium, shall contain the following recitation:

> Grantee hereby acknowledges that the Trump Marks are owned by
> the Licensor, and the Licensor has granted the Condominium a

license with respect to the use of the Trump Marks in connection with, among other things, the operation of the Condominium, and so long as said license has not been terminated by Licensor pursuant to the terms of the Condominium License Agreement, the Condominium shall be known as "Trump SoHo Hotel Condominium New York".

26.6    Standards for Use.  Each of the Persons above shall, to the extent and for the duration that such Person is permitted to use the Trump Marks hereunder, maintain and/or operate the portion(s) of the Property that such Person(s) own and/or for which such Person(s) is/are responsible as well as any services within the control of such Person(s) that are associated with such portion(s) of the Property, in accordance with a standard of quality, service and appearance as are consistent with or exceed the Operating Standard.

## ARTICLE 27

## SUCCESSORS AND ASSIGNS

The rights and/or obligations of Declarant or its designee as set forth herein shall inure to the benefit of and be binding upon any successor or assign of Declarant or its designee or, with the consent of Declarant or its designee, any transferee of some or all then Unsold Units. The rights and/or obligations of the Commercial Unit Owners as set forth herein shall inure to the benefit of and be binding upon any successor or assign of the Commercial Unit Owners. Subject to the foregoing, Declarant or its designee, and/or the Commercial Unit Owners, as the case may be, shall have the right, at any time, in their sole discretion, to assign or otherwise transfer their respective interests herein, whether by merger, consolidation, sale, lease, assignment or otherwise.  The rights and/or obligations of the Unit Owners or their designees as set forth herein shall inure to the benefit of and be binding upon any successors or assigns of such Unit Owners or their designee(s).

IN WITNESS WHEREOF, Declarant has caused this Declaration to be executed as of the _____ day of _____, 200__.

BAYROCK/SAPIR ORGANIZATION LLC

By: 246 Spring Street Holdings II, LLC, its sole member
  By: Bayrock/Sapir Realty LLC, its managing member
    By: Bayrock Spring Street, LLC, its managing member
    By: Bayrock Group, LLC, its sole member

      By: _____

State of New York      )
                         ) ss.:
County of New York  )

         On the _____ day of _____ in the year 200__ before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

                        _____

                        (Signature and office of individual taking acknowledgment)