# EXHIBIT "B"
## PART IV

# EXHIBIT "B-5"

TRUMP SOHO HOTEL CONDOMINIUM NEW YORK

## UNIT MANAGEMENT AGREEMENT

by and between

### TRUMP INTERNATIONAL HOTELS MANAGEMENT LLC, as Hotel Manager

and

_____, as Owner

covering Subject Unit _____

Dated: _____

# TRUMP SOHO HOTEL CONDOMINIUM NEW YORK

## UNIT MANAGEMENT AGREEMENT

**THIS UNIT MANAGEMENT AGREEMENT** (this "**Agreement**") is made this ____ day of _____, ~~200~~20____ by and between Trump International Hotels Management LLC, a Delaware limited liability company ("**Hotel Manager**"), having an address at 725 Fifth Avenue, New York, New York 10022, and _____ ("**Owner**"), having an address at _____.

Any capitalized terms used in this Agreement and not otherwise defined herein **or in Schedule A, attached hereto,** shall have the meanings set forth in that certain Declaration pursuant to Article 9-B of the Real Property Law of the State of New York, establishing condominium ownership of the property located at 246 Spring Street, New York, New York, made by Bayrock/Sapir Organization LLC ("**Sponsor**"), as declarant, dated as of _____, 20___ and recorded in the Office of the Register of the City of New York, New York County on _____, 20____ as CRFN _____ (as the same has been or may be amended from time to time, the "**Declaration**") with respect to Trump SoHo Hotel Condominium New York (the "**Condominium**").

## W I T N E S S E T H

**WHEREAS**, subject to the terms of this Agreement, and the Hotel Management Agreement (hereinafter defined), Hotel Manager intends to operate the Condominium as first class, luxury hotel condominium of approximately forty-~~two~~**six** (4~~2~~**6**) stories commonly known as "Trump ~~Soho~~**SoHo** Hotel" or "Trump ~~Soho~~**SoHo** Hotel Condominium" (the "**Hotel**"), located at 246 Spring Street, New York, New York, consisting of approximately four hundred ~~thirteen (413)~~**(400)** hotel suite units or such number of hotel suite units as constructed pursuant to the as-built drawings upon completion of the Condominium (the "**Units**");

**WHEREAS**, Owner currently owns or is under contract to purchase Unit No. _____ (the "**Subject Unit**"); and

**WHEREAS**, pursuant to the Declaration, in order to provide Owner and non-owner occupants at the Condominium with the level of services associated with a luxury hotel and to provide the Mandatory Services (hereinafter defined), each owner of a Unit ("**Unit Owner**") (other than Sponsor) is required to enter into this Agreement, receive the Mandatory Services provided hereunder and pay all fees and charges in connection therewith, as described herein.

**NOW, THEREFORE**, in consideration of the foregoing recitals (the terms of which are hereby incorporated in this Agreement as though fully set forth below), and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1

1.  Preliminary Matters.

(a)    The Declaration and the other documents related thereto to establish the Condominium (including, without limitation, the By-Laws of the Condominium (the "**By-Laws**") annexed to the Declaration, the Offering Plan, the Restrictive Declaration, this Agreement, and such other declarations, easements and other agreements with respect to the Units and the Common Elements (as defined in the Declaration) as may be recorded from time to time with the recorder of deeds in New York, New York (sometimes, collectively, the "**Condominium Documents**")) are incorporated herein by reference and made a part hereof with the same force and effect as if set forth herein at length.

(b)    By executing this Agreement, Owner hereby represents and warrants to Hotel Manager that Owner is the fee owner of the Subject Unit and has the full authority to enter into this Agreement. If the Subject Unit is owned by an entity or more than one individual, on the form attached hereto as <u>Exhibit "A"</u> ("**Designation Form**"), Owner shall designate the primary contact for the Subject Unit who shall have the authority to act on behalf of Owner (and Owner shall provide any and all required authorizations to the Owner of Record to act on its behalf) for all matters governed by or requiring Owner action under this Agreement (the "**Owner of Record**"). The Owner of Record ~~must~~<u>does not have to</u> be the same person as the Hotel Suite Unit Owner under the Declaration from time to time. Hotel Manager may rely on any communications or representations from the Owner of Record and the same shall be binding upon Owner. To change the Owner of Record, Owner shall deliver written notice to Hotel Manager as required by the Designation Form.

(c)    For purposes of this Agreement: (i) "**Owner**" shall be deemed to include, in addition to the Owner of Record, for purposes of use and occupancy, such person's spouse, domestic partner, parent(s) and unemancipated children, so that requirements herein as to "**Owner**" shall also apply to such person's spouse, domestic partner, parent(s) and unemancipated children, all as identified to Hotel Manager <u>on the Designation Form, or in the event the Subject Unit is owned by an entity or more than one individual, the "Owner" shall mean those individuals set forth</u> on the Designation Form; (ii) "**Hotel Guest**" shall mean any member of the general public that is a guest of the Subject Unit, other than Owner or any person who is a spouse, domestic partner, parent or unemancipated child of Owner or Owner of Record; (iii) "**Guest**" shall mean whichever party is then in occupancy of the Subject Unit, whether Owner or Hotel Guest; and (iv) "**Owner Occupancy Period**" shall mean those times of occupancy for which Owner has requested, and Hotel Manager has confirmed, occupancy by Owner of the Subject Unit, which occupancy shall commence upon check-in at the front desk of the Condominium and shall terminate at the earlier of actual check-out or the designated time for check-out for such occupancy period, all in accordance with this Agreement.

2.  Term of Agreement.

(a)    The term of this Agreement shall commence on the date hereof (the "**Commencement Date**").

(b)    This Agreement shall remain in effect until the earliest to occur of: (i) transfer of title to the Subject Unit by Owner; or (ii) termination of the Hotel Management

.WDC 371455058v5 092625.010400371,455,058v14 087097.010500

Agreement between ~~Sponsor~~the board of managers of the Condominium ("Board") and Hotel Manager (the "**Hotel Management Agreement**") by reason of the termination of the Condominium, default of Hotel Manager, the bankruptcy, dissolution or other termination of existence of Hotel Manager, any termination right expressly provided for in the Hotel Management Agreement or any other reason; or (iii) expiration of the Hotel Management Agreement either in whole or with respect to Operator Services (as defined in the Hotel Management Agreement).

(c)     Upon any termination of this Agreement pursuant to clauses (ii) or (iii) above, Owner shall enter into a new unit management agreement with the replacement hotel manager.

3.     Mandatory Services; Payments.

(a)     Hotel Manager shall have the exclusive authority to perform, or cause to be performed, the following services ("**Mandatory Services**") in respect of the Condominium and the Subject Unit:

(i)     providing front desk/reception service, accepting and managing reservations for use of the Subject Unit, whether arranged by or on behalf of Owner and in whatever manner;

(ii)     enforcing registration and check-in and check-out procedures as established by Hotel Manager from time to time;

(iii)     managing access to the Subject Unit (including, without limitation, the issuance of room keys to Guests, mail service and delivery of messages);

(iv)     providing financial administration and accounting services which shall include, without limitation, **establishing room rental rates,** collecting room rental payments, fees and charges, monitoring and collecting miscellaneous charges, providing financial administration and accounting services and maintaining financial records with respect to the Subject Unit**, all as set forth in the Restrictive Declaration**;

(v)     collecting and remitting hotel accommodation, occupancy and sales taxes applicable to Hotel operations, rental or other taxable use of the Subject Unit;

(vi)     procuring and maintaining comprehensive general liability insurance for all Subject Units, in addition to that procured by the Board pursuant to the By-Laws;

(vii)     procuring and maintaining all necessary licenses and permits required for the operation of the Subject Unit as part of a transient hotel condominium;

(viii)     marketing and promotion (including, without limitation, staff, brochures and advertising and production costs) for the promotion of the Condominium;

3

(ix)     causing to be performed maid and linen services during periods of occupancy of the Subject Unit;

(x)     causing to be performed deep cleaning and repair work in the Subject Unit;

(xi)     ~~caused~~causing to be performed concierge service, telephone service/maintenance, bell services, mail service, security, trash removal and granting of access/front desk service; and

(xii)     such additional Mandatory Services as set forth in Exhibit "B" attached hereto.

(b)     (i) Owner shall pay all costs charged directly to Owner by Hotel Manager under this Agreement, provided that any costs payable hereunder which are **the Owner's share of such costs and are** paid by the Board through Common Charges (which, for all purposes of this Agreement, shall also include Overhead Common Charges) or other assessments imposed by the Board shall be credited by Hotel Manager to such costs.

(ii)     "Per Use" expenses, such as the costs incurred by the Condominium in connection with the provision of housekeeping services, including furnishing Linens (as defined in Section 15(a)), guest supplies and sundries and other amenities, to the Subject Unit are not included in Common Charges. Per Use expenses shall be paid by Owner for each night of occupancy (whether by Owner or a Hotel Guest) through the assessment of a fee (in each instance, the "Per Use Fee") by Hotel Manager and payable to Hotel Manager upon demand under, and subject to, Section 18 of this Agreement. **As of the Effective Date, the Per Use Fee is estimated to be 16/100 Dollars ($.16) per square foot of the Subject Unit, which amount is subject to change as determined by the Board.**

(c)     Neither Owner nor any other person except Hotel Manager shall have any right to manage the Subject Unit or perform any of the Mandatory Services. Owner shall at all times be entitled to receive all such Mandatory Services as are then being made available by Hotel Manager to all Units.

(d)     Owner hereby agrees that Hotel Manager, in its discretion and from time to time, in consultation with and subject to the consent of the Board, may, from time to time, modify all or any of the Mandatory Services, including, without limitation, the prices for same, **if any,** provided that Hotel Manager gives Notice (as hereinafter defined) thereof to Owner.

4.     ~~Optional~~Requested Services. Subject to the terms of this Agreement, Hotel Manager, in its discretion and from time to time, in consultation with and subject to the consent of the Board, may elect to offer optional services to Owner and Hotel Guests, which optional services, as currently envisioned, are more particularly described in Exhibit "C" attached hereto ("~~Optional~~Requested Services"). The cost of the ~~Optional~~Requested Services shall be payable by Owner and Hotel Guests pursuant to a price list which shall be distributed or posted at the Hotel from time to time by Hotel Manager. Owner hereby acknowledges and agrees that Hotel Manager, in its sole discretion and from time to time, may change or discontinue (from time to time and subject to the consent of the Board) certain ~~Optional~~Requested Services and/or

4

the prices therefor offered. In the event that Owner avail himself or herself of any ~~Optional~~Requested Services, Owner shall pay a separate charge therefor ("**Personal Charges**") to Hotel Manager, independent of any amounts otherwise payable by Owner under this Agreement, which Personal Charges shall be Owner's costs under, and subject to, Section 18 of this Agreement.

5.   Right to Enter Subject Unit; Use; Access.

(a)   Owner shall not permit any person or persons entry into the Subject Unit without prior written notification to and coordination with, Hotel Manager (and approval if otherwise required hereunder). Hotel Manager shall have the exclusive right to grant access to the Subject Unit to Owner and Hotel Guests, and to enter the Subject Unit for all purposes set forth in this Agreement or as may otherwise be necessary or desirable for Hotel Manager to carry out the purposes and the intent of this Agreement; provided, however, Hotel Manager shall not deny access to the Subject Unit to Owner for an Owner Occupancy Period.

(b)   In accordance with that certain license agreement by and between Trump Marks SOHO LLC, an affiliate of Hotel Manager ("**Licensor**") and the Board ("**Condominium License Agreement**"), Hotel Manager shall have the further obligation to grant access to Licensor for purposes of ascertaining compliance by the Subject Unit with the requirements of the Condominium License Agreement. Licensor shall be deemed an intended third party beneficiary of the foregoing sentence and may enforce the same against Hotel Manager and Owner.

(c)   At no time may the number of individuals occupying and/or present in the Subject Unit at any time exceed the number designated by Hotel Manager, from time to time, as the maximum occupancy number for the Subject Unit (subject to applicable law).

(d)   (i)   Hotel Manager shall have the right to establish policies and procedures regarding access, control and check-in and check-out procedures, including, without limitation, establishing a mandatory card key system and check-in process and the right to require that all persons staying in the Subject Unit and the Condominium (including Owner) present a valid picture identification. Any access key may be changed periodically by Hotel Manager, in its sole discretion, to maintain access control and prevent unauthorized use of the Subject Unit.

(ii)   Owner acknowledges that, as currently envisioned but subject to change, at Hotel Manager's discretion from time to time, the Subject Unit shall contain an electronic locking device system capable of using specially encoded magnetic keys. All "keys" to the electronic locking device system shall be maintained by Hotel Manager, and Hotel Manager shall copy, retain or distribute any copies thereof. Owner shall not alter, modify or remove any electronic locking devices or other types of locking devices. Owner agrees that issuance of any keys to the Subject Unit, except to Owner during Owner's Occupancy Period, shall be at Hotel Manager's sole discretion. Hotel Manager shall have the right to change locks and locking devices at Owner's expense if, in Hotel Manager's reasonable opinion, it is necessary to do so for security purposes or to conform to Hotel Manager's master key system.

5

6. Registration/Check-in and Use by Owner.

(a) In the event that Owner intends to use the Subject Unit, then Owner agrees, in each instance:

(i) Owner, **or its designee as listed on the Designation Form ("Reservation Designee")**, shall contact the Owners' reservation line established by Hotel Manager from time to time during the term of this Agreement;

(ii) if the Subject Unit is owned by an entity or more than one individual, then the Owner of Record **or the Reservation Designee,** shall be the contact for reserving the Owner Occupancy Period and the Owner of Record shall adhere to all procedures and policies that Hotel Manager may establish concerning reservations;

(iii) Owner shall check in and register at the front desk of the Hotel, provide a credit card to cover all room and other charges (including, without limitation, room charges, Per Use Fees, Personal Charges, Nightly Fee **(as defined in Section 7(a))**, Incidental Charges (hereinafter defined) and all other charges for goods and services provided), check out and otherwise comply with the Hotel's arrival and departure and other check-in and registration procedures. "**Incidental Charges**" shall mean revenue generated from any source other than Gross Unit Revenue (as defined in Section 13(c)) and any other fees or charges to a Guest occupying the Subject Unit, including, without limitation, mini-bar purchases, pay-per-view television services, food and beverage purchases, internet access charges, business center charges, show tickets or other activities, amenities or other sales or service products provided by Hotel Manager or its designees, charges for use of meeting space (if any), dry cleaning services, valet parking services, and other fees and charges related to other services offered by the Hotel;

(iv) Owner **or the Reservation Designee** shall notify Hotel Manager at least five (5) days in advance, in writing **(in this instance e-mail communication shall be sufficient)**, of the ~~expected~~**desired** check-in time and date, ~~expected~~**desired** check-out time and date, name, address and credit card information of each Owner ~~and/or Owner Guest~~ that will use the Subject Unit during any Owner Occupancy Period; provided that Owner's credit card information shall, in all instances, be on file in accordance with clause (vi) below;

(v) Owner shall at all times while staying in the Subject Unit (or otherwise in the Hotel) be subject to and comply with all rules, regulations and policies adopted from time to time by or on behalf of the Condominium, and shall comply with all terms and conditions of the Condominium Documents, as well as any rules and regulations promulgated from time to time by Hotel Manager and the Board, and as more particularly required by Section 11(f) below; and

(vi) Owner shall keep on file with Hotel Manager a current credit card, with such minimum level of available credit as Hotel Manager may require from time to time, to be used for payment of all charges imposed in accordance herewith, or in lieu of Hotel Manager's posting the charge against Owner's account. The determination of whether to post a charge to Owner's account or to Owner's credit card shall be made by Hotel Manager in its sole discretion (and may be made with respect to all charges to Owner, including those which,

6

pursuant to this Agreement, are to be posted against Owner's account). To the extent Hotel Manager elects to post a charge to Owner's account, Owner hereby authorizes Hotel Manager to process all charges incurred by Owner against such credit account in accordance with Hotel Manager's policies.

(b)     Hotel Manager shall have the right to deny check-in for any reason Hotel Manager deems necessary. In addition, if Owner fails to comply with the notice or credit card requirements set forth in this Section 6, then Hotel Manager shall be entitled to deny the check-in by such party whose name has not been furnished to Hotel Manager or valid credit card posted when and as required in accordance therewith.

7.      Unit Management Fee and ~~Convenience Fee~~Hotel Share.

(a)     Hotel Manager, as its fee under this Agreement, shall receive from Owner an amount ("**Unit Management Fee**") equal to the greater of: (x) One Thousand and 00/100 Dollars ($1,000) annually (escalated at a rate of 3% per annum commencing ~~in~~**on January 1,** 2010) (the "**Minimum Fee**"); and (y) Fifteen and 00/100 Dollars ($15.00) (escalated at a rate of 3% per annum commencing ~~in~~**on January 1,** 2010) for each night ~~(the "Nightly Fee")~~ that the Subject Unit is occupied by Owner or a Hotel Guest **(the "Nightly Fee")**. The Minimum Fee shall be billed on the first day of each fiscal year (prorated for partial fiscal years) of the Condominium and shall be payable within thirty (30) days following demand therefor. The Minimum Fee shall be credited against the accrual of Nightly Fees during each fiscal year of the Condominium. Owner shall pay to Hotel Manager, on a quarterly basis, the amount, if any, by which the Nightly Fees incurred since the commencement of the **relevant** fiscal year ~~in question~~ exceed the Minimum Fee ~~(less all sums theretofore paid on account thereof during such fiscal year)~~. Owner authorizes Hotel Manager to pay promptly the foregoing fees on behalf of Owner, at Hotel Manager's election, by deducting such amounts from monies collected by Hotel Manager pursuant to this Agreement or otherwise. **At the end of each fiscal year, Manager shall provide to Owner a reconciliation of the Minimum Fee against the Nightly Fees collected. The accounting shall reflect the Unit Management Fee (ie the greater of the Minimum Fee and the aggregate Nightly Fees) for the relevant year.** For those Unit Owners who retain Hotel Manager as their rental agent pursuant to separate agreement, the Unit Management Fee will be ~~credited~~**the greater of the Minimum Fee or the Nightly Fee and such fee shall be allocated** toward any fees assessed by Hotel Manager under such separate agreement.

(b)     Owner acknowledges that the Common Charges do not include a fee for the availability (at an additional cost) of food and beverage facilities and services (e.g., room service) to the Subject Unit. Pursuant to the Condominium Documents, Owner will therefore be required to pay a fee to the ~~Restaurant~~**owner of the restaurant** Unit ~~Owner~~ to defray the cost of maintaining the availability of such facilities and services regardless of use. The fee will be calculated at the rate of twelve and one-half (12.5%) percent of the Net Unit Income (as hereinafter defined) attributable to the Subject Unit, plus interest, if any, thereon (the "~~Convenience Fee~~**Hotel Share**"). Hotel Manager, as agent for the **owner of the** Restaurant Unit ~~Owner~~, will calculate and assess the ~~Convenience Fee~~**Hotel Share** following the end of each fiscal quarter of the Condominium on the basis of the Net Unit Income (hereinafter defined) collected during the prior quarter. Owner authorizes Hotel Manager to deduct the ~~Convenience~~

7

Fee**Hotel Share** from the monies collected and to remit it to the ~~Restaurant~~**owner of the restaurant** Unit ~~Owner~~. "Net Unit Income" means Gross Unit Revenues less all costs and expenses (other than **contribution to** the FF&E Reserve Fund (as hereinafter defined) ~~contribution~~ and debt service) attributable to the ownership, management and operation of the Subject Unit.

8.     No Rental Services; Rental of Subject Unit by the Public.

(a)     Nothing in this Agreement is intended to authorize Hotel Manager to rent or offer to rent the Subject Unit, and Owner has the exclusive authority to arrange for such use or any other use of the Subject Unit, provided that any such use shall be in compliance with the Declaration, the By-Laws and the Restrictive Declaration; the foregoing is not intended to limit the management duties of Hotel Manager and the other obligations of the parties herein.

(b)     In accordance with the Declaration, the By-Laws and the Restrictive Declaration, the Subject Unit must be available for transient rental (i.e., daily or weekly) when it is not occupied by Owner. The Subject Unit shall be deemed ~~to be made~~ available during any time the Subject Unit is offered for rental by Owner through Hotel Manager or a Qualified Broker.

(c)     (i) In connection with any rental of the Subject Unit by Owner to a Hotel Guest, Owner shall, not less than five (5) days prior to the proposed date of rental, provide Hotel Manager with all rental information with respect to such Hotel Guest, including, without limitation, the name, address, telephone number, occupancy dates (including expected check-in and check-out times), rental rate, credit card information and the like as Hotel Manager may request. In the event that any information provided to Hotel Manager by Owner or such Hotel Guest is inaccurate, then Hotel Manager shall be authorized, in its sole and absolute discretion, to deny access and occupancy of the Subject Unit to the Hotel Guest.

(ii)     Hotel Manager shall be solely authorized (to the exclusion of Owner or any Qualified Broker retained by Owner) to collect all rental and other revenue derived from the rental and/or use of the Subject Unit by any Hotel Guest, and Hotel Manager is hereby authorized to establish a credit account for a Hotel Guest based upon the information provided by Owner. **Except as otherwise provided herein or in the Declaration, and subject to the Hotel Manager's obligation to use commercially reasonable efforts to obtain payment from Hotel Guests for all charges not paid by any such Hotel Guest,** Owner shall be solely liable for all charges not paid by any such Hotel Guest, and shall indemnify Hotel Manager and the Condominium in respect thereof and shall, promptly on demand, pay such unpaid amounts to Hotel Manager. Hotel Manager shall have the right, without limitation, to offset any such charges against any funds then held by Hotel Manager on behalf of Owner. From the Gross Unit Revenues, Hotel Manager shall pay all charges and expenses, including, without limitation, hotel occupancy taxes, sales taxes and other governmental impositions, and any other sums payable to or by Hotel Manager under this Agreement (including, without limitation, the Unit Management Fee, the ~~Convenience Fee~~**Hotel Share** and delinquent Common Charges), and Hotel Manager shall, within thirty (30) days after the expiration of each quarter in each calendar year, deliver to Owner the Net Unit Income received from such prior quarter.

8

9.     Exclusive Occupancy by Guests.  Owner understands that during the time the Subject Unit is rented to, or otherwise occupied by, a Hotel Guest who is registered with the front desk of the Hotel as the then occupant of the Subject Unit, such registered Hotel Guest shall be entitled to the exclusive right of occupancy of the Subject Unit. Therefore, during any such occupancy period, unless Owner is the then registered Guest, Owner shall not enter any portion of the Subject Unit, including, without limitation, any locked owner's closet located therein and designated for Owner's exclusive use, or disturb the registered Hotel Guest and/or the invitees thereof.

10.    Transfer of Subject Unit by Owner.

(a)     Owner shall inform Hotel Manager in writing at least ten (10) days prior to placing the Subject Unit up for sale, and in such written notice Owner shall provide to Hotel Manager the name, address and full contact information for Owner's authorized agent for brokerage and listing of the Subject Unit.  In connection with Owner's efforts to market the Subject Unit for sale, Owner agrees that the Subject Unit shall not be shown for sale when occupied by a Hotel Guest and Owner shall only be permitted to show the Subject Unit when the Subject Unit is not otherwise in use, unless otherwise agreed by Hotel Manager in advance of such showing; notwithstanding the foregoing, however, Hotel Manager shall exercise reasonable efforts to accommodate the Owner's request to show the Subject Unit to prospective purchasers, provided that such entry does not inconvenience any Hotel Guest.  Further, prior to any showing to prospective purchasers, Owner shall first notify Hotel Manager and coordinate with Hotel Manager any showing of the Subject Unit and the common areas and amenities of the Hotel. Owner shall not be permitted to conduct an "open house" for the Subject Unit.

(b)     As provided in the Declaration, any ~~purchaser of~~third party who purchases the Subject Unit from Owner during the Term or any and/or successor to or assignee of Owner ("Unit Purchaser") shall be obligated to enter into a unit management agreement in the form then being used by Hotel Manager; such ~~purchaser~~Unit Purchaser shall be obligated to honor any pre-existing reservations and rental commitments. In addition to the purchase price for the Subject Unit, Owner shall receive from the Unit Purchaser any credit for the value of the FF&E Reserve Fund as of the date of transfer of the Subject Unit.  Ownership of the FF&E Reserve Fund shall be transferred to the Unit Purchaser. Without limiting the foregoing, Owner further agrees to honor, or cause any ~~transferee~~Unit Purchaser to honor, all reservation and rental commitments for the Subject Unit in the event of a transfer of the Subject Unit.  Without implying any obligation on the part of Hotel Manager, Owner shall be liable for any and all damages incurred in relocating Hotel Guests to facilitate a transfer of the Subject Unit.

11.    Owner's Obligations.  In addition to the obligations of Owner set forth elsewhere in this Agreement:

(a)     Owner agrees to comply with any restrictions set forth in the Condominium Documents with respect to allowing pets in the Subject Unit and any prohibitions on smoking in the Subject Unit.  Owner agrees to comply with such restrictions at all times during the use of the Subject Unit by Owner.

9

(b)     If the Subject Unit contains a locked owner's closet, nothing shall be kept or stored in such closet that: (i) violates any provision of any of the Condominium Documents; (ii) is perishable; (iii) causes any odor to emanate from such closet; (iv) could present a hazard to the Condominium, Owner, any Guest, any employee of the Condominium or Hotel Manager or any other person or property; (v) is dangerous (in the judgment of Hotel Manager) or combustible; or (vi) otherwise, in the judgment of Hotel Manager, presents a risk, hazard or possible detriment to the Condominium, Owner, any Guest, any employee of the Condominium or Hotel Manager or any other person or property. Owner shall provide Hotel Manager with a key to any such locked owner's closet.

(c)     Owner shall not at any time alter the Subject Unit or remove from the Subject Unit any of the furniture, furnishings and fixtures that are installed in the Subject Unit at any time, replace any such items nor add any items without the consent of Hotel Manager, which consent may be given or withheld in Hotel Manager's sole discretion.

(d)     Owner shall be responsible, at Owner's sole cost and expense, for all charges and expenses due and owing in connection with ownership of the Subject Unit, including, without limitation: (i) ~~mortgage and/or other financing costs; (ii)~~ real and personal property taxes allocable to the Subject Unit or the rental thereof; (~~iii~~ii) all insurance premiums and deductibles allocable to or otherwise applicable to the Subject Unit as contemplated in or required by the Condominium Documents or this Agreement; (~~iv~~iii) regular and special condominium assessments and charges levied against the Subject Unit pursuant to the Condominium Documents and this Agreement, including, without limitation, Common Charges and all fees and charges due under this Agreement; (~~v~~iv) any fees to be paid by Owner or any other person, whether under the Agreement or otherwise; (~~vi~~v) all local and long distance telephone charges from the Subject Unit (except as otherwise allocated hereunder); and (~~vii~~vi) all utility costs allocable either directly or indirectly to the Subject Unit, as applicable (collectively, sometimes, the "**Ownership Costs**"). In the event that Owner fails to timely pay all Ownership Costs, then Hotel Manager reserves the right, but shall not be obligated, to make payment of any such Ownership Costs on behalf of Owner, and any such payments made by Hotel Manager pursuant to this Section 11(d) shall be charged, at Hotel Manager's election, against Owner's credit card or Owner's account hereunder and Hotel Manager shall have the right, without limitation, to deduct such amounts from monies collected by Hotel Manager pursuant to this Agreement or otherwise. Notwithstanding anything herein contained to the contrary, Owner agrees that the Ownership Costs are the sole obligation of Owner, and Hotel Manager shall have no liability for the payment of same or for reimbursement to Owner for same.

(e)     Owner shall comply with all provisions of the Condominium Documents and applicable zoning and other laws and rules and regulations governing: (i) the use and occupancy of the Subject Unit (including, without limitation, restrictions in the Restrictive Declaration), and (ii) the use of the Common Elements, which are, from time to time, promulgated and set forth in writing by Hotel Manager and/or the Board pursuant to the Condominium Documents. Hotel Manager shall have the right to impose additional rules and regulations not contemplated hereby and to amend, modify or supplement such rules and regulations in order to operate the Condominium in an efficient and effective manner and Owner hereby acknowledges and consents to the imposition of such new rules and regulations and to any such amendment, modification or supplement, provided the same does not have a material

10

adverse impact on Owner or the Subject Unit. Hotel Manager shall deliver written notice to Owner of any newly imposed rules and regulations and of any amendments, modifications or supplements to the rules and regulations described in this Section 11(e). The foregoing requirement shall in no event limit the obligation of Owner to comply with any and all rules and regulations promulgated by the Board under the Condominium Documents. Hotel Manager shall have the right to take such action as it shall deem reasonably necessary to ensure that Owner and the Subject Unit comply with such provisions and shall have no liability to Owner by reason of any such action except in the case of fraud, gross negligence or willful misconduct.

(f)     Without otherwise modifying or limiting Owner's obligation to comply with the Declaration, Owner specifically acknowledges and agrees that: (i) Section 8.1 of the By-Laws are incorporated herein by reference and made a part hereof; and (ii) Owner shall not alter, modify, make additions to, remove or add to or otherwise improve or decorate the Subject Unit (including, without limitation, the FF&E (as defined in Section 13(a)(i)) and the Linens therein) in any way without the prior written consent of Hotel Manager, which consent may be given or withheld in Hotel Manager's sole discretion.

(g)     Owner hereby grants Hotel Manager up to seven (7) complimentary nights of usage with respect to the Subject Unit during each calendar year. Hotel Manager may use the complimentary room nights in its sole discretion but subject to and in accordance with standard hotel industry practices (e.g., guest retention). ~~To the extent not payable (or paid) by Owner as Common Charges, Owner will be solely responsible for payment of any and all standard per-use costs and expenses as well as sales taxes and other governmental impositions incurred by Hotel Manager in connection with the complimentary use of the Subject Unit.~~ Owner will not be responsible for the payment of Incidental Charges, __Per Use Fees, taxes and other governmental impositions__ incurred by the __Hotel Manager or__ occupant of the Subject Unit during ~~any period~~__nights__ of complimentary use __in accordance with this Section 11 as determined by Hotel Manager__.

12.     Employment and Personnel.  Subject to the terms of the Hotel Management Agreement, Hotel Manager shall arrange, through and at the expense of the Board, for such personnel as are necessary to accomplish the Mandatory Services. The Board shall retain, hire, supervise and discharge all labor and employees required for performance of the Mandatory Services required under this Agreement. All such labor and employees shall be those of the Board, not of Hotel Manager.

13.     Repair/Maintenance of Subject Unit.

(a)     (i)     To the extent not payable (or paid) by Owner as Common Charges and/or Per Use Fees, Owner shall be solely responsible for the payment of any and all costs incurred by Hotel Manager in deep-cleaning, repair and maintenance of, and securing replacements within, the Subject Unit, including, but not limited to, the inventory of all personal property that is included in and is to be maintained in the Subject Unit as required by Hotel Manager from time to time, which shall include all furniture, fixtures, equipment and furnishings (which may include, but shall not be limited to, furniture, decor items, bedspreads, comforters, duvets, duvet covers, dishes (where applicable), glassware, utensils (where applicable), cookware (where applicable), color television, clock, radio, drapes and other window treatments

11

and decorative accessories), decorations, wall coverings and other interior design appointments that comply with the minimum requirements set forth by Hotel Manager (collectively, the "**FF&E**"). Except as otherwise specified in this Agreement, the cost of services provided by Hotel Manager or any outside vendor shall be charged to Owner in accordance with schedules of rates distributed or posted from time to time. Owner authorizes Hotel Manager to pay promptly the foregoing charges and expenses on behalf of Owner by deducting such amounts from monies collected by Hotel Manager pursuant to this Agreement or as otherwise provided in Section 18.

(ii) In addition, Owner agrees, and authorizes Hotel Manager to retain the services of the Condominium, or such other third party provider as Hotel Manager may designate in its sole discretion, to be exclusively responsible for providing maintenance and/or engineering services for routine maintenance of the Subject Unit. All costs incurred in performing such maintenance and/or engineering services will be performed at Owner's sole expense and, in connection therewith, Owner authorizes Hotel Manager to deduct the cost of such labor and materials from any monies owing to Owner hereunder or as otherwise provided in Section 18 and to remit such sums to the party performing such services. Documentation evidencing such expenditures shall be provided to Owner upon Owner's written request therefor.

(b) Owner agrees that the Subject Unit, including terraces, if any, and all FF&E in the Subject Unit, shall be kept and maintained in a "first-class condition" and in all events consistent with the applicable provisions of the Condominium Documents and the Condominium License Agreement. Hotel Manager shall, from time to time, require Owner, at Owner's expense, to replace the FF&E in the Subject Unit in order to maintain the Subject Unit in the suitable manner and condition, in Hotel Manager's determination, and which comply in kind, quantity and quality with the requirements set forth in the Condominium License Agreement. Hotel Manager shall take such steps as it deems necessary to maintain the interior of the Subject Unit, including FF&E, in a condition required by the Condominium License Agreement, and to undertake Owner's obligations under this paragraph, at the sole cost and expense of Owner.

(c) <u>Furniture, Fixtures, and Equipment Repair and Replacement.</u> (i) Supple-menting the provisions of Section 13(b), at Owner's expense, Hotel Manager shall repair or replace the FF&E ~~and Linens~~, or cause the FF&E ~~and Linens~~, to be repaired or replaced by either the Condominium or a third party provider as Hotel Manager may designate in its sole discretion, as such repairs and replacements may be needed from time to time, in the judgment of Hotel Manager or the Board. To the extent not payable (or paid) by Owner as Common Charges, all fees, costs and expenses arising out of such services shall be charged to Owner. Owner shall be required to contribute towards a reserve fund (the "**FF&E Reserve Fund**") in connection with the maintenance and repairs to the FF&E. The amount of such contribution to the FF&E Reserve Fund shall equal: (i) two (2%) percent of Gross Unit Revenues from the opening date of the Hotel through and including the initial full fiscal year of the Condominium; (ii) three (3%) percent of Gross Unit Revenues during the second full fiscal year of the Condominium; and (iii) four (4%) percent of the Gross Unit Revenues for each subsequent fiscal year of the Condominium thereafter. "**Gross Unit Revenues**" shall mean, with respect to any period, all room revenues actually received by Hotel Manager from Hotel Guests derived directly from the rental of the Subject Unit (whether through Hotel Manager or a Qualified Broker) (including 'all telephone revenues and including any cancellation fees actually collected by Hotel Manager as a

.WDC 371455058v5 092625.010100371,455,058v14 087097,010500

result of a reservation designated for the Subject Unit having been cancelled in a manner that would entitle Hotel Manager to collect such cancellation fees) and properly attributable to the period under consideration determined in accordance with the Uniform System ~~of Account~~, and determined on the accrual method of accounting, less and except: (i) any applicable excise, value added, sales, use, occupancy, bed, resort, tourism and/or other similar government taxes, duties, levies or charges assessed in conjunction with the renting of the Subject Unit; and (ii) any Incidental Charges (which sum(s) will be paid to the appropriate service provider (e.g., the Condominium, the Restaurant Unit and/or the Spa Unit). Notwithstanding the foregoing, in any event, Owner shall be responsible for all replacement costs for the FF&E, from time to time, whether or not the amount deposited in the FF&E Reserve Fund is sufficient therefor.

(ii)   Notwithstanding anything otherwise herein contained, the FF&E Reserve Fund may be used by Hotel Manager for any of the following purposes: (i) the replacement of, additions to and refurbishment of capital items within the Subject Unit, including FF&E required for the Subject Unit, as and when such FF&E are in need of replacement or refurbishment in accordance with the standards hereinabove described, as determined by Hotel Manager in its sole discretion**, and** (ii) ~~the replacement of Linens; and (iii)~~ the payment of any amounts owed by Owner to Hotel Manager under this Agreement, the Declaration, the By-Laws or the Restrictive Declaration, including but not limited to amounts owed by Owner to Hotel Manager in connection with the Condominium capital improvements.

14.   <u>Damage to the Subject Unit</u>. Except as otherwise provided herein or in the Declaration, **and subject to the Hotel Manager's obligation to use commercially reasonable efforts to obtain payment from Guests responsible for damage to the Subject Unit,** Owner shall be liable for all damage to the Subject Unit and all costs thereof, and for all FF&E and other items of personal property within the Subject Unit. **If observed,** Owner shall report to Hotel Manager any damage to the Subject Unit or missing items immediately. Hotel Manager shall inspect the Subject Unit, ~~at Owner's expense,~~ after each occupancy and shall make a reasonable attempt to ascertain damage to the Subject Unit or missing items, if any. Owner agrees that Hotel Manager shall not be responsible or liable for any damages to or items missing from the Subject Unit, excluding damages arising from the willful misconduct of Hotel Manager, **and that Hotel Manager has no duty to commence litigation in connection with damage to the Subject Unit.**

15.   <u>Cleaning, Maintenance and Repair Services and Replacement</u>. The following cleaning, maintenance, repair, replacement and housekeeping services will be arranged by or through Hotel Manager and the cost thereof shall be at Owner's expense, unless payable (or paid) by Owner as Common Charges and/or Per Use Fees:

(a)   <u>Routine Housekeeping</u>. Hotel Manager will cause to be provided Mandatory Services applicable to cleaning for the Subject Unit in connection with the use and occupancy by Owner and a Hotel Guest. Notwithstanding the foregoing, Owner acknowledges and agrees that Hotel Manager will from time to time, at Owner's sole expense, replace the pillows, pillow cases, towels, sheets, blankets, bathrobes and other linen items (including but not limited to, replacement of sheets, pillow cases and towels) (collectively, "Linens") within the Subject Unit and that the cost therefor shall be included in the Per Use Fee.

13

(b)   Periodic Deep Cleaning.  Hotel Manager will cause to be provided, as needed but at least once per calendar year, a comprehensive cleaning of the Subject Unit.  By way of example such cleaning may include, but may not necessarily be limited to: flipping mattresses; dusting ceilings; wiping down of walls, drawers and ceiling lights; touch up painting of walls, doors, cabinets and ceilings; cleaning of carpets; and polishing of surfaces.  If in Hotel Manager's sole judgment outside contractors are necessary to provide services such as painting or cleaning of upholstery, draperies or carpet, Hotel Manager will obtain, or cause to be obtained, such services, and all costs and fees, incurred will be charged to and payable by Owner upon demand.  The Subject Unit shall not be available for use or rental during the time any of the foregoing services are performed with respect to the Subject Unit.

(c)   Hotel Manager will schedule, at Owner's expense (except to the extent payable (or paid) as Common Charges and/or Per Use Fees) all Owner's and Hotel Guest's departure cleaning, after Owner's or Hotel Guest's occupancy of the Subject Unit.

(d)   Annual Maintenance Inspection.  At least once per calendar year, conduct or cause to be conducted, at Owner's expense, a preventive mechanical maintenance inspection; in addition, HVAC systems shall be inspected periodically by a certified mechanical contractor to ensure proper operation prior to the winter and summer seasons.  The fee(s) for such inspections, as well as any expenses for the replacement or repair of any mechanical and other systems and items or FF&E shall be at Owner's expense, unless payable (or paid) as Common Charges or otherwise the responsibility of the Board under the By-Laws.  Hotel Manager shall not be responsible or liable to Owner for any defects, injuries or damages caused by any defects in the Subject Unit (whether structural in nature or otherwise) or for any failure to discover or to disclose to Owner any construction, design and maintenance defects which could have been or were discovered from any inspection(s) of the Subject Unit pursuant to this Section 15 or otherwise.

(e)   Periodic Maintenance and Repair Inspection.  In addition to the mechanical maintenance inspections required under paragraph (d) above, and Hotel Manager's other rights hereunder, Hotel Manager may, at Owner's expense, also inspect, or cause the inspection of, the Subject Unit from time to time for general maintenance needs, and repair or replacement of the FF&E.  Such inspection will be limited to matters easily ascertainable, and are not to be construed as a guaranty or warranty that maintenance, repair or replacement needs may not unexpectedly occur.  If such inspections reveal that repair, replacement and/or refurbishing is necessary to properly maintain the Subject Unit to standards in accordance with the requirements of the Condominium License Agreement, as determined by Hotel Manager in its sole discretion, Hotel Manager shall cause such repair, replacement and/or refurbishing to be undertaken, at Owner's cost.

16.   Non-Routine Housekeeping Services – Owner.  All further housekeeping services for Owner and Hotel Guests, performed either at their request or because needed, will be provided by Hotel Manager at a further additional charge to Owner.  Such services will be charged directly to Owner or Hotel Guest and billed to Owner or Hotel Guest, as the case may be.  The parties acknowledge the importance of having the Subject Unit clean and ready for the next occupancy.  Hotel Manager shall have the sole discretion to determine the condition of the

14

Subject Unit and the extent of cleaning required following each occupancy by Owner or Hotel Guests.

17.    Telephone, Cable and Technical Device Charges.

(a)    Hotel Manager will cause to be connected telephone lines in the Subject Unit to the Condominium's telephone switchboard and the basic monthly service fee (excluding any additional charges for collect, person to person or third party billing telephone calls) will be advanced by the Condominium. When Owner or Hotel Guests desire to make a local, collect, person to person, third party billing, or other telephone calls, he or she will either dial the local number direct or dial the designated number for Operator Assisted Service or contact the Condominium operator. The Condominium operator will bill the call to (i) Owner's account or (ii) Hotel Guests' credit cards or telephone cards, as appropriate. Hotel Manager will cause to be arranged, as an additional charge, to Owner or Hotel Guests, broadband connection, internet connection or similar forms of communication service to the Subject Unit.

(b)    Hotel Manager will cause to be arranged basic cable television service to the Subject Unit utilizing the Condominium's cable system and such additional cable services as the Board, in consultation with Hotel Manager, may from time to time determine in its discretion. Pay-per-view, expanded service and other subscription movies and services shall be billed separately to Owner or Hotel Guest requesting such service and shall be considered ~~Optional~~Requested Services.

18.    Owner's Costs.

(a)    Hotel Manager may, without Owner's prior consent or authorization, charge Owner's account (and deduct from any sums collected by Hotel Manager) or Owner's credit card, at Hotel Manager's election, for all charges to, or costs and expenses incurred on behalf of, Owner pursuant to this Agreement, including, but not limited to, all fees and charges incurred in connection with the use of the Subject Unit by Owner, Incidental Charges, the Per-Use Fee, the ~~Convenience Fee~~Hotel Share, Personal Charges, the cost of goods and services provided to Owner at any time or provided to the Subject Unit during any Owner Occupancy Period, or as otherwise permitted under this Agreement. To the extent not so charged or deducted by Hotel Manager, Owner agrees to pay any such sums within fifteen (15) days following receipt of a statement therefor from Hotel Manager. Interest of one and one-half percent (1.5%) per month (an interest rate of eighteen percent (18%) per annum) or the maximum lawful rate, whichever is lower, may accrue on the balance remaining unpaid thirty (30) days after the statement date. Owner understands that if Hotel Manager commences any court action to collect past due accounts owing from Owner, Owner will be liable for all costs and expenses incurred by Hotel Manager in pursuing the collection thereof, including, without limitation, Hotel Manager's reasonable attorneys' fees and court costs.

(b)    In the event that Owner fails to comply with any of the payment obligations set forth in this Agreement, and fails to promptly pay to Hotel Manager any such amounts as and when such amounts are due and payable in accordance with this Agreement, Hotel Manager shall have a lien on the interest of Owner in the Subject Unit, as well as any other Unit owned by Owner, in the amount of any sums due from Owner, and Hotel Manager shall

15

have the right to foreclose on such lien in accordance with applicable laws; provided, however, that such lien shall be subordinate to the lien of a prior recorded first mortgage on the interest of such Owner. Except as hereinafter provided, the lien provided for in this Section 18(b) shall not be affected by any transfer of title to the Subject Unit or any other Subject Unit to which such lien is attached.

19. <u>Hotel Placement Items</u>. Hotel Manager shall have the right, at its sole cost and expense, to place and maintain in the Subject Unit or otherwise make available, to Owner and Hotel Guests, from time to time, goods and other items, for purchase by Owner or any Hotel Guests, such as, without limitation, bottled water, bathrobes, mini-bar items, and marketing and promotional items relating to the products or services of the Condominium, the Hotel or the hotel brand, or any other person designated as a hotel brand party, from time to time ("**Hotel Placement Items**"). In no event shall any portion of the revenues from Hotel Placement Items accrue to Owner. Notwithstanding the foregoing, Owner shall not place in the Subject Unit any items similar to the Hotel Placement Items or any items which Hotel Manager, in its sole discretion, prohibits in the Subject Unit at any time during the Term.

20. <u>Non-Discrimination</u>. Notwithstanding anything herein to the contrary, the prices charged to Owner by Hotel Manager with respect to any cleaning, maintenance and repair services shall not be less favorable than the prices for the same services provided to the other Unit Owners.

21. <u>Default by Owner</u>. Upon the occurrence of any Owner's Default (as defined below), then, notwithstanding any other provisions to the contrary in this Agreement, Hotel Manager shall have the right to pursue any and all legal and equitable claims against Owner otherwise permitted under the Condominium Documents and/or by applicable law. The terms of this Agreement shall not be deemed to impair the rights of Hotel Manager to exercise any right or remedy, whether for damages, injunctive relief, specific performance or otherwise, upon any breach, nor shall any breach hereof affect the rights of Hotel Manger with respect to any liability or claims accrued or arising out of events occurring prior to the date of such breach. As used herein, "**Owner's Default**" shall mean failure of Owner: (a) to pay or provide funds to Hotel Manager or third parties when due, as required under the terms of this Agreement; or (b) to perform any promise or obligation under this Agreement (other than the payment of money which is governed by clause (a) above), within twenty (20) days after Notice of such failure, provided that, if such failure cannot reasonably be cured within twenty (20) days after Notice but Owner commences, within such twenty (20)-day period, the actions necessary to cure such Owner's Default and thereafter diligently continues to, and does, effect such cure, then no Owner's Default shall be deemed to have occurred.

22. <u>Default by Hotel Manager</u>. Upon the occurrence of any Hotel Manager's Default (as defined below), then, notwithstanding any other provisions to the contrary in this Agreement, Owner shall have the right to pursue any and all legal and equitable claims against Hotel Manager otherwise permitted by applicable law. The terms of this Agreement shall not be deemed to impair the right of Owner to exercise any right or remedy, whether for damages, injunctive relief, specific performance or otherwise, upon any breach, nor shall any breach hereof affect the rights of Owner with respect to any liability or claims accrued or arising out of events occurring prior to the date of such breach. "**Hotel Manager's Default**" shall mean the material

16

failure by Hotel Manager to perform all of its obligations under this Agreement repeatedly for a period of not less than sixty (60) days, as determined by the final, non-appealable judgment of a court of law with jurisdiction thereover. In the event of Hotel Manager's Default, then, unless otherwise provided in any non-appealable judgment of a court of law, Owner shall give Hotel Manager Notice thereof, and Hotel Manager shall have a period of thirty (30) days thereafter (or such additional period as may reasonably be required to cure such Hotel Manager's Default if such cure cannot reasonably be completed within thirty (30) days).

23. <u>Memorandum of Agreement</u>. This Agreement shall not be recorded by either party to this Agreement; provided, however, Hotel Manager and Owner shall execute a memorandum of this Agreement in the form attached hereto as <u>Exhibit "D"</u> which memorandum may be recorded by Hotel Manager in the Recorder's Office in New York, New York and which memorandum shall, among other things, provide notice of the lien right described in Section 18(b).

24. <u>Miscellaneous</u>.

(a) <u>Notice</u>. Except as otherwise expressly provided in this Agreement, all notices, requests, demands and other communications hereunder ("**Notice**") shall be in writing, duly executed by an authorized officer or agent of the party so giving such Notice, and either personally delivered to any duly authorized representative of the party receiving such Notice or sent by facsimile transmission, registered or certified mail, or by courier service, return receipt requested, addressed:

If to Hotel Manager, to:

> Jim Petrus
> c/o Trump International Hotels Management LLC
> 725 Fifth Avenue
> New York, NY 10022
> ph: (212) 715-7227
> fx: (212) 688-8135
> jpetrus@trumporg.com

> Allen Weisselberg
> c/o Trump International Hotels Management LLC
> 725 Fifth Avenue
> 26th floor
> New York, NY 10022
> ph: (212) 715-7224
> fx: (212) 832-5396
> weisselberg@trumporg.com

> Jason Greenblatt, Esq.
> c/o Trump International Hotels Management LLC
> 725 Fifth Avenue
> 26th floor
> New York, NY 10022

.WDC 371455058v5 092625.010100371,455,058v14 087097.010500

ph: (212) 715-7212
fx: (212) 980-3821
jgreenblatt@trumporg.com

Bernard R. Diamond, Esq.
c/o Trump International Hotels Management LLC
725 Fifth Avenue
26th floor
New York, NY 10022
ph: (212) 715-7288
fx: (212) 980-3821
bdiamond@trumporg.com

If to Owner:          _____

                      _____

**Notices shall be sent to the Owner of Record at the address and/or facsimile number set forth in the Designation Form executed by Owner.**

Except as otherwise expressly provided for herein, all Notices shall be effective for all purposes upon personal delivery thereof or, if sent by facsimile transmission, shall be effective on the date of transmission duly shown on the confirmation slip, or, if sent by mail or air freight or courier service, shall be effective on the date of delivery duly shown on the return receipt, or upon attempted delivery if delivery is refused or the return receipt is not signed or if delivery is impossible because of failure to provide a reasonable means for accomplishing delivery. Any party may at any time change the addresses for Notices to such party by providing a Notice in the manner set forth in this Section 24(a); provided, however, that to be effective, any such change of address must be actually received.

      (b)    <u>Governing Law</u>. This Agreement and its application shall be governed by the laws of the State of New York without regard to principles of conflicts of law. The courts of the State of New York shall have personal jurisdiction over the parties hereto and the judicial system for the County of New York shall be the exclusive forum for any legal action brought in relation to this Agreement.

      (c)    <u>Assignment/Binding Effect</u>.

          (i)    Hotel Manager shall have the right, without Owner's consent, to assign this Agreement, and any or all of Hotel Manager's rights and obligations hereunder, without further liability for acts or omissions occurring after such assignment.

          (ii)    This Agreement and all provisions hereof shall be binding upon, and shall inure to the benefit of and be enforceable by, the parties hereto and their respective successors and assigns.

18

(d)    Entire Agreement.    This Agreement constitutes the entire agreement between the parties with respect to the subject matter of this Agreement and there are no further or other representations, statements, warranties, agreements, understandings or terms, whether written or oral, with respect to the subject matter hereof. Except as otherwise expressly provided for in this Agreement, this Agreement may be amended or modified only by an instrument in writing, signed by the parties or their duly authorized agents. This Agreement creates no relationship between Owner and Hotel Manager other than an agency relationship pursuant to the terms and for the purposes of this Agreement.

(e)    Hold Harmless; Indemnity.    Owner hereby agrees to the fullest extent permitted by law, to defend, indemnify and hold Hotel Manager, Sponsor, the Board, the managing agent of the Condominium, if any, and all of their owners, affiliates and subsidiaries, and their respective employees, officers, directors, owners, representatives and agents (collectively, the "**Hotel Manager Parties**"), free and harmless from and against any and all acts, omissions, investigations, inquiries, liabilities, losses, damages, fines, penalties, demands, taxes, injuries, claims, causes of action, judgments, allegations, costs and expenses, including reasonable attorney's fees and costs (collectively, "**Claims**") arising and/or relating directly or indirectly from injury to person or property, or both sustained by anyone in and about the Subject Unit (including, but not limited to, a slip and fall), Owner's and invitees' use of the Subject Unit or the Condominium, from any breach or default in the performance of any obligation on Owner's part to be performed under this Agreement, and arising from any acts, omissions, negligence or willful misconduct of Owner or any of Owner's agents, contractors, employees, invitees, patrons, customers or members in or about the Condominium. Owner hereby assumes all risk of damage to property or injury to persons in, upon or about the Subject Unit from any cause (including, without limitation, any injury resulting from a slip and fall in, upon or about the Subject Unit), and Owner hereby waives all claims in respect thereof against Hotel Manager and the Hotel Manager Parties, excepting where the damage is caused solely by the gross negligence or willful misconduct of Hotel Manager or the Hotel Manager Parties. With respect to the previous sentence, Hotel Manager bears responsibility for the conduct of its employees (other than core executive staff) or consultants only in the event that Hotel Manager has performed with gross negligence or willful misconduct the hiring, engaging, supervision, or training of such employees or consultants.

(f)    Attorneys' Fees.    If any action or proceeding is commenced by either party to enforce their rights under this Agreement or to collect damages as a result of the breach of any of the provisions of this Agreement, the prevailing party in such action or proceeding, including any bankruptcy, insolvency or appellate proceedings, shall be entitled to recover all reasonable costs and expenses, including, without limitation, reasonable attorneys' fees and court costs, in addition to any other relief awarded by the court.

(g)    Waiver of Trial by Jury.    HOTEL MANAGER AND OWNER, TO THE EXTENT THEY MAY LEGALLY DO SO, HEREBY EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION, CAUSE OF ACTION, OR PROCEEDING ARISING UNDER OR WITH RESPECT TO THIS AGREEMENT, OR IN ANY WAY CONNECTED WITH, OR RELATED TO, OR INCIDENTAL TO, THE DEALINGS OF THE PARTIES HERETO WITH RESPECT TO THIS AGREEMENT OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER NOW

19

EXISTING OR HEREAFTER ARISING, AND IRRESPECTIVE OF WHETHER SOUNDING IN CONTRACT, TORT, OR OTHERWISE. TO THE EXTENT THEY MAY LEGALLY DO SO, HOTEL MANAGER AND OWNER HEREBY AGREE THAT ANY SUCH CLAIM, DEMAND, ACTION, CAUSE OF ACTION, OR PROCEEDING SHALL BE DECIDED BY A COURT TRIAL WITHOUT A JURY AND THAT ANY PARTY HERETO MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE OTHER PARTY OR PARTIES HERETO TO WAIVER OF ITS OR THEIR RIGHT TO TRIAL BY JURY.

(h)     Severability. If any term or provision of this Agreement or application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the remainder of this Agreement or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby, and each provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

(i)     Counterparts, Headings, and Defined Terms. This Agreement may be executed in counterparts, each of which shall be an original, but all of which together shall constitute one agreement. The headings to sections of this Agreement are for convenient reference only and shall not be used in interpreting this Agreement.

(j)     Waiver. Failure by a party to insist upon the strict performance of any provision of this Agreement, or to exercise any right or remedy consequent upon the breach thereof, shall not constitute a waiver of any such breach or any subsequent breach of such provision. No provision of this Agreement and no breach thereof shall be waived, altered or modified except by written instrument. No waiver of any breach shall affect or alter this Agreement, but each and every provision of this Agreement shall continue in full force and effect with respect to any other breach then existing or subsequent breach thereof

(k)     Forbidden Parties. Owner represents and warrants that Owner is not a person or entity with whom United States persons and/or entities are forbidden from doing business or who may jeopardize any licenses or permits (including any liquor or other operating licenses) issued to the Condominium, Hotel Manager, any Hotel Manager Parties or any affiliate thereof.

(l)     CPI Adjustment. In each instance in this Agreement in which a specified Dollar amount is stated said fee shall be increased as of January 1st of each calendar year by multiplying such initial figure by a fraction, the denominator of which shall be the Consumer Price Index for All Urban Consumers (Base 1982-1984=100) published by the U.S. Bureau of Labor Statistics for the entire United States ("CPI") published immediately prior to the date of this Agreement, and the numerator of which shall be the CPI published immediately prior to the date of calculation. Notwithstanding the foregoing, the Minimum Fee and the Nightly Fee shall be escalated at a rate of three percent (3%) per annum as set forth in Section 7(a) hereof. In the event that the CPI ceases to use the 1982-84 base of 100, or the CPI shall be discontinued for any reason, the parties hereto shall thereafter accept and use such other index, or comparable statistics on the cost of living for the consumer in the United States area, as shall be computed and published by an agency of the United States, or by a responsible financial periodical or

20

recognized authority, then to be selected by the ~~Parties~~parties.  In no event shall the fee in any calendar year be less than said fee during the prior calendar year.

~~Name  (Please Print)~~                          ~~Social  Security  or  Tax  I.D.~~
~~Number~~

~~Address~~

~~City  State  Zip Code~~

[CONTINUED ON NEXT PAGE]

21

This Agreement is signed with Owner's understanding and knowledge of the information contained herein. Owner agrees to comply with the policies and procedures set forth within this Agreement. If this Agreement is altered in any way including additions, deletions or changes made by Owner following execution by Hotel Manager, then, at Hotel Manager's sole election, this Agreement shall become automatically void and of no force or effect.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the _____ day _____ of _____, 20___.

**HOTEL MANAGER:**

**TRUMP INTERNATIONAL HOTELS MANAGEMENT LLC,**
A Delaware limited liability company

By:     _____
Name:   _____
Title:  _____

**[Signatures appear on the following page.]**

**OWNER:**

_____

[SIGNATURE]

_____

[PRINT NAME]

_____

Social Security or Tax I.D. Number

_____

Address

_____

City      State      Zip Code


_____

[SIGNATURE]

_____

[PRINT NAME]

_____

Social Security or Tax I.D. Number

_____

[SIGNATURE]
Address

_____

[PRINT NAME]

_____

[SIGNATURE]

_____

City      State      Zip Code

[PRINT NAME]

## EXHIBIT "A"

## FORM OF DESIGNATION FORM

<div style="border: 1px solid black; padding: 10px;">

### DESIGNATION FORM
### TRUMP SOHO HOTEL CONDOMINIUM

Condominium Unit#: _____ ("Subject Unit")

Owner of Record: _____ ("Owner of Record")

      On this _____ day of _____, 200_, we, the undersigned, collectively owning fee simple title to the Subject Unit ("Owner"), do hereby authorize _____ to act as the Owner of Record pursuant to Section 1(b) of that certain Unit Management Agreement, dated of even date herewith, by and between Owner and Trump International Hotels Management LLC. We further acknowledge, that the designation of Owner of Record shall be in full force and effect unless and until this Designation Form is replaced with a complete and fully executed Designation Form delivered to Hotel Manager.

**Owner:**

By: _____       Spouse+: _____

Owner : _____       Parent(s): _____

Address: _____       Child*: _____

          _____       Child*: _____

          _____       Child*: _____


By: _____       Spouse+: _____

Owner : _____       Parent(s): _____

Address: _____       Child*: _____

          _____       Child*: _____

          _____       Child*: _____


By: _____       Spouse+: _____

Owner : _____       Parent(s): _____

Address: _____       Child*: _____

          _____       Child*: _____

          _____       Child*: _____


~~By:~~ _____       ~~Spouse+:~~ _____

~~Owner :~~ _____       ~~Parent(s):~~ _____

~~Address:~~ _____       ~~Child*:~~ _____

          _____       ~~Child*:~~ _____

          _____       ~~Child*:~~ _____

+spouse or domestic partner, *unemancipated child

</div>

EXHIBIT "B"

Mandatory Services

EXHIBIT "C"

Optional~~Requested~~ Services

(a) laundry services and dry cleaning services,
(b) personal services (such as massage and personal training),
(c) food and beverage services (such as room service and catering),
(d) coordinating of private air and land transportation, off-site restaurant reservations, florist services, tours, babysitters, car rentals and flight changes,
(e) mail, newspaper and similar deliveries, and/or
(f) other services to the extent deemed appropriate by Hotel Operator from time to time

C

EXHIBIT "D"

# FORM OF MEMORANDUM OF UNIT MANAGEMENT AGREEMENT

(Attached hereto)

_____

## MEMORANDUM OF UNIT MANAGEMENT AGREEMENT

This Memorandum of Unit Management Agreement ("**Memorandum**"), is executed as of the _____ day of _____, by and between Trump International Hotels Management LLC, a Delaware limited liability company ("**Hotel Manager**"), and _____ ("**Owner**"), and is as follows:

1.     Agreement. Hotel Manager and Owner have entered into that certain Unit Management Agreement dated as of the date hereof (the "**Agreement**"), in connection with the real property described on Exhibit "A" attached hereto and made a part hereof (the "**Subject Unit**"). All terms and conditions of the Agreement are hereby incorporated herein by reference as if fully set forth herein (including, without limitation, the provisions of Section 18(b) thereof).

2.     Term of Agreement. The term of the Agreement shall commence on the date hereof ("**Commencement Date**") and shall continue until terminated as provided in the Agreement (the "**Term**").

3.     Binding Effect. Hotel Manager and Owner acknowledge and agree that the provisions of the Agreement (including Hotel Manager's rights and benefits) shall be appurtenant with the land and "run with the Subject Unit", and shall burden the Subject Unit, and benefit the Condominium, during the Term.

4.     Purpose. This Memorandum of Unit Management Agreement is solely for Notice and recording purposes and shall not be construed to alter modify, expand, diminish or supplement the provisions of the Agreement. In the event any provision of this Memorandum is inconsistent with any term or condition of the Agreement, the terms or conditions of the Agreement shall prevail.

5.     Counterparts. This Memorandum may be executed in any number of counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, taken together, shall be deemed to be one and the same instrument.

6.     Successors. The covenants, conditions and agreements made and entered into by the parties hereto shall be binding upon and inure to the benefits of their respective heirs, administrators, executors, representatives, successors and assigns.

IN WITNESS WHEREOF, the parties hereto have executed this Memorandum as of the date first written above

HOTEL MANAGER:

**TRUMP INTERNATIONAL HOTELS MANAGEMENT LLC,**
a Delaware limited liability company

By: _____
Name: _____
Title: _____

OWNER:

_____
[SIGNATURE]

_____
[PRINT NAME]

_____
[SIGNATURE]

_____
[PRINT NAME]

_____
[SIGNATURE]

_____
[PRINT NAME]

_____
[SIGNATURE]

_____
[PRINT                                                          NAME]

STATE OF NEW YORK )
                   ) SS.:
COUNTY OF NEW YORK )

        On this ____ day of _____, 200_, before me the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public


STATE OF NEW YORK )
                   ) SS.:
COUNTY OF NEW YORK )

        On this ____ day of _____, 200_, before me the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

# Exhibit A

## Legal Description

# SCHEDULE "A"

## DEFINITIONS

"Agreement" shall mean this Unit Management Agreement.

"Board" shall mean the board of directors of the Trump SoHo Hotel Condominium Association.

"By-Laws" shall have the meaning set forth in Section 1(a) of this Agreement.

"CPI" shall have the meaning set forth in Section 24(l) hereof.

"Claim" or "Claims" shall mean any claims, disputes, controversies, demands, damages, judgments, costs, losses, penalties, fines, liens, suits, actions, expenses and liabilities, including, without limitation, reasonable attorneys' fees and costs and expenses incident thereto.

"Commencement Date" shall have the meaning set forth in Section 2(a) hereof.

"Condominium" shall mean the Trump SoHo Hotel Condominium New York.

"Condominium Association" shall mean the Trump SoHo Hotel Condominium Association.

"Condominium Documents" shall mean, collectively or individually, as the context requires, the Declaration, the Restrictive Declaration, the Condominium Plan attached hereto, the Offering Plan, the Unit Management Agreement and the Other Agreements.

"Condominium License Agreement" shall have the meaning set forth in Section 5(b) of this Agreement.

"Condominium Property" shall mean, collectively, the Units and Common Elements (each as defined in the Declaration).

"Declaration" shall mean that certain Declaration Establishing a Plan for Condominium Ownership of the Premises known as 246 Spring Street, New York, New York as recorded in the official records of the office of the recorder of deeds in New York, New York and the By-Laws of the Condominium Association.

"Designation Form" shall mean the form designating the Owner of Record and required to be provided to Hotel Manager by Owner pursuant to the terms of Section 1 of this Agreement, and Section 1(b) of the Unit Management Agreement, if the Subject Unit is owned by an entity or more than one individual, attached hereto the Unit Management Agreement as Exhibit A.

"FF&E" shall have the meaning set forth in Section 13(a)(i) of this Agreement.

"FF&E Reserve Fund" shall mean a reserve account for the Subject Unit into which the FF&E Reserve Payments shall be deposited.

"FF&E Reserve Payment" shall mean an amount equal to (i) two percent (2%) of the Gross Unit Revenue to be deducted from Net Unit Income and to be placed into the FF&E Reserve Fund from the opening date of the Hotel through and including the initial full fiscal year of the Condominium, (ii) three percent (3%) of the Gross Unit Revenue to

be deducted from Net Unit Income and to be placed into the FF&E Reserve Fund during the second full fiscal year of the Condominium, and (iii) four percent (4%) of the Gross Unit Revenue to be deducted from Net Unit Income and to be placed into the FF&E Reserve Fund during each subsequent fiscal year of the Condominium of the Term thereafter.

"Fixed Ownership Costs" shall mean operating common charges, overhead common charges and real estate taxes assessed against the Subject Unit with respect to any period, but not taking into account any mortgage payments.

"Gross Unit Revenue" shall mean, with respect to any period, all room revenues actually received by Hotel Manager from Hotel Guests derived directly from the rental of the Subject Unit (including all telephone revenues and including any cancellation fees actually collected by Hotel Manager as a result of a reservation designated for the Subject Unit having been cancelled in a manner that would entitle Hotel Manager to collect such cancellation fees) and properly attributable to the period under consideration determined in accordance with the Uniform System, and determined on the accrual method of accounting, less and except: (i) any applicable excise, value added, sales, use, occupancy, bed, resort, tourism and/or other similar government taxes, duties, levies or charges assessed in conjunction with the renting of the Subject Unit; and (ii) any Incidental Charges.

"Hotel" shall have the meaning set forth in the Recitals of this Agreement.

"Hotel Guest(s)" shall mean any member of the general public that is a guest(s) or potential guest(s) of the Hotel, other than Owner.

"Hotel Manager" shall mean Trump International Hotels Management LLC, a Delaware limited liability company (together with its permitted successors and assigns).

"Hotel Management Agreement" shall mean that certain Hotel Management Agreement dated as of June 29, 2007, by and between Hotel Manager, as operator, and Sponsor, as owner, for the management of the Hotel.

"Hotel Manager Parties" shall mean Hotel Manager and its parent companies, affiliates, subsidiaries, and each of their respective directors, members, managers, shareholders, officers, partners, employees, consultants, agents or representatives.

"Hotel Manager's Default" shall have the meaning set forth in Section 22 hereof.

"Hotel Placement Items" shall mean goods and other items placed in the Subject Unit from time to time at Hotel Manager's discretion for purchase by Owner or any Hotel Guests, including, without limitation, bottled water, bathrobes, mini bar items, marketing and promotional materials relating to products or services of the Hotel, the Condominium, or the hotel brand, or of any other Person designated as a hotel brand partner, from time to time.

"Hotel Share" shall mean a fee payable by Owner to Sponsor, which will be calculated at the rate of twelve and one-half (12.5%) percent of the Net Unit Income attributable to the Subject Unit plus interest, if any, thereon.

"Incidental Charges" shall mean revenue generated from any source other than Gross Unit Revenue and any other fees or charges to a Hotel Guest occupying the Subject Unit, including, without limitation, mini-bar purchases, pay-per-view television services, food and beverage purchases, internet access charges, business center charges, show tickets or other activities, amenities or other sales or service products provided by Hotel Manager or its designees, charges for use of meeting space (if any), dry cleaning services, valet parking services, and other fees and charges related to other services offered by the Hotel.

"Licensor" shall have the meaning set forth in Section 5(b) of this Agreement.

"Linens" shall have the meaning set forth in Section 15(a) of this Agreement.

"Mandatory Services" shall have the meaning set forth in Section 3(a) of this Agreement.

"Minimum Fee" shall have the meaning set forth in Section 7(a) of this Agreement.

"Net Rental Revenue" shall mean Gross Unit Revenue less the Rental Program Administration Fee, the Per Use Fee and certain processing fees, including a credit card fee, a reservation fee and a sales / marketing fee.

"Net Unit Income" shall mean the Net Rental Revenue less Fixed Ownership Costs.

"Nightly Fee" shall mean that certain Fifteen and 00/100 Dollar ($15.00) fee (escalated at a rate of 3% per annum commencing in 2010) for each night that the Subject Unit is occupied by Owner or a Hotel Guest, all as more specifically set forth in Section 7 of this Agreement.

"Notices" shall mean all notices, demands, statements, requests, consents, approvals and other communications required or permitted to be given under this Agreement, or which are to be given with respect to this Agreement, all as delivered in accordance with Section 24(a) of this Agreement.

"Other Agreements" shall mean such other declarations, easements and other agreements with respect to the Condominium Property as may be recorded from time to time with the recorder of deeds in New York, New York.

"Owner" shall mean, jointly and severally, each of the parties set forth on the signature page of this Agreement and the Owner of Record; provided, however, for purposes of use and occupancy, such person's spouse, domestic partner, parent(s) and unemancipated children shall also be deemed to be "Owner", so that requirements herein as to "Owner" shall also apply to such person's spouse, domestic partner, parent(s) and unemancipated children, all as identified to Hotel Manager on the Designation Form. In the event the Subject Unit is owned by an entity or more than one individual, the "Owner" shall mean those individuals set forth on the Designation Form.

"Owner Occupancy Period" shall mean those times of occupancy for which Owner has requested, and Hotel Manager has confirmed Owner's occupancy of the Subject Unit, which occupancy shall commence upon check-in at the front desk of the Hotel and shall terminate at the designated time for check-out for such occupancy period.

"Owner of Record" shall mean the individual who shall act as the primary contact for the Subject Unit, if the Subject Unit is owned by an entity or more than one individual, as designated in accordance with Section 1.

"Owner's Default" shall have the meaning set forth in Section 21 hereof.

"Ownership Costs" shall mean (i) mortgage and/or other financing costs; (ii) real and personal property taxes allocable to the Subject Unit or the rental thereof; (iii) all insurance premiums and deductibles allocable to or otherwise applicable to the Subject Unit as contemplated in or required by the Condominium Documents or this Agreement; (iv) regular and special condominium assessments and charges levied against the Subject Unit pursuant to the Condominium Documents, the Unit Management Agreement and the Other Agreements including, without limitation, Owner's unit allocated interest of all Hotel Shared Costs and related charges and assessments levied against the Subject Unit pursuant to the terms of the Condominium Documents; (v) all local and long distance telephone charges from the Subject Unit (except as otherwise allocated hereunder); and (vi) all utility costs allocable either directly or indirectly to the Subject Unit, as applicable.

"Per Use Fee" shall mean the fee charged to Owner for each night the Subject Unit is occupied in accordance with Section 3(b)(ii) of this Agreement. As of the Effective Date the Per Use Fee is estimated to be 16/100 Dollars ($.16) per square foot of the Subject Unit, which amount is subject to change subject to the consent of the Board.

"Person" shall mean any individual, partnership, limited liability company, corporation, governmental authority, trust, trustee, unincorporated organization and the heirs, executors, administrators or other legal representatives of any individual.

"Personal Charges" shall have the meaning set forth in Section 4 of this Agreement.

"Reasonable Commercial Efforts" and similar words and phrases as used in this Agreement shall mean such efforts as Hotel Manager reasonably deems necessary and appropriate, but shall not in any event require the expenditure of funds by Hotel Manager or any of its affiliates, except as expressly set forth herein.

"Rental Program Administration Fee" shall mean an amount equal to Three and Seventy-Five Hundredths percent (3.75%) of Gross Unit Revenue before any deductions or distributions, provided, however, that the Nightly Fee applicable to non-Owner occupancy of the Subject Unit in accordance with this Agreement shall be credited against the Rental Program Administration Fee owed to Hotel Manager hereunder.

"Requested Services" shall have the meaning set forth in Section 4 of this Agreement.

"Reservation Designee" shall have the meaning set forth in Section 6(a)(i) of this Agreement.

"Restrictive Declaration" shall mean that certain restrictive declaration dated as of April 26, 2007 by Sponsor and filed with the Office of the Attorney General of the State of New York.

"Sponsor" shall mean Bayrock/Sapir Organization LLC, a Delaware limited liability company, its successors and assigns.

"Subject Unit" shall mean the Unit identified in the Recitals of this Agreement.

"Term" shall have the meaning set forth in Section 2 hereof.

"Uniform System" shall mean the Uniform System of Accounts for the Lodging Industry, most recent edition (currently 10th Edition, September 2006), as published by the Educational Institute of the American Hotel & Motel Association, ISBN #978-0-866-12-282-5.

"Unit" or "Units" shall mean, individually or collectively, as the context requires, the Units within the Condominium Property.

"Unit Owner" shall have the meaning set forth in the Recitals of this Agreement.

"Unit Management Fee" shall have the meaning set forth in Section 7(a) hereof.

"Unit Purchaser" shall mean a third party who purchases the Subject Unit from Owner during the Term and/or successor to or assignee of Owner.