# EXHIBIT "B"
## PART V

# EXHIBIT "B-6"

# TENTH AMENDMENT
## TO
## COMMERCIAL CONDOMINIUM OFFERING PLAN
## FOR
## TRUMP SOHO HOTEL CONDOMINIUM NEW YORK

This Tenth Amendment (this "Amendment") modifies and supplements the terms of the Commercial Condominium Offering Plan for the premises known as Trump SoHo Hotel Condominium New York, 246 Spring Street, New York, New York 10013, first accepted for filing on August 3, 2007 (as amended, the "Plan"), and is incorporated into and should be read in conjunction with the Plan. The terms of this Amendment are as follows:

### 1.     Purpose of Amendment

The purpose of this Amendment is to declare the Plan to be effective and to extend the term of the offering under the Plan.

### 2.     Plan Declared Effective

As of March 30, 2010, Agreements for 62 (representing 15%) of the 391 Hotel Suite Units presently offered under the Plan have been executed and are in effect with Purchasers who are unrelated to Sponsor, Selling Agent or Managing Agent or their principals. As this represents the required minimum of fifteen (15%) percent of such Units, Sponsor is entitled to and does hereby declare the Plan effective. Sponsor's affidavit in support of declaring the Plan effective is annexed to this Amendment as Exhibit A.

### 3.     Revisions to Projected Budget for First Year of Condominium Operation

The definition of "First Year of Condominium Operation" is revised to refer to "the 12-month period from April 1, 2010 to March 31, 2011," and all references thereto throughout the Plan shall be deemed to be conformed accordingly. A revised and updated projected budget and budget notes for such revised First Year of Condominium Operation are attached hereto as Exhibit B. Certifications by Sponsor's budget expert as to the adequacy of the revised budget and as to the adequacy of Common Charges payable by the Commercial Unit Owners are attached hereto as Exhibit C.

The budget reflects an approximately 15% net reduction in operating costs, partly resulting from changes in: the staffing for the executive offices, front desk and housekeeping and security ("Administration and General Budget"); property operation ("Property Operation"); and Rooms Payroll and Related Expenses ("Rooms Payroll"). Such changes in the Administration and General Budget, include, but are not limited to, the following personnel reductions; the assistant front office managers - from 2 to 1; the front desk agents - from 5 to 4; the concierge agents - from 3 to 2; the public area cleaners- from 7 to 4; the security supervisors - from 3 to 2; and the security agents - from 20 to 15. There will not be a florist (floral services will be provided by a third party firm) or an assistant manager of security.

The following increases in staff, however, should also be noted: front desk agents - from 4 to 5; doormen - from 6 to 7; and telephone agents - from 4 to 8. (See Footnote 3 of the Budget)

The changes in Property Operations include, but are not limited to, a reduction in the number of house mechanics from 18 to 10. There will not be 8 lead mechanics or a coordinator. The change in the number of positions is due to arranging for maintenance and engineering services with third party firms. (See Footnotes 4 and 8 of the Budget; the line item for Consulting Fees/Maintenance Contract in Footnote 8 was increased from $32,000 to $193,988).

The changes in Rooms Payroll include, but are not limited to, the following reductions: assistant front office manager - from 2 to 1; front office agents - from 9 to 7; and bellman - from 12 to 11; floor supervisors housekeeping - from 9 to 6; attaché coordinators - 10 to 7; laundry personnel - 6 to 4; bellman - 12 to 10; and telephone reservations - from 10 to 5. There will not be 10 housemen or an assistant florist (floral services will be provided by a third party firm). The change in the number of positions is due to job combinations and efficiencies within other departments in the Condominium. (See Footnote 14).

In addition, the Hotel Suite Unit will not be separately metered for electricity consumed within the unit. The electrical costs with respect to the Hotel Suite Units have been allocated among the Hotel Suite Units in accordance with each Unit's proportionate share. Accordingly, Hotel Suite Owners will no longer be individually billed for electrical usage within their Units. (See Footnote 5 of the Budget).

With respect to the Per Use Expenses, the estimated nightly cost for a studio, a suite, a spa suite and a penthouse suite will be: $63.00, $100.50, $104.00 and $197.50, respectively.

The estimated figures for the Rooms Payroll and the Per Use Expenses are based on an assumed occupancy rate of 61%. The estimated figures for these line items in the prior budget that was included in the third amendment were based on an assumed occupancy rate of 70%.

4.      **Revised Real Estate Tax Opinion of Counsel**

The opinion of counsel prepared by Marcus & Pollack LLP, Real Estate Tax Counsel to Sponsor, and set forth in Section U in Part I of the Plan entitled "Opinions of Counsel" and as previously amended and restated in the Third and Fifth Amendments, is hereby deemed amended and restated in its entirety as set forth in Exhibit D annexed hereto. All relevant sections of the Plan are hereby deemed amended accordingly.

5.      **Updated Schedule A**

Schedule A in Part I of the Plan (entitled "Schedule of Offering Prices and Other Related Information") is hereby deemed amended and restated in its entirety as set forth in Exhibit E annexed hereto. The Schedule reflects, among other things, revision to Common Charges for each Unit as a result of the revised Budget, referenced in paragraph 3 above, and

revisions to the estimated Real Estate Taxes for each Unit as a result of the revised Real Estate Tax Opinion of Counsel, referenced in paragraph 4 above and..

6. **Extension of Period of Plan**

The effective period for the term of the Plan is extended for a period of six (6) months from the date of filing of this Amendment.

7. **Definitions**

Except as otherwise herein defined, all capitalized terms used in this Amendment which are defined in the Plan shall have the respective meaning ascribed to such terms in the Plan.

8. **Incorporation of the Plan**

The Plan, as modified and supplemented by this Amendment, is incorporated herein by this reference with the same force and effect as if set forth at length.

9. **No Material Changes in the Plan**

There have been no material changes in the Plan except as set forth in this Amendment. The Plan, as hereby amended, does not knowingly omit any material fact.


Dated: May 5, 2010

BAYROCK/SAPIR ORGANIZATION LLC

<u>EXHIBIT A</u>

## TENTH AMENDMENT TO CONDOMINIUM OFFERING PLAN
### FOR
### TRUMP SOHO HOTEL CONDOMINIUM NEW YORK
### NEW YORK, NEW YORK 10013

## AFFIDAVIT IN SUPPORT OF DECLARING THE PLAN EFFECTIVE

| | |
|---|---|
| STATE OF NEW YORK | ) |
| | ) ss.: |
| COUNTY OF NEW YORK | ) |

ALEX SAPIR, being duly sworn, deposes and says:

a.      I am authorized by Bayrock/Sapir Organization LLC, Sponsor under that certain Condominium Offering Plan for Trump SoHo Hotel Condominium New York, New York, New York 10013 (as amended to date, hereinafter called the "Plan"), to submit this affidavit. The Condominium Offering Plan was first accepted for filing on August 3, 2007. All capitalized terms used in this Affidavit that are not defined herein shall have the same meanings as ascribed to them in the Plan.

b.      The Plan provides that it may not be declared effective unless bona fide Agreements are executed and accepted for fifteen percent (15%) in number of Hotel Suite Units offered under the Plan. As of March 30, 2010, Agreements had been executed and accepted for sixty-two (62) Hotel Suite Units, which Units satisfy the criteria set forth in item c. and e. below, representing 15% of the three hundred ninety-one (391) Hotel Suite Units presently offered under the Plan.

c.      Sponsor hereby represents that all Purchasers who are counted for purposes of declaring the Plan effective:

     i.     are bona fide purchasers; and

     ii.     are not purchasing as an accommodation to, or for the account or benefit of Sponsor or principals of Sponsor; and

     iii.     have duly executed Agreements and have paid the Deposit as required in the Plan, or an amendment thereto.

d.      Sponsor hereby represents that there are no material changes to the budget for the First Year of Condominium Operation which have not been disclosed in a duly filed amendment to the Plan.

e.      Sponsor hereby represents that no Purchaser counted for purposes of declaring the Plan effective is Sponsor, the Selling Agent or the Managing Agent, or is a

principal of Sponsor, the Selling Agent, or the Managing Agent or is related to Sponsor, the Selling Agent or the Managing Agent or any principal of Sponsor, the Selling Agent or the Managing Agent by blood, marriage, or adoption, or as a business associate, an employee, a shareholder, or a limited partner.

f.      Annexed hereto is Exhibit A-1 which lists the Units which are being counted toward meeting the minimum percentage that is needed under the terms of the Plan to declare the Plan effective and which also states the date of the Agreement for each such Unit.

g.      I hereby submit this Affidavit to the Department of Law in connection with that certain Tenth Amendment to the Plan, which Amendment, among other things, declares the Plan effective.

Sworn to before me this
___ day of March, 2010.

_____
Notary Public

BRIAN HALBERG
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02HA6209673
Qualified in New York County
Commission Expires August 3, 2013

# EXHIBIT A-1

# AFFIDAVIT IN SUPPORT OF DECLARING THE PLAN EFFECTIVE

| # | Unit Designation | Date |
|---|---|---|
| 1 | 902 | 9/7/07 |
| 2 | 1002 | 12/20/07 |
| 3 | 1004 | 11/9/07 |
| 4 | 1102 | 9/20/07 |
| 5 | 1202 | 10/4/07 |
| 6 | 1402 | 9/14/07 |
| 7 | 1502 | 10/9/07 |
| 8 | 1703 | 9/7/07 |
| 9 | 1802 | 10/4/07 |
| 10 | 1803 | 9/7/07 |
| 11 | 1805 | 9/7/07 |
| 12 | 1811 | 10/4/07 |
| 13 | 1903 | 9/20/07 |
| 14 | 1905 | 10/23/07 |
| 15 | 2003 | 9/14/07 |
| 16 | 2006 | 10/25/07 |
| 17 | 2106 | 3/22/08 |
| 18 | 2108 | 11/16/07 |
| 19 | 2111 | 11/28/07 |
| 20 | 2202 | 12/14/07 |
| 21 | 2205 | 10/23/07 |
| 22 | 2303 | 9/7/07 |
| 23 | 2304 | 12/14/07 |
| 24 | 2403 | 10/23/07 |
| 25 | 2404 | 12/4/08 |
| 26 | 2405 | 6/5/08 |
| 27 | 2408 | 10/25/07 |
| 28 | 2411 | 1/11/08 |
| 29 | 2505 | 5/1/08 |
| 30 | 2506 | 4/16/08 |
| 31 | 2508 | 11/13/07 |
| 32 | 2509 | 1/28/08 |
| 33 | 2511 | 12/14/07 |
| 34 | 2603 | 10/9/07 |
| 35 | 2606 | 9/14/07 |
| 36 | 2610 | 11/13/07 |
| 37 | 2611 | 10/28/07 |
| 38 | 2702 | 10/9/07 |
| 39 | 2704 | 10/16/07 |
| 40 | 2711 | 5/9/08 |
| 41 | 2805 | 11/16/07 |

| | | |
|---|---|---|
| 42 | 2806 | 6/5/08 |
| 43 | 2811 | 2/13/08 |
| 44 | 2902 | 10/4/07 |
| 45 | 2905 | 11/28/07 |
| 46 | 3005 | 2/13/08 |
| 47 | 3009 | 9/7/07 |
| 48 | 3010 | 9/20/07 |
| 49 | 3104 | 10/23/07 |
| 50 | 3108 | 1/8/08 |
| 51 | 3109 | 12/27/07 |
| 52 | 3203 | 7/2/08 |
| 53 | 3208 | 9/14/07 |
| 54 | 3309 | 7/2/08 |
| 55 | 3406 | 12/10/07 |
| 56 | 3410 | 9/20/07 |
| 57 | 3509 | 5/12/08 |
| 58 | 3709 | 6/5/08 |
| 59 | 3803 | 7/23/08 |
| 60 | 3810 | 10/4/07 |
| 61 | 3910 | 10/4/07 |
| 62* | 4009 | 5/9/08 |
| * | 2705 | 5/9/08 |

*These two units are subject to separate purchase agreements to the same purchaser; however, only one of them is included in the count of 62 units for effectiveness purposes.

## EXHIBIT B

## CONDOMINIUM BUDGET FOR FIRST YEAR OF OPERATIONS

### BUDGET NOTES

### April 1, 2010 – March 31, 2011

# TRUMP SOHO HOTEL CONDOMINIUM NEW YORK
## BUDGET FOR PROJECTED FIRST YEAR OF CONDOMINIUM OPERATION
### April 1, 2010 to March 31, 2011 (Note 1)

| CONDOMINIUM OPERATING AND OVERHEAD BUDGET | | BUDGET TOTAL | MEANS OF ALLOCATION | | HOTEL SUITE UNITS | | COMMERCIAL UNITS |
|---|---|---|---|---|---|---|---|
| **ESTIMATED INCOME** (Note 2) | | | | | | | |
| Operating Common Charges | $ | 13,408,818 | | $ | 12,643,569 | $ | 765,248 |
| Overhead Common Charges | $ | 8,162,136 | | $ | 8,162,136 | | |
|    TOTAL INCOME | $ | 21,570,953 | | | | | |
| | | | | | | | |
| **OPERATING COMMON EXPENSES** | | | | | | | |
| Payroll and Related Wages | | | | | | | |
| Administration and General (Note 3) | $ | 6,318,029 | Hotel Suite Units | $ | 6,318,029 | $ | |
| Property Operation and Maintenance (Note 4) | $ | 1,107,107 | Square Footage | $ | 1,222,083 | $ | 185,023 |
| TOTAL COMMON PAYROLL AND WAGES | $ | 7,725,136 | | $ | 7,540,112 | $ | 185,023 |
| Utilities | | | | | | | |
| Electricity - Hotel Suite (Note 5) | $ | 827,100 | Hotel Suite Units | $ | 827,100 | $ | |
| Electricity - Common Elements (Note 5) | $ | 836,725 | Square Footage | $ | 726,702 | $ | 110,023 |
| Steam (Note 6) | $ | 544,000 | Estimated Usage | $ | 397,120 | $ | 146,880 |
| Water Charges and Sewer Rent (Note 7) | $ | 203,148 | Estimated Usage | $ | 148,298 | $ | 54,850 |
| Gas | $ | 4,232 | Square Footage | $ | 4,232 | $ | |
|    TOTAL UTILITIES | $ | 2,415,205 | | $ | 2,103,452 | $ | 311,753 |
| Building Maintenance | | | | | | | |
| Repairs Supplies and Maintenance (Note 8) | $ | 1,295,988 | Square Footage | $ | 1,125,576 | $ | 170,412 |
|    TOTAL COMMON BUILDING MAINTENANCE | $ | 1,295,988 | | $ | 1,125,576 | $ | 170,412 |
| Administrative Costs | | | | | | | |
| Insurance (Note 9) | $ | 645,753 | Square Footage | $ | 560,842 | $ | 84,911 |
| Legal and Audit (Note 10) | $ | 125,000 | Hotel Suite Units | $ | 125,000 | $ | |
| Operations: Rooms, Telephone, Fitness Center, A&G (Note 11) | $ | 1,101,737 | Hotel Suite Units | $ | 1,101,737 | $ | |
| General Common Expenses (Note 12) | $ | 100,000 | Square Footage | $ | 86,851 | $ | 13,149 |
|    TOTAL ADMINISTRATIVE | $ | 1,972,490 | | $ | 1,874,429 | $ | 98,061 |
| | | | | | | | |
| **TOTAL OPERATING COMMON EXPENSES** | $ | 13,408,818 | | $ | 12,643,569 | $ | 765,248 |
| | | | | $ | - | $ | - |
| **OVERHEAD EXPENSES** (Note 13) | | | | | | | |
| | | | | | | | |
| Payroll and Related Wages (Note 14) | $ | 6,134,379 | Hotel Suite Units | $ | 6,134,379 | $ | |
| Administration and General (Note 15) | $ | 681,312 | Hotel Suite Units | $ | 681,312 | $ | |
| Operating Rooms (Note 16) | $ | 860,407 | Hotel Suite Units | $ | 860,407 | $ | |
| Operating Sales (Note 17) | $ | 2,561,358 | Hotel Suite Units | $ | 2,561,358 | $ | |
| Condominium Income Credit (Note 18) | $ | (2,075,321) | Hotel Suite Units | $ | (2,075,321) | | |
| **TOTAL OVERHEAD COMMON CHARGES** | $ | 8,162,136 | | $ | 8,162,136 | $ | |
| | | | | | | | |
| **TOTAL OPERATING AND OVERHEAD COMMON CHARGES** | $ | 21,570,953 | | $ | 20,805,705 | $ | 765,248 |

## NOTES TO SCHEDULE B

Projected Budget For
First Year of Condominium Operation
Trump SoHo Hotel Condominium New York

1. Amounts are projected on the assumption that the First Year of Condominium Operation will be the year from April 1, 2010 to March 31, 2011. The actual First Year of Condominium Operation may be earlier or later than such year. In the event the actual or anticipated commencement date of the First Year of the Condominium Operation is to be delayed by six months or more, Sponsor will amend the Plan to include a revised budget with current projections. If the amended budget exceeds this projected budget by 25% or more, Sponsor will offer all Purchasers (other than Purchasers who are then in default beyond any applicable grace period, if the Plan has been declared effective) the right to rescind their Purchase Agreements within not less than fifteen (15) days after the presentation date of the amendment containing such revised budget, and any Purchasers electing rescission pursuant to such offer will have their Deposits, together with interest earned, returned.

The Condominium budget does not include "per use" charges which are directly attributable to and incurred based on nightly use. Such charges include nightly housekeeping, turn down service, nightly cleaning and amenity replenishment. Such charges are directly deducted and collected from the gross nightly rental charges or, in the case of Hotel Suite Unit Owner use, are carried on the monthly expense report as an additional expense if and when they are incurred. (See Note 19 below for further information.)

2. These amounts represent the total Common Charges to be levied against the Units in the Condominium and the total Overhead Common Charges to be levied against the Hotel Suite Units in the Condominium, in each case, during the projected First Year of Condominium Operation. The Operating Common Charges and the Overhead Common Charges will be utilized by the Board to defray the operational expenses of the Condominium. The method of allocation of the various common expenses set forth in Schedule B are more particularly described in Notes 3 through 12 below.

After operation of the Condominium has commenced, it is anticipated that the methods of allocation of the expenses may be periodically adjusted as provided in Section 6.1.4 of the By-Laws, but not more frequently than once each year, to reflect the differing proportions fairly attributable to the then amount of usage of the services. If any category of Unit Owners contends that any method of allocation determined by the Board is inequitable, the dispute may be submitted to arbitration as provided in, and subject to the terms and conditions of, the By-Laws. The Commercial Units will be required to pay the expenses fairly attributable to the then amount of usage of services utilized.

3. Administration and General: $6,318,029

This estimate includes the wages, worker's compensation, disability insurance, welfare and pension costs, payroll taxes and the cost of sick days, personal days, holidays and vacation pay and other fringe benefits costs for such employees attributable to the administration of the Condominium. For all payroll categories in the Condominium,

salaries have been evaluated based on the Hotel Motel Trades Council Agreement or, if the position is management or not covered by the agreement, by competitive rates for similar positions in the New York City hospitality industry

There are four basic functions portrayed in the Administration and General Budget: Executive Offices, Front Desk, Housekeeping and Security.

Due to the much higher level of service and the complexity of operating the Condominium as a hotel, staffing levels are considerably higher than for a customary residential condominium building. The costs listed here are not anticipated to vary considerably due to changes from time to time in the levels of hotel occupancy as these costs are considered to be the core management and service staff necessary to operate a quality hotel of the size of the Condominium.

All of the wages covered in this section have been allocated to the Hotel Suite Owners with a portion allocated to the Commercial Units for certain shared services (i.e., purchasing, accounting and human resources. (See Note 18 below for allocation to Commercial Units for such services).

The details of the Administration and General payroll budget are detailed as follows:

### Total Administration and General Payroll Budget
(Operating Common Expenses)

| Job Category | Number of Positions | Total |
|---|---|---|
| Executive Offices | | |
| General Manager | 1 | |
| Assistant Manager | 1 | |
| Secretary | 1 | |
| Owner Relations Manager | 1 | |
| Owner Representatives | 2 | |
| Total | | $ 639,379 |
| Comptroller | | |
| Comptroller | 1 | |
| Assistant Comptroller | 1 | |
| Staff Accountant | 1 | |
| Director of IT | 1 | |
| Total | | $ 371,256 |
| Front Desk and Service | | |
| Front of House Manager | 1 | |
| Night Manager | 1 | |
| Assistant Front Office Manager | 1 | |
| Front Desk Agent | 5 | |
| Chief Concierge | 1 | |
| Concierge Agents | 2 | |
| Doormen | 7 | |

| | | | |
|---|---|---|---|
| Telephone Agents | 8 | | |
| Total | | $ | 1,158,469 |
| **Housekeeping** | | | |
| Director of Housekeeping | 1 | | |
| Housemen | 4 | | |
| Uniform/Valet | 4 | | |
| Public Area Cleaner | 4 | | |
| Dispatch | 2 | | |
| Total | | $ | 800,536 |
| | | | |
| **Human Resources** | | | |
| Coordinator | 1 | | |
| Total | | $ | 48,645 |
| **Security** | | | |
| Director of Security | 1 | | |
| Security Supervisor | 2 | | |
| Security Agents | 15 | | |
| Total Security | | $ | 900,366 |
| **Purchasing** | | | |
| Purchasing Manager | 1 | | |
| Receiver | 3 | | |
| Total | | $ | 253,161 |
| | | | |
| **Benefits** (Includes Worker's Compensation) | | $ | 1,919,260 |
| **Bonus Accrual** | | $ | 226,958 |
| | | | |
| **TOTAL OPERATING PAYROLL** | | **$ 6,318,029** | |

4. <u>Property Operation and Maintenance Wages</u>: $1,407,107

This category includes engineering and maintenance services for the Condominium. Property Operation and Maintenance ("POMEC") wages have been allocated between the Hotel Suite Units and the Commercial Units based on the amount of square feet in each category.

The details of the POMEC payroll budget are as follows:

### Total Property Operation and Maintenance Wages
### (Common Expenses)

| | Number of Positions | Total |
|---|---|---|
| Manager | 1.00 | |
| Assistant Manager | 1.00 | |
| House Mechanic | 10.00 | |

| | | | |
|---|---|---|---|
| Subtotal | | $ | 917.672 |
| Benefits (Includes Worker's Compensation) | | $ | 437.176 |
| Bonus | | $ | 52.258 |

**TOTAL POMEC WAGES**  $ 1,407,107

5. Electricity: $1,663,825

Electricity will be provided by Consolidated Edison. The amount of electricity to be consumed within the General Common Elements of the Condominium and Hotel Suite Units has been estimated by the engineering firm of Cosentini Associates in a letter last revised March 15, 2010. Electrical costs with respect to the General Common Elements have been allocated between the Hotel Suite Units and the Commercial Units based on the amount of square feet in each category. The electrical costs with respect to the Hotel Suite Units have been allocated among the Hotel Suite Units in accordance with each Unit's proportionate share. The Commercial Units will be metered separately for electricity consumed within the unit.

6. Steam: $544,000

Steam is provided by Consolidated Edison and is used for heating and air conditioning. The amount of steam to be consumed within the Condominium as a whole has been estimated by the engineering firm of Cosentini Associates in a letter last revised March 15, 2010 at a rate of $32.00 per thousand pounds of steam as more particularly set forth in such letter. There are no separate meters or submeters for the individual Hotel Suite Units or the Commercial Units. Steam costs will be allocated 73% to the Hotel Suite Units and 27% to the Commercial Units based on projected usage.

7. Water and Sewer Charges: $203,148

Water charges and sewer services are provided by the City of New York. The estimated consumption and cost of these services are based on the analysis provided by the engineering firm of Cosentini Associates in a letter last revised March 15, 2010 at a combined rate of $6.84 per 100 cubic feet for water and sewer as more particularly set forth in such letter. There are no separate submeters for the individual Hotel Suite Units or the Commercial Units. Water and sewer costs will be allocated 73% to the Hotel Suite Units and 27% to the Commercial Units based on projected usage.

8. Repairs, Supplies and Maintenance: $1,295,988

This estimate includes painting, maintenance and repair costs of the Condominium's common and mechanical areas. Costs have been allocated on the basis of the amount of square feet. Hotel Suite Unit Owners and the Commercial Units Owners are directly responsible for the cost of the repairs, supplies and maintenance in the interior of their Units.

The detailed budget for Repairs, Supplies and Maintenance is as follows:

## Repairs, Supplies and Maintenance Budget
### (Common Expenses)

| Category | | Total | Category | | Total |
|---|---|---|---|---|---|
| Consulting Fees/Maint Contract | $ | 193,988 | Light Bulbs | $ | 60,000 |
| Life Safety | $ | 60,000 | Floor Covering | $ | 24,000 |
| Supplies · Building | $ | 24,000 | Elevator Maintenance Contract | $ | 65,000 |
| Supplies · Painting | $ | 80,000 | Electrical & Mechanical | $ | 20,000 |
| Supplies · Plumbing and Heating | $ | 102,000 | Parts · Electrical | $ | 24,000 |
| Uniforms | $ | 6,000 | Parts · Laundry | $ | 3,000 |
| Supplies · Engineering | $ | 85,000 | Parts · Televisions | $ | 6,000 |
| Contract Labor | $ | 132,000 | Parts · Plumbing | $ | 12,000 |
| Drapes | $ | 12,000 | Parts · Furniture | $ | 24,000 |
| Telecommunications | $ | 6,000 | Parts & Maint · Swimming Pool | $ | 24,000 |
| Landscaping & Grounds Maint. | $ | 52,000 | Miscellaneous | $ | 6,000 |
| Waste Removal | $ | 60,000 | | | |
| Office Equipment | $ | 10,000 | | | |
| Window Washing | $ | 75,000 | | | |
| Marble·Metal maintenance | $ | 130,000 | | | |

**TOTAL**          **$1,295,988**

9.   <u>Insurance</u>: $645,753

The quoted insurance premium for the Condominium is based on a letter, dated April 29, 2010, from Domenic Del Balso, Senior Vice President of Arthur J. Gallagher Risk Management Services, setting forth the proposed coverages.

| PROPERTY | AMOUNT OF INSURANCE |
|---|---|
| Building | $213,000,000 |
| All Risk/Agreed Amount/Replacement Costs | Included |
| Deductible | $50,000 |
| Building Ordinance | $25,000,000 |
| Increased Cost of Construction and Demolition | $25,000,000 |
| Business Income/Extra Expense (Max. 12-Month Recovery) | $64,000,000 |
| Co-Insurance | N/A |
| Flood (Rising Water) and Deductible | $100,000,000/3% Deductible |

| | |
|---|---|
| Earthquake and Deductible | $100,000,000/5% subject to a minimum $100,000 |
| Terrorism | Included |
| | |
| **BOILER & MACHINERY** | |
| Boiler & Machinery – Equipment Breakdown | $25,000,000 |
| Extra Expense | $5,000,000 |
| Service Interruption PD/TE Combined | $5,000,000 |
| Expediting Expense | $5,000,000 |
| Hazardous Substance | $500,000 |
| Consequential Damage (Spoilage) | $5,000,000 |
| Ammonia Contamination | $5,000,000 |
| Water Damage | $2,500,000 |
| | |
| **GENERAL LIABILITY** | |
| Each Occurrence | $1,000,000 |
| General Aggregate | $2,000,000 |
| Products and Completed Operations | $1,000,000 |
| Personal Injury | $1,000,000 |
| Employee Benefits Liability (Claims-Made/Deductible) | $1,000,000/$1,000 |
| Medical Expense | $10,000 |
| Asbestos Exclusion/Pollution Exclusion | $1,000,000 |
| | |
| **UMBRELLA/EXCESS LIABILITY** | |
| Limit | $50,000,000 |
| Lead Exclusion/Mold Exclusion/Asbestos Exclusion | |
| **FIDELITY BOND** | |
| Employee Dishonesty and Deductible | $3,000,000/$50,000 |
| Non-Compensated Directors & Officers | Included |
| **DIRECTORS & OFFICERS LIABILITY** | |
| Limit and Deductible | $15,000,000/$100,000 |
| Participation % | Sufficient to maintain compliance with NYS Law regarding coinsurance |
| **WORKERS' COMPENSATION** | Statutory |
| (Included in Benefits – See Notes 3, 4, 14 and 18 for further information.) | |
| **DISABILITY** | Statutory |

As described in the Plan, the By-Laws, property insurance with respect to the overall Building will be obtained and maintained by the Board. The Board shall obtain and maintain property insurance policy/ies with respect to the Common Elements. While a policy of public liability insurance will be obtained by or on behalf of the Board on or before the First Closing, this and the other coverages herein described do not include coverage for claims for personal injury or property damage resulting from occurrences in individual Units, nor do they include coverage of the betterments, improvements, furniture, fixtures and equipment within the Units or any other personal property of any Unit Owners. Such coverage will be obtained by the Hotel Management Company on behalf of the Hotel Suite Unit Owners pursuant to the Unit Management Agreement.

This quotation (including limits, deductibles and premiums) is based on coverage at current rates and availability; and is also based on the extension of the Terrorism Risk Insurance Act (TRIA) which is due to expire on December 31, 2014. In the event that TRIA is not extended, the Board may or may not elect, in its sole and absolute discretion, to purchase additional terrorism insurance and it should be noted that the expiration of TRIA may adversely affect the pricing of certain insurance premiums. Because conditions in the insurance marketplace are volatile, it is not possible to predict what the actual premiums will be for the First Year of Condominium Operation. Purchasers should be aware of the possibility of rate increases and/or changes in limits, deductibles and availability of certain coverages. It is anticipated that mold coverage will not be included. The cost of the foregoing insurance is allocated between the Hotel Suite Units and the Commercial Units based on the square footage in each category.

The Condominium liability insurance will provide that each Unit Owner is an additional insured party. The insurance carrier will not cancel its insurance coverage without giving the Board notice of cancellation. A waiver of subrogation, a waiver of invalidity because of the acts of the insured and Unit Owners and a waiver of pro-rata reduction if Unit Owners obtain additional coverage are possible endorsements that can be obtained for the Building.

See "Insurance" in Section T in Part I of the Plan regarding the requirement that each Unit Owner is to maintain its own casualty and liability insurance policies.

10. **Legal and Audit**: $125,000

These expenses provide auditing and accounting fees in connection with the preparation of the audited financial statements for the Condominium's first year of operation. This cost is based partly upon the estimate of Schronbraun McCann Group, as set forth in a letter, dated April 15, 2010 to provide annual audit services. The balance of the budgeted amount has been estimated to provide for minor legal services and the preparation of City, State and Federal Tax Returns

11. **Operating, Rooms, Telephone, Pool and A&G Expenses**: $1,101,737

These expenses concern miscellaneous administrative expenses, including, without limitation, dues and subscriptions, administrative supplies, phone service charges, printing, postage and stationary. The Fitness Center will be operated by the Condominium and the expenses for such are incorporated into overall Condominium personnel and

- 7 -

maintenance expense budget items. The pool will be managed by the operator of the Spa Unit pursuant to an agreement between the Condominium and such operator.

Details of this category are as follows:

## Operating and Miscellaneous Administrative Expenses
## (Common Expenses)

| Category | | Total |
|---|---|---|
| Rooms | | |
| Cable Television and Internet | $ | 178,500 |
| Extermination | $ | 12,000 |
| Telephone | | |
| Maintenance Contract | $ | 65,000 |
| Equipment | $ | 18,000 |
| Miscellaneous | $ | 6,000 |
| Pool | | |
| Pool Management Agreement w/ WTS | $ | 80,000 |
| Administration and General | | |
| Travel and Entertainment | $ | 30,000 |
| Dues and Subscriptions | $ | 17,500 |
| Payroll Service Fee | $ | 85,000 |
| Charitable Contributions | $ | 3,600 |
| Data Processing/PMS/back office system | $ | 248,433 |
| Uniforms | $ | 12,000 |
| Printing and Stationary | $ | 50,000 |
| Long Distance Telephone | $ | 42,000 |
| Postage | $ | 24,000 |
| Human Resources Expense (Training, Relocation, Recruitment) | $ | 180,000 |
| IT Maintenance | $ | 49,704 |
| **TOTAL** | **$** | **1,101,737** |

12.  General Common Charges: $100,000

     The Hotel Management Company or a property management company will provide management services to the Board. The fee for these services will be allocated between the Hotel Suite Units and the Commercial Units based on the square footage in each category.

13.  Overhead Common Charges

     These charges are distinguished from Common Charges (as described in Notes 3 through 12 above) in that they relate solely to the operating of the business of the hotel within the Condominium (which includes, and therefore serves and benefits, the Hotel Suite Units) and not to the maintenance of the Building. In general, these charges tend to vary somewhat more than the Common Charges as they are relatively more reflective of and dependent upon variations in hotel occupancy due to factors such as seasonal variation, business cycles and competitive cycles. For estimating purposes, an occupancy rate of 61% was used.

- 8 -

All Hotel Suite Unit Owners are required to pay the overhead charges, even when a Hotel Unit Owner chooses to not use the Hotel Management Company as an agent to rent out its Unit. The items covered in the overhead charge categories of this budget relate to services that all transient guests and owners in occupancy receive the benefit of, such as guest relocation, security, debt collection, sales, promotion and marketing.

14. Payroll and Related Expenses: $6,134,379

This budget item includes salaries for employees who service transient guests and employees who market the Condominium. As such, the entire executive portion of the Rooms Department is included in this budget, as well as all positions allocated to the Sales Department. For estimating purposes, an occupancy rate of 61% was used. This estimated rate is for budgeting purposes only and does not reflect any projection or guarantee of, or representation of any kind with respect to actual revenue or occupancy.

The details of this budget are as follows:

## Total Payroll and Related Wages
## (Overhead Expenses)

| Job Category | Number of Positions | Total |
|---|---|---|
| **Rooms Payroll** | | |
| Assistant Front Office Manager | 1 | |
| Front Office Agents | 7 | |
| Assistant Housekeeping Manager | 1 | |
| Housekeeping Manager | 6 | |
| Attache/Guest History Manager | 1 | |
| Attache Coordinators | 7 | |
| Public Area | 4 | |
| Laundry | 4 | |
| Dispatch | 3 | |
| Bellman | 10 | |
| Overnight Bellman | 1 | |
| Concierge Agents | 3 | |
| Total | | $ 2,126,399 |
| **Human Resources** | | |
| Director | 1 | |
| Training Manager | 1 | |
| Benefits Administrator | 1 | |
| Total | | $ 231,020 |
| **Accounting Payroll** | | |
| Credit Manager | 1 | |
| Accts Payable / Accts Receivable | 2 | |
| Payroll/OC | 1 | |
| Income Auditor | 1 | |
| Total | | $ 248,098 |

Sales Payroll

| Director of Sales & Marketing | 1 | |
| Director of Public Relations | 1 | |
| Director of Sales | 1 | |
| Director of Group Sales | 1 | |
| Group Sales Manager | 1 | |
| Group Sales Manager | 1 | |
| Transient Sales Manager | 1 | |
| Transient Sales Manager | 1 | |
| Revenue Manager | 1 | |
| Secretary | 3 | |
| Total | | $ 1,133,255 |

Reservations
| Reservations Agents | 5 | |
| Total | | $ 226,632 |

| Benefits (Includes Worker's Compensation) | $ 1,851,418 |
| Bonus Accrual | $ 317,557 |

## TOTAL OVERHEAD PAYROLL                    $ 6,134,379

15. <u>Administration and General Operating Expense</u>: $681,312

This budget covers costs attributable to non-personnel expenses for room operation. For estimating purposes, an occupancy rate of 61% was used. This rate is for budgeting purposes only and does not reflect any projection or guarantee of, or representation of any kind with respect to actual revenue or occupancy.

The details of this budget are as follows:

### ADMINISTRATION AND GENERAL OPERATING
### EXPENSE
### (Overhead Expenses)

| Category | Total |
|---|---|
| Bad Debt Expenses | $ 12,000 |
| Licenses | $ 15,000 |
| Bank Charges | $ 24,000 |
| Rental of Off Site Office | $ 372,000 |
| Employee Relations | $ 103,000 |
| Contract Services | $ 8,000 |
| Armored Car Service | $ 4,800 |
| Security Equipment | $ 12,000 |
| Off Site Storage | $ 42,000 |
| Operating/Office Supplies | $ 11,500 |
| General / Misc. Expense | $ 35,000 |
| Management Fee (non-rooms rev) | $ 42,012 |
| TOTAL | $ 681,312 |

16. <u>Operating Rooms Expenses</u>: $860,407

Charges for cable, contract services, telecommunications, printing and stationery, and other items have been calculated on the basis of available rooms. Charges for complimentary guest stays, guest transportation, guest relocation and decorations are calculated on the basis of occupied rooms. For estimating purposes, an occupancy rate of 61% has been used.

The details of this budget are as follows:

## OPERATING ROOMS EXPENSES
### (Overhead Expenses)

| Category | | Total |
|---|---|---|
| Decorations | $ | 142,500 |
| Equipment Rental | $ | 12,000 |
| Cleaning Supplies | $ | 56,500 |
| Uniform Supplies | $ | 35,000 |
| Uniform Cleaning | $ | 120,585 |
| Printing and Stationary | $ | 65,667 |
| China, Glass and Silver | $ | 9,600 |
| Telephone | $ | 6,000 |
| Contract Cleaning | $ | 115,000 |
| Computer/systems service | $ | 3,600 |
| Music Systems | $ | 4,800 |
| Operating supplies | $ | 54,000 |
| Office Supplies | $ | 6,000 |
| Miscellaneous | $ | 12,000 |
| Training | $ | 3,600 |
| Guest Loss, damage, appeasement | $ | 24,000 |
| Cost of Sales / telephone-internet | $ | 189,556 |
| **Total** | **$** | **860,407** |

17. <u>Operating Sales Expenses</u>: $2,561,358

The funds allocated for Sales Expenses are directed toward promotion of the hotel and achieving both high occupancy and rate, regardless of the source of the transient guest.

The details of this budget are as follows:

### Operating Sales Expenses
### (Overhead Expenses)

| Category | | Total |
|---|---|---|
| Production | $ | 45,000 |
| Consumer Advertising - National | $ | 200,000 |
| Consumer Advertising - International | $ | 100,000 |
| Consumer Advertising - Local | $ | 60,000 |

| | | |
|---|---|---|
| Electronic Advertising (PPC/GDS) | $ | 66,680 |
| Marketing Services | $ | 52,000 |
| Other Marketing Services | $ | 304,000 |
| Photography | $ | 50,000 |
| Advertising Agency Fees | $ | 45,000 |
| Comp Rooms | $ | 144,000 |
| Direct Mail | $ | 42,000 |
| Public Relations (Press Trips & Events) | $ | 73,508 |
| Client Gifts | $ | 40,800 |
| Entertainment | $ | 144,000 |
| Printing and Stationary | $ | 25,000 |
| Telephone | $ | 10,000 |
| Postage | $ | 10,000 |
| Office Supplies & Miscellaneous | $ | 15,600 |
| PR · Other Expenses | $ | 40,008 |
| Travel and Entertainment | $ | 80,150 |
| Trade Shows | $ | 55,350 |
| Consortia Directories and Programs | $ | 24,600 |
| Brochures | $ | 21,600 |
| Dues and Subscriptions | $ | 120,000 |
| GDS Fees | $ | 97,499 |
| Sales Representation | $ | 42,755 |
| Centralized Marketing Contribution | $ | 651,808 |

**TOTAL**                                    **$2,561,358**

18.   Income Credit: $2,075,321

The Income Credit represents estimated income to be derived from services to the Hotel
Suite Units. These services are laundry/valet, in-room movies, telephone, Internet and
limousine. For estimating purposes, an occupancy rate of 61% has been used. The
Income Credit also includes interest expected to be earned on deposits held in interest-
bearing accounts by the Condominium. The Income Credit will be an offset to the
Overhead Expenses thereby reducing the total amount of the Overhead Common
Charges.

The details of this budget are as follows:

### Total Other Income
### (Overhead Credit)

| Category | | Total |
|---|---|---|
| Laundry/Valet | $ | 180,406 |
| In-Room Movies | $ | 47,899 |
| Telephone | $ | 332,041 |
| Internet | $ | 105,076 |
| Limousine | $ | 110,004 |
| Other Income | $ | 46,802 |
| Bank Interest | $ | 4,800 |

| | | |
|---|---|---|
| Attrition & Cancellation | $ | 204,374 |
| Business Center | $ | 11,594 |
| A&G Allocations | $ | 1,032,324 |

**TOTAL**   **$  2,075,321**

19.   <u>Per Use Expenses</u>:   $6,218,993

Common Charges and Overhead Common Charges <u>do</u> <u>not</u> include payment of "per use" expenses. Per Use expenses will be paid by the Hotel Suite Unit Owners on the basis of actual occupancy of their Hotel Suite Units. These expenses are for hotel services which occur only when a Hotel Suite Unit is occupied (including, for these purposes, occupancy by the Hotel Suite Unit Owner). These expenses vary directly with room type as set forth below.

Actual charges will be made for each night a Hotel Suite Unit is occupied. The budget shown herein reflects the total costs for these services based on an estimated occupancy rate of 61%. The estimated costs for a studio, a suite, a spa suite and a penthouse suite will be $63.00, $100.50, $104.00 and $197.50, respectively. This cost may vary by room type from time to time based on the demand for services from hotel guests. However, each room will vary slightly based on factors such as maid service credits, as established by the Hotel Motel Trades Service Agreement and other factors, such as the amount of windows, the size of the unit, the number of bathrooms and powder rooms and other unique factors.

The details of this budget are as follows:

## "PER USE" NIGHTLY BUDGET

### PAYROLL

| Position | Positions | | Amount |
|---|---|---|---|
| AM Agents | 34.00 | $ | 1,731,478 |
| PM Agents | 11.00 | $ | 537,250 |
| Housemen | 4.00 | $ | 173,864 |
| Benefits (Includes Worker's Compensation) | | $ | 1,246,455 |
| Total Per Use Payroll | | $ | 3,689,048 |

### OPERATING EXPENSES

#### Category

| | | |
|---|---|---|
| Outside Laundry Linen | $ | 1,260,915 |
| Flowers | $ | 126,092 |
| Linen Supplies | $ | 271,203 |

| | | |
|---|---|---:|
| Guest Supplies | $ | 651.728 |
| Guest Amenities | $ | 220.008 |
| Total Per Use Expenses | $ | 2,529,945 |
| Total Per Use Payroll Expenses | $ | 3,689,048 |
| **TOTAL PER USE BUDGET** | **$** | **6,218,993** |

# EXHIBIT C

# BUDGET CERTIFICATIONS

KL3 2755412 6

HOSPITALITY DEVELOPMENT CONSULTING, LLC
814 Tenth Avenue 4G
New York, NY 10019

CERTIFICATION OF SPONSOR'S EXPERT
ON ADEQUACY OF CONDOMINIUM BUDGET PURSUANT TO
SECTION 20.4(d) OF THE REGULATIONS ISSUED
PURSUANT TO GENERAL BUSINESS LAW, ARTICLE 23-A, AS AMENDED

April 19, 2010

New York State Department of Law
120 Broadway
New York, New York 10271
Attn: Investment Protection Bureau

Re:     Trump SoHo Hotel Condominium New York
        246 Spring Street, New York, New York 10013

The undersigned, Hospitality Development Consulting, LLC, is a real estate advisory firm engaged in the management of and or consultant to numerous hotel or mixed use projects in the State of New York over the last four years.

The sponsor of the condominium offering plan for the above captioned property retained us to review schedule B (together with the notes thereto, the "Schedule") to the offering plan containing projections of income and expenses of the Condominium for the fiscal year April 1, 2010 to March 31, 2011, the projected first year of the condominium operation.

Our relevant experience in the field includes consulting responsibilities for numerous leading hotel operating entities and real estate development companies, most experienced at the level of quality relevant to the Trump SoHo Hotel Condominium New York.

We understand that we are responsible for complying with article 23-A of the General Business Law and the regulations promulgated by the Department of Law in Part 20 insofar as they are applicable to Schedule B.

We have reviewed the Schedule and investigated the facts set forth in the Schedule and the facts underlying them with due diligence in order to form a basis for this certification. We also have relied on our more than twenty five (25) year experience in the design, development and management of mixed use buildings in Manhattan.

We certify that the projections in Schedule B appear reasonable and adequate under existing circumstances, and the projected income appears to be sufficient to meet the anticipated operating expenses of the Condominium for the projected first year of condominium operation.

We certify that the schedule:

(i)     sets forth in detail the projection of income and expenses for the projected first year of condominium operation;

(ii)    affords potential investors, purchasers, and participants an adequate basis upon which to found their judgment concerning the projected first year of condominium operation;

(iii)   does not omit any material fact;

(iv)    does not contain any untrue statement of material fact;

(v)     does not contain any fraud, deception, concealment, or suppression;

(vi)    does not contain any promise or representation as to the future which is beyond reasonable expectation or unwarranted by existing circumstances; and

(vii)   does not contain any representation or statement which is false, where we: (a) knew the truth; (b) with reasonable effort could have known the truth; (c) made no reasonable effort to ascertain the truth; or (d) did not have knowledge concerning the representation or statement made.

We further certify that we have no financial interest in the sponsor. We understand that a copy of this certification is intended to be incorporated into the offering plan. This statement is not intended as a guarantee or warranty of the income and expenses for the projected first year of condominium operation.

This certification is made under penalty of perjury for the benefit of all persons to whom this offer is made. We understand that violations are subject to the civil and criminal penalties of the General Business Law and Penal Law.

HOSPITALITY DEVELOPMENT CONSULTING, LLC

By:_____

Name:   Thomas P. Downing
Title:    Owner

Sworn to me this
_____th day of April, 2010:

_____
Notary Public

HOSPITALITY DEVELOPMENT CONSULTING, LLC
814 Tenth Avenue 4t
New York, NY 10019

CERTIFICATION OF SPONSOR'S EXPERT
ON ADEQUACY OF COMMON CHARGES PAYABLE BY THE COMMERCIAL UNIT
OWNER(S) PURSUANT TO SECTION 20.4(c) OF THE REGULATIONS ISSUED
PURSUANT TO GENERAL BUSINESS LAW, ARTICLE 23-A, AS AMENDED

April 19, 2010

New York State Department of Law
120 Broadway
New York, New York 10271
Attn: Investment Protection Bureau

Re:  Trump SoHo Hotel Condominium New York
     246 Spring Street, New York, New York 10013

The undersigned, Hospitality Development Consulting, LLC, is a real estate advisory
firm engaged in the management of and/or consultant to numerous hotel or mixed use
projects in the State of New York over the last four years.

The sponsor of the condominium offering plan for the above captioned property retained
us to review schedule B (together with the notes thereto, the "Schedule") to the offering
plan containing projections of income and expenses of the Condominium for the fiscal
year April 1, 2010 to March 31, 2011, the projected first year of the condominium
operation.

Our relevant experience in the field includes consulting responsibilities for numerous
leading hotel operating entities and real estate development companies, most experienced
at the level of quality relevant to the Trump SoHo Hotel Condominium New York.

We understand that we are responsible for complying with article 23-A of the General
Business Law and the regulations promulgated by the Department of Law in Part 20
insofar as they are applicable to Schedule B.

We have reviewed the Schedule and investigated the facts set forth in the Schedule and
the facts underlying them with due diligence in order to form a basis for this certification.
We also have relied on our more than twenty five (25) years experience in the design
development, and management of mixed use buildings in Manhattan.

We certify that the projections in Schedule B for common charges payable by the
owners of commercial units appear reasonable and adequate under existing
circumstances to meet the anticipated operating expenses fairly attributable to such
commercial units for the projected first year of condominium operation, and that the
allocation of common charges attributable to the commercial units also reflects the
special or exclusive use or availability or exclusive control of particular common areas

We certify that the estimates in the Schedule for the common charges payable by the owner(s) of the commercial unit(s)

    (i)    sets forth in detail the projected common charges for the commercial unit(s) for the projected first year of condominium operation

    (ii)    affords potential investors, purchasers, and participants an adequate basis upon which to found their judgment concerning the common charges payable by the owner(s) of the commercial unit(s) during the projected first year of condominium operation;

    (iii)    do not omit any material fact;

    (iv)    do not contain any untrue statement of material fact

    (v)    do not contain any fraud, deception, concealment, or suppression;

    (vi)    do not contain any promise or representation as to the future which is beyond reasonable expectation or unwarranted by existing circumstances; and

    (vii)    do not contain any representation or statement which is false where we (a) knew the truth, (b) with reasonable effort could have known the truth, (c) made no reasonable effort to ascertain the truth, or (d) did not have knowledge concerning the representation or statement made.

We further certify that we have no financial interest in the sponsor. We understand that a copy of this certification is intended to be incorporated into the offering plan. This statement is not intended as a guarantee or warranty of the common charges fairly attributable to the commercial unit(s) for the projected first year of condominium operation

This certification is made under penalty of perjury for the benefit of all persons to whom this offer is made. We understand that violations are subject to the civil and criminal penalties of the General Business Law and Penal Law

                HOSPITALITY DEVELOPMENT CONSULTING, LLC

                By _____
                    Name: Thomas P. Downing
                    Title: Owner

Sworn to me this
24th day of April, 2010

_____
    Notary Public

# EXHIBIT D

## UPDATED REAL ESTATE TAX OPINION

# MARCUS & POLLACK LLP

### ATTORNEYS AT LAW

INCLUDING PROFESSIONAL CORPORATIONS
708 THIRD AVENUE
11TH FLOOR
NEW YORK, NY 10017-4112

(212) 490-2900
FAX: (212) 599-3167

JOEL R. MARCUS
ROBERT M. POLLACK

PHILIP H. AZARIAN
BRUCE A. BRASKY

taxappeal@marcuspollack.com

April 1, 2010

Bayrock/Sapir Organization LLC
160 Varick Street, 2nd Floor
New York, New York 10013

> Re:   Trump Soho
> 246 Spring Street
> Manhattan, Block 491 Lot 36
> Assessment Projection Tax Opinion

Dear Sirs:

You have requested us to project the real estate tax liability including the estimate of the actual and transitional assessments and applicable taxes that would be reasonably expected to be applied to this property for the new transient hotel at the above referenced premises for the first year of the condominium operation.

We have reviewed the information you have provided us and researched the assessments of comparable properties together with our knowledge and experience with New York City's assessment practices in reaching our projections.

It has been the practice of the Real Property Assessment Department of the City of New York to review the assessed valuation of newly constructed or renovated buildings. While there is a formula which has been utilized by the Real Property Assessment Department in assessing such properties in the past, it has not been employed consistently, and it is therefore not possible to estimate or determine the construction/renovation assessed valuation of this property with any degree of certainty. However, the estimates presented below are based upon the current policies and practices of that department.

# MARCUS & POLLACK LLP

You are advised that although the estimate of assessed valuation upon completion of construction is a good-faith estimate, such assessed valuation, when actually made, may be less or greater than as estimated below.

The final actual (target), and transitional assessed valuations for the subject property for the two most recent tax years, before the condominium subdivision, are set forth as follows:

Tax Lot 36 as follows:

| Tax Year | | Total |
|---|---|---|
| 2009/10 | Actual | $30,145,500 |
| 2009/10 | Transitional | $14,148,450 |
| | | |
| 2010/11 | Actual | $60,745,500 |
| 2010/11 | Transitional | $48,862,350 |

You have advised us of the following facts regarding this project:

1.  Bayrock/Sapir Organization LLC will construct a new transient hotel at the property consisting of 391 hotel suite units and 8 commercial units.

2.  The total gross square footage of the building, including accessory uses such as lobby area, storage room, mechanical rooms, elevator shafts, etc. is 395.059 gross square feet of which the gross square feet for commercial units is 41,946 square feet. The gross building area of the hotel units is approximately 302,930 square feet. The New York City Department of Finance records show that this property is on a land plot of 24,275 square feet.

3.  The site, which comprises the subject property, when purchased and prior to construction, comprise two tax lots formerly identified on the New York City Department of Finance records as Manhattan, Block 491 Lots 34 and 36. The two tax lots have since been merged into a single tax lot identified on the New York City Department of Finance records as Manhattan, Block 491 Lot 36.

4.  The subject property will not apply for any real estate tax exemptions granted by the New York City Department of Finance Industrial and Commercial Incentive Program (ICIP) or any other real estate tax exemption program.

5.  Construction will commence on or about November 2006 and construction is estimated to be substantially completed by April 2010.

6.  The hotel suite and commercial portions of the property will be one building with separate condominium tax lots for each unit.

# MARCUS & POLLACK LLP

7.  The first year of the condominium operation is planned for April 1, 2010 through March 31, 2011. Real Estate taxes due for the first year of the condominium operation will be based on three (3) months of tax year 2009/2010 and nine (9) months of tax    year 2010/2011.

There are three recognized appraisal methods which are employed by the Real Property Assessment Department to determine the full market value of income producing real property. These methods are the original cost method, capitalization of income approach, and the sales price comparison method.

The original cost method is based on the theory that the value of a given property is reflected by its cost of construction plus the acquisition cost of the underlying land. This method of valuation is considered a highly significant indicator of value with respect to new buildings. Relevant data used in the cost method include material and labor ("hard") costs, and financing, engineering, architectural, testing and professional fees, construction period taxes ("soft") costs.

The capitalization of income method is based upon the proposition that the annual net income generated by a property, when divided by the rate of return an investor at a given time would accept for his money in a competing investment, yields a close estimate of the market value of the property. The Department of Finance has also used gross income multipliers to lessen the variations in expenses on hotel properties.

The sales price comparison method is founded upon the belief that value can be ascertained by surveying market prices. Market value has been defined as that price which a property would bring in a competitive and open market, wherein both buyer and seller are acting prudently, knowledgeably, and assuming the price is not affected by undue stimulus. However, the addition of sale prices of individual units may not be the basis for arriving at the assessed valuation of a residential condominium or cooperative housing corporation (see New York State Real Property Tax Law Section 581, and Real Property Law Section 339-y).

Since tax year 1982/83, Real Property Tax Law section 1805 (3) has mandated that increases in assessed valuation must be phased in over a five year period, resulting in a "transitional assessment". However, the statute requires the Finance Department to include all physical (new construction, renovation, rehabilitation, or addition of square footage to existing structures) changes directly into the taxable assessed valuation without the five-year phase-in. The "actual assessment" is the target value which will be reached at the end of the five year period, assuming the assessment is not increased in the interim. Taxes are payable based upon the lower of the two values.

# MARCUS & POLLACK LLP

In arriving at the assessed valuation for each unit in the Condominium, the building is first assessed in its entirety. This overall assessment is then apportioned among the respective units, each of which will be assigned a tax lot designation once the condominium Declaration has been recorded and the floor plans are filed with the office of the City Register. In the past, the apportionment was based in part upon the proportion the projected selling price presented in the Offering Plan for each unit bears to the gross sellout price for all units available for purchase in the project (hereinafter, "Proportionate Valuation"), and in part upon potential and existing leases if any on particular units. However, the Department of Finance may allocate assessed value for a unit in a condominium by taking into consideration each unit respective percent interest in the common element. We make no representation that the Department of Finance will use any particular method of properties assessed values among the condominium units.

In the 2010/2011 tax year when the property is still under construction, the Tentative assessment roll shows the Actual assessed value to be $60,745,000 ($153.76 psf of gross building are when using 395,059 sqft.). In tax year 2009/2010, when the property is still under construction, the Final assessment roll shows the Actual assessed value is $30,145,000 and the Transitional (taxable) assessed value is $14,148,450.

The most recent and currently available tax rate for tax year (2009/2010), for residential real property is 13.241% and for commercial property the current tax rate is 10.426%. For purposes of the following projections the estimated commercial tax rate of 10.426% has been utilized for tax year 2009/2010 and 2010/2011.

Our analysis of comparable recently constructed hotel buildings adjusted for age and location shows an average total assessment per square foot of gross building area at $157 per square foot for hotel rooms and suites.

Further, our analysis of recently constructed retail and other commercial condominium type uses, adjusted for age and location shows an average total assessment per square foot of gross area at $82 per square foot, which we adopted for the banquet, bar, spa and restaurant spaces.

# MARCUS & POLLACK LLP

The analysis mentioned above was conducted using the 2010/2011 tentative final assessment roll.

### Estimated Real Estate Taxes For Tax Year 2009/2010 (During Construction):

| | |
|---|---|
| Actual Total Assessed Value (whole building): | $30,145,500 |
| Transitional Taxable Total Assessed Value (whole building): | $14,148,450 |
| Assumed Tax Rate: | 10.426% |
| Projected 2009/2010 Taxes: | $ 1,475,117.40 |
| Estimated Allocation for the Hotel Component at 93%: | $ 1,371,859.18 |
| Estimated Allocation for the Retail Component at 7%: | $ 103,258.22 |

### Estimated Real Estate Taxes Before Completion (For Tax Year 2010/2011):

| | |
|---|---|
| Actual Total Assessed Value (whole building): | $60,745,500 |
| Taxable Total Assessed Value (whole building): | $48,862,350 |
| Assumed Tax Rate: | 10.426% |
| Projected 2010/2011 Taxes: | $ 5,094,388.61 |
| Estimated Allocation for the Hotel Component at 93%: | $ 4,737,781.41 |
| Estimated Allocation for the Retail Component at 7%: | $ 356,607.20 |

# MARCUS & POLLACK LLP

## Estimated Real Estate Taxes For the First Year of Condominium Operation:

### Discussion

You have advised us that the first year of condominium operation is anticipated to run from April 1, 2010 through March 31, 2011 and therefore fall within the final three (3) months of tax year 2009/2010 and within the first nine (9) months of tax year 2010/2011. The real estate taxes for the first year of condominium operation will therefore consist of real estate taxes based on three (3) months of tax year 2009/2010 assessed valuations and nine (9) months of the 2010/2011 assessed valuation.

As of the tentative assessment roll for tax year 2010/2011 when the property is not yet subdivided into condominium tax lots we estimate that approximately 93% of the assessed values will be allocated to the Hotel condominium units and 7% of the assessed values will be allocated to the retail units.

**Hotel Condominium Component**
**Total Taxes Due For First Year of Operation April 1, 2010 to March 31, 2011:**
April 1, 2010 - June 30, 2010 (3 Months of Tax Year 2009/2010)
$1,371,859.18 ÷ 12 x 3 =

$ 342,964.79

July 1, 2010 to March 31, 2011 (9 months of tax year 2010/2011)
$4,737,781.41 ÷ 12 x 9 =

$3,553,336.06

Total taxes due for the Hotel Condominium Component:

$3,896,300.85

**Retail Condominium Component**
**Total Taxes Due For First Year of Operation April 1, 2010 to March 31, 2011:**
April 1, 2010 - June 30, 2010 (3 Months of Tax Year 2009/2010)
$103,258.22 ÷ 12 x 3 =

$ 25,814.56

July 1, 2010 to March 31, 2011 (9 months of tax year 2010/2011)
$356,607.20 ÷ 12 x 9 =

$267,455.40

Total Taxes due for the Retail Condominium Component:

$293,269.96

# MARCUS & POLLACK LLP

The tax liability of a particular condominium unit assuming the overall actual assessment as estimated above may be estimated as follows:

**1st Year Estimated Tax Liability For Individual Hotel Condominium Units =**
$3,896,300.85 x Proportionate Common Element

1st Year Estimated Tax Liability for Individual Retail Condominium Units
$293,269.96 x Proportionate Common Element

We note that in the second year of the condominium operation when the building construction is fully completed and the hotel is in operation and the taxes may be based off the assessed value of a completed building, we estimate that the hotel component real estate tax for the whole building could be $5,889,993.02 and the retail taxes could be $443,332.81.

## Hudson Square Business Improvement District

The property is located in the HUDSON SQUARE Business Improvement District (BID). A commercial property located in the BID is assessed a BID tax. The most recent and currently available tax rate for tax year 2009/2010 is approximately nineteen cents ($0.19) per gross square foot. For the first year of the condominium operation, the estimated BID tax liability for the whole condominium including the hotel and retail operation is $77,347.

This letter was prepared at the request, Bayrock/Sapir Organization LLC. Certain figures set forth herein are approximations derived from material submitted by the Bayrock/Sapir Organization LLC are subject to variation. We have not passed upon the accuracy of any figures or estimates contained in the Bayrock/Sapir Organization LLC development plan, and offer no warranties of the amount of any tax liabilities for any period. You should be aware that regulations and practices of the Department of Finance may be revised in the future which will result in the tax liability of a particular condominium unit being based upon the proportionate common interest valuation.

**The opinions expressed above are based on our interpretation of the Real Property Tax Law, Administrative Code of the City of New York, and the applicable rules and regulations, policies and practices of the Department of Finance in effect as of the date hereof. While we believe our opinions are well founded, they are not intended, and should not be construed as representations or warranties. You should be aware that the laws, regulations and practices of the Department of Finance upon which this opinion is predicated may in the future be revised in a manner adverse to your interests, or that there may be an adverse interpretation of the law or regulations by one or more agencies of the City of New York, or Courts of competent jurisdiction.**

The foregoing analysis is based upon our experience with the Real Property Assessment Department and the Tax Commission of the City of New York, and their assessment policies regarding newly constructed or renovated properties held in condominium ownership. Application of a particular approach to valuation by an individual assessor may yield a different result. This would necessitate commencement of real property tax review proceedings at the Tax Commission or Supreme Court level to bring the assessment in line with the estimates presented herein.

# MARCUS & POLLACK LLP

Bayrock/Sapir Organization LLC
Page 8
April 1, 2010

We hereby consent to the inclusion of this letter in the Bayrock/Sapir Organization LLC condominium offering plan.

Very truly yours,

Joel R. Marcus

JRM/ae

## EXHIBIT E

## UPDATED SCHEDULE A

KLJ 2755412 v

Schedule of Offering Prices and Related Information (1)
for the Period from April 1, 2010 to March 31, 2011
Projected First Year of Condominium Operation

| FLOOR | UNIT | Number of Bedrooms/ Bathrooms | Approx. Unit Area (Sq. Feet) (2) | Approx. Terrace Area/Amenity Area (Sq. Feet) (2) | Offering Price (Per Unit) $ (3) | Common Interest (4) | Proportionate Share of Total Hotel Suite Common Interest and Total Commercial Common Interest(4) | Projected Monthly Overhead Common Charges $ (5) | Projected Monthly Operating Common Charges $ (5) | Projected Monthly R.E. Taxes $ (6) | Projected Annual R.E. Taxes $ (6) | Projected Total Monthly Common Charges and Real Estate Taxes $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8 08 | 808 | 1/1 | 823 | 442 | 3,458,000 | 0.2847% | 0.3277% | 2,239.31 | 3,456.84 | 1,083.51 | 13,002.09 | 6,769.36 |
| 8 09 | 809 | 1/1 | 741 | | 2,055,638 | 0.2697% | 0.3082% | 2,041.68 | 3,166.58 | 992.61 | 11,911.26 | 6,200.87 |
| 8 10 | 810 | 1/1 | 775 | | 2,134,050 | 0.2710% | 0.3120% | 2,122.03 | 3,291.19 | 1,031.68 | 12,380.13 | 6,444.89 |
| 9 01 | 901 | 0/1 | 532 | | 1,454,000 | 0.1556% | 0.1792% | 1,218.65 | 1,890.08 | 592.48 | 7,109.71 | 3,701.20 |
| 9 02 | 902 | 0/1 | 422 | | 1,121,000 | 0.1300% | 0.1502% | 959.55 | 1,457.21 | 456.79 | 5,481.42 | 2,853.84 |
| 9 03 | 903 | 1/1 | 905 | | 2,452,163 | 0.2716% | 0.3120% | 2,122.37 | 3,291.73 | 1,031.68 | 12,392.16 | 6,345.95 |
| 9 04 | 904 | 1/1 | 754 | | 2,115,008 | 0.2284% | 0.2606% | 1,772.72 | 2,749.44 | 861.86 | 10,342.27 | 5,384.02 |
| 9 05 | 905 | 0/1 | 445 | | 1,353,000 | 0.1541% | 0.1844% | 1,050.18 | 1,628.80 | 510.57 | 6,126.87 | 3,189.55 |
| 9 06 | 906 | 0/1 | 791 | | 2,135,500 | 0.2308% | 0.2654% | 1,804.93 | 2,799.37 | 877.51 | 10,530.10 | 5,481.80 |
| 9 07 | 907 | 0/1 | 474 | | 1,290,400 | 0.1381% | 0.1582% | 1,081.61 | 1,677.54 | 525.65 | 6,310.24 | 3,285.01 |
| 9 08 | 908 | 1/1.5 | 741 | | 2,058,213 | 0.2281% | 0.2637% | 1,725.48 | 2,676.16 | 838.88 | 10,066.61 | 5,246.52 |
| 9 09 | 909 | 1/1.5 | 775 | | 2,163,263 | 0.2315% | 0.2666% | 1,813.30 | 2,812.06 | 881.49 | 10,577.84 | 5,506.67 |
| 9 10 | 910 | 0/1 | 460 | | 1,327,500 | 0.1314% | 0.1513% | 1,028.81 | 1,595.65 | 501.18 | 6,002.18 | 3,124.64 |
| 9 11 | 911 | 0/1 | 540 | | 1,440,500 | 0.1542% | 0.1775% | 1,207.33 | 1,872.33 | 586.97 | 7,043.70 | 3,666.84 |
| 10 01 | 1001 | 0/1 | 532 | | 1,440,500 | 0.1542% | 0.1775% | 1,207.33 | 1,872.33 | 586.97 | 7,043.70 | 3,666.84 |
| 10 02 | 1002 | 0/1 | 422 | | 1,150,000 | 0.1251% | 0.1437% | 963.85 | 1,494.90 | 468.80 | 5,625.22 | 2,927.36 |
| 10 03 | 1003 | 0/1 | 488 | | 1,418,600 | 0.1418% | 0.1748% | 1,188.98 | 1,844.06 | 578.05 | 6,936.61 | 3,611.09 |
| 10 04 | 1004 | 0/1 | 425 | | 1,175,500 | 0.1259% | 0.1448% | 985.27 | 1,528.05 | 478.99 | 5,747.93 | 2,992.27 |
| 10 05 | 1005 | 1/1 | 754 | | 2,119,750 | 0.2288% | 0.2612% | 1,776.59 | 2,755.43 | 863.74 | 10,364.85 | 5,398.26 |
| 10 06 | 1006 | 0/1 | 445 | | 1,357,000 | 0.1349% | 0.1540% | 1,053.53 | 1,634.00 | 512.20 | 6,146.45 | 3,199.73 |
| 10 07 | 1007 | 1/1.5 | 791 | | 2,156,500 | 0.2308% | 0.2657% | 1,807.42 | 2,803.27 | 878.73 | 10,544.77 | 5,489.42 |
| 10 08 | 1008 | 0/1 | 474 | | 1,293,900 | 0.1384% | 0.1594% | 1,084.12 | 1,681.44 | 527.08 | 6,324.91 | 3,292.64 |
| 10 09 | 1009 | 1/1.5 | 741 | | 2,062,425 | 0.2302% | 0.2542% | 1,728.91 | 2,681.49 | 840.56 | 10,086.66 | 5,256.93 |
| 10 10 | 1010 | 1/1.5 | 781 | | 2,203,288 | 0.2360% | 0.2711% | 1,848.52 | 2,866.64 | 898.61 | 10,783.53 | 5,613.63 |
| 10 11 | 1011 | 0/1 | 460 | | 1,273,500 | 0.1318% | 0.1517% | 1,032.16 | 1,600.85 | 503.31 | 6,031.71 | 3,134.42 |
| 10 12 | 1012 | 0/1 | 540 | | 1,443,500 | 0.1545% | 0.1775% | 1,209.84 | 1,876.43 | 588.20 | 7,058.37 | 3,674.47 |
| 11 01 | 1101 | 0/1 | 532 | | 1,444,500 | 0.1946% | 0.1780% | 1,210.68 | 1,877.73 | 588.60 | 7,063.26 | 3,677.92 |
| 11 02 | 1102 | 0/1 | 422 | | 1,155,000 | 0.1236% | 0.1423% | 968.04 | 1,501.40 | 470.64 | 5,647.67 | 2,940.09 |
| 11 03 | 1103 | 0/1 | 488 | | 1,382,213 | 0.1470% | 0.1697% | 1,158.48 | 1,796.76 | 563.22 | 6,758.69 | 3,518.46 |
| 11 04 | 1104 | 0/1 | 425 | | 1,214,000 | 0.1299% | 0.1466% | 1,017.99 | 1,578.10 | 494.68 | 5,936.27 | 3,090.27 |
| 11 05 | 1105 | 1/1 | 754 | | 2,123,900 | 0.2273% | 0.2617% | 1,780.03 | 2,761.76 | 865.41 | 10,384.87 | 5,406.20 |
| 11 06 | 1106 | 0/1 | 453 | | 1,261,000 | 0.1350% | 0.1554% | 1,056.99 | 1,639.20 | 515.83 | 6,185.94 | 3,209.93 |
| 11 07 | 1107 | 1/1.5 | 791 | | 2,160,500 | 0.2312% | 0.2662% | 1,810.79 | 2,808.47 | 880.36 | 10,564.33 | 5,499.62 |
| 11 08 | 1108 | 0/1 | 474 | | 1,298,500 | 0.1384% | 0.1594% | 1,088.32 | 1,687.44 | 529.11 | 6,349.35 | 3,305.37 |
| 11 09 | 1109 | 1/1.5 | 741 | | 2,067,425 | 0.2211% | 0.2548% | 1,732.78 | 2,687.48 | 842.43 | 10,109.21 | 5,262.69 |
| 11 10 | 1110 | 1/1.5 | 781 | | 2,274,475 | 0.2434% | 0.2803% | 1,906.31 | 2,956.63 | 926.80 | 11,121.61 | 5,789.74 |
| 11 11 | 1111 | 0/1 | 460 | | 1,235,500 | 0.1322% | 0.1522% | 1,035.51 | 1,606.05 | 503.44 | 6,041.30 | 3,145.00 |
| 11 12 | 1112 | 0/1 | 540 | | 1,447,500 | 0.1549% | 0.1784% | 1,213.20 | 1,881.63 | 589.83 | 7,077.93 | 3,684.65 |
| 12 01 | 1201 | 0/1 | 532 | | 1,449,500 | 0.1551% | 0.1784% | 1,214.87 | 1,884.23 | 590.64 | 7,087.71 | 3,689.79 |
| 12 02 | 1202 | 0/1 | 422 | | 1,159,000 | 0.1240% | 0.1428% | 971.40 | 1,506.60 | 472.27 | 6,747.23 | 2,950.22 |
| 12 03 | 1203 | 0/1 | 488 | | 1,387,850 | 0.1485% | 0.1710% | 1,163.20 | 1,804.09 | 565.52 | 6,786.25 | 3,532.81 |
| 12 04 | 1204 | 0/1 | 425 | | 1,184,500 | 0.1268% | 0.1460% | 992.77 | 1,539.75 | 482.66 | 5,791.92 | 3,015.16 |
| 12 05 | 1205 | 1/1 | 754 | | 2,128,923 | 0.2279% | 0.2623% | 1,784.32 | 2,767.43 | 867.49 | 11,409.95 | 5,419.24 |
| 12 06 | 1206 | 0/1 | 453 | | 1,304,000 | 0.1390% | 0.1607% | 1,092.03 | 1,695.00 | 531.35 | 6,376.25 | 3,319.59 |
| 12 07 | 1207 | 1/1.5 | 791 | | 2,165,500 | 0.2316% | 0.2668% | 1,814.98 | 2,814.97 | 882.40 | 10,588.78 | 5,512.34 |
| 12 08 | 1208 | 0/1 | 474 | | 1,303,000 | 0.1394% | 0.1606% | 1,092.69 | 1,693.79 | 530.95 | 6,371.36 | 3,326.83 |
| 12 09 | 1209 | 1/1.5 | 741 | | 2,072,550 | 0.2218% | 0.2554% | 1,737.07 | 2,693.14 | 844.52 | 10,134.27 | 5,275.24 |
| 12 10 | 1210 | 1/1.5 | 781 | | 2,214,475 | 0.2370% | 0.2730% | 1,856.06 | 2,878.68 | 932.37 | 10,628.44 | 5,657.11 |
| 12 11 | 1211 | 0/1 | 460 | | 1,240,500 | 0.1324% | 0.1529% | 1,039.70 | 1,612.55 | 505.48 | 6,065.75 | 3,157.75 |
| 12 12 | 1212 | 0/1 | 540 | | 1,452,500 | 0.1554% | 0.1790% | 1,217.39 | 1,888.13 | 591.86 | 7,102.38 | 3,697.58 |
| 14 01 | 1401 | 0/1 | 532 | | 1,456,000 | 0.1558% | 0.1794% | 1,220.32 | 1,892.68 | 593.29 | 7,119.49 | 3,708.29 |
| 14 02 | 1402 | 0/1 | 422 | | 1,165,000 | 0.1247% | 0.1436% | 976.42 | 1,514.40 | 474.71 | 5,696.57 | 2,965.54 |
| 14 03 | 1403 | 0/1 | 488 | | 1,392,438 | 0.1491% | 0.1716% | 1,167.50 | 1,810.75 | 567.61 | 6,811.11 | 3,545.86 |
| 14 04 | 1404 | 0/1 | 425 | | 1,224,000 | 0.1312% | 0.1511% | 1,027.05 | 1,593.10 | 499.57 | 5,994.85 | 3,120.82 |
| 14 05 | 1405 | 1/1 | 682 | | 1,925,975 | 0.2061% | 0.2371% | 1,614.22 | 2,503.61 | 784.40 | 9,412.75 | 4,902.63 |
| 14 06 | 1406 | 0/1 | 453 | | 1,311,000 | 0.1397% | 0.1497% | 1,014.98 | 1,574.20 | 493.46 | 5,921.50 | 3,082.64 |
| 14 07 | 1407 | 1/1.5 | 791 | | 1,311,000 | 0.1396% | 0.1496% | 1,014.98 | 1,574.20 | 493.46 | 5,921.50 | 3,082.64 |
| 14 08 | 1408 | 0/1 | 474 | | 1,309,000 | 0.1403% | 0.1613% | 1,047.12 | 1,701.99 | 535.60 | 6,480.70 | 3,352.10 |
| 14 09 | 1409 | 1/1.5 | 741 | | 2,134,475 | 0.2289% | 0.2636% | 1,792.91 | 2,780.75 | 871.67 | 10,460.05 | 5,445.12 |
| 14 10 | 1410 | 1/1.5 | 781 | | 2,214,638 | 0.2373% | 0.2735% | 1,860.35 | 2,885.34 | 934.46 | 10,853.50 | 5,670.15 |
| 14 11 | 1411 | 0/1 | 460 | | 1,245,500 | 0.1533% | 0.1535% | 1,043.89 | 1,619.05 | 507.52 | 6,090.20 | 3,170.46 |
| 14 12 | 1412 | 0/1 | 540 | | 1,459,000 | 0.1798% | 0.1798% | 1,222.84 | 1,896.58 | 594.52 | 7,134.16 | 3,713.40 |
| 15 01 | 1501 | 0/1 | 532 | | 1,462,000 | 0.1565% | 0.1802% | 1,224.35 | 1,901.28 | 595.75 | 7,148.83 | 3,721.56 |
| 15 02 | 1502 | 0/1 | 422 | | 1,171,000 | 0.1253% | 0.1443% | 981.45 | 1,522.20 | 477.16 | 5,725.91 | 2,980.87 |
| 15 03 | 1503 | 0/1 | 488 | | 1,394,125 | 0.1492% | 0.1724% | 1,172.65 | 1,818.75 | 570.12 | 6,841.39 | 3,561.51 |
| 15 04 | 1504 | 0/1 | 425 | | 1,196,500 | 0.1280% | 0.1473% | 1,002.83 | 1,553.25 | 487.55 | 5,850.60 | 3,045.73 |
| 15 05 | 1505 | 1/1 | 682 | | 1,989,525 | 0.2132% | 0.2452% | 1,667.00 | 2,586.22 | 810.19 | 9,740.83 | 5,070.92 |
| 15 06 | 1506 | 0/1 | 435 | | 1,217,000 | 0.1302% | 0.1503% | 1,020.01 | 1,582.00 | 495.90 | 4,950.81 | 3,097.93 |
| 15 07 | 1507 | 1/1.5 | 791 | | 2,178,000 | 0.2331% | 0.2684% | 1,825.45 | 2,831.22 | 887.49 | 10,649.86 | 5,544.16 |
| 15 08 | 1508 | 0/1 | 474 | | 1,315,000 | 0.1409% | 0.1620% | 1,102.34 | 1,709.99 | 535.84 | 6,430.04 | 3,347.57 |
| 15 09 | 1509 | 1/1.5 | 741 | | 2,063,825 | 0.2230% | 0.2568% | 1,746.52 | 2,708.80 | 849.12 | 10,189.43 | 5,304.44 |
| 15 10 | 1510 | 1/1.5 | 781 | | 2,226,500 | 0.2385% | 0.2749% | 1,869.54 | 2,900.00 | 917.17 | 10,886.07 | 5,687.11 |
| 15 11 | 1511 | 0/1 | 460 | | 1,252,000 | 0.1340% | 0.1543% | 1,049.34 | 1,627.50 | 510.17 | 6,121.98 | 3,187.00 |
| 15 12 | 1512 | 0/1 | 540 | | 1,465,000 | 0.1568% | 0.1805% | 1,227.86 | 1,904.38 | 596.98 | 7,163.50 | 3,729.20 |
| 16 01 | 1601 | 0/1 | 532 | | 1,519,000 | 0.1626% | 0.1872% | 1,273.12 | 1,974.57 | 618.96 | 7,427.55 | 3,866.66 |
| 16 02 | 1602 | 0/1 | 422 | | 1,328,500 | 0.1315% | 0.1502% | 1,026.65 | 1,596.95 | 500.59 | 6,007.07 | 3,127.18 |
| 16 03 | 1603 | 0/1 | 488 | | 1,458,875 | 0.1561% | 0.1793% | 1,222.48 | 1,899.03 | 594.54 | 7,132.08 | 3,712.28 |
| 16 04 | 1604 | 0/1 | 425 | | 1,254,000 | 0.1342% | 0.1435% | 1,051.02 | 1,670.10 | 510.98 | 6,131.76 | 3,192.09 |
| 16 05 | 1605 | 1/1 | 682 | | 1,992,088 | 0.2132% | 0.2455% | 1,669.63 | 2,589.55 | 811.74 | 9,740.83 | 5,070.92 |
| 16 06 | 1606 | 0/1 | 435 | | 1,275,000 | 0.1385% | 0.1571% | 1,068.62 | 1,657.39 | 519.54 | 6,234.44 | 3,245.55 |
| 16 07 | 1607 | 1/1.5 | 791 | | 2,235,000 | 0.2392% | 0.2753% | 1,873.25 | 2,905.31 | 910.72 | 10,928.61 | 5,690.26 |
| 16 08 | 1608 | 0/1 | 474 | | 1,372,100 | 0.1468% | 0.1693% | 1,149.42 | 1,783.46 | 559.06 | 6,708.70 | 3,492.64 |
| 16 09 | 1609 | 1/1.5 | 741 | | 2,143,275 | 0.2294% | 0.2641% | 1,796.35 | 2,786.08 | 873.34 | 10,480.10 | 5,455.77 |
| 16 10 | 1610 | 1/1.5 | 781 | | 2,285,750 | 0.2446% | 0.2817% | 1,914.76 | 2,971.28 | 931.40 | 11,176.77 | 5,818.44 |
| 16 11 | 1611 | 0/1 | 460 | | 1,259,000 | 0.1347% | 0.1551% | 1,055.21 | 1,636.60 | 513.02 | 6,156.21 | 3,204.82 |
| 16 12 | 1612 | 0/1 | 540 | | 1,513,000 | 0.1621% | 0.1867% | 1,269.77 | 1,969.37 | 617.33 | 7,407.99 | 3,859.49 |
| 17 01 | 1701 | 0/1 | 532 | | 1,526,000 | 0.1633% | 0.1880% | 1,278.99 | 1,983.67 | 621.81 | 7,461.77 | 3,884.48 |

Schedule of Offering Prices and Related Information (1)
for the Period from April 1, 2010 to March 31, 2011
Projected First Year of Condominium Operation

| FLOOR | UNIT | Number of Bedrooms/ Bathrooms | Approx. Unit Area (Sq. Feet) (2) | Approx. Terrace Area/Amenity Area (Sq. Feet) (3) | Offering Price (Per Unit) (4) | Common Interest (4) | Proportionate Share of Total Hotel Suite Common Interest and Total Commercial Common Interest (4) | Projected Monthly Overhead Common Charges (5) | Projected Monthly Operating Common Charges (5) | Projected Monthly R.E. Taxes (6) | Projected Annual R.E. Taxes (6) | Projected Total Monthly Common Charges and Real Estate Taxes (5) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 17 02 | 1702 | 0-1 | 422 | | 1,236,500 | 0.1323% | 0.1524% | 1,036.35 | 1,607.75 | 503.85 | 6,046.19 | 3,147.95 |
| 17 03 | 1703 | 0-1 | 488 | | 1,466,263 | 0.1569% | 0.1807% | 1,228.92 | 1,906.02 | 597.47 | 7,169.62 | 3,732.42 |
| 17 04 | 1704 | 1-1 | 682 | | 1,261,000 | 0.1350% | 0.1554% | 1,056.89 | 1,639.20 | 513.83 | 6,165.96 | 3,209.98 |
| 17 05 | 1705 | 1-1 | 682 | | 1,949,263 | 0.2140% | 0.2464% | 1,675.65 | 2,598.88 | 814.66 | 9,775.92 | 5,089.18 |
| 17 06 | 1706 | 0-1 | 435 | | 1,242,500 | 0.1373% | 0.1580% | 1,074.91 | 1,667.14 | 522.59 | 6,271.12 | 3,264.64 |
| 17 07 | 1707 | 1-1.5 | 791 | | 2,242,000 | 0.2396% | 0.2763% | 1,879.09 | 2,914.41 | 913.57 | 10,962.84 | 5,707.06 |
| 17 08 | 1708 | 0-1 | 474 | | 1,380,500 | 0.1477% | 0.1701% | 1,157.61 | 1,794.54 | 562.53 | 6,350.31 | 3,514.18 |
| 17 09 | 1709 | 1-1.5 | 741 | | 2,150,963 | 0.2302% | 0.2650% | 1,802.79 | 2,796.07 | 876.42 | 10,517.69 | 5,475.34 |
| 17 10 | 1710 | 1-1.5 | 781 | | 2,292,925 | 0.2454% | 0.2828% | 1,921.78 | 2,980.61 | 934.32 | 11,211.85 | 5,836.71 |
| 17 11 | 1711 | 0-1 | 460 | | 1,266,000 | 0.1355% | 0.1560% | 1,061.08 | 1,645.69 | 515.87 | 6,190.44 | 3,222.64 |
| 17 12 | 1712 | 0-1 | 540 | | 1,478,000 | 0.1582% | 0.1821% | 1,238.76 | 1,921.28 | 602.26 | 7,227.07 | 3,762.29 |
| 18 01 | 1801 | 0-1 | 532 | | 1,534,500 | 0.1642% | 0.1891% | 1,286.11 | 1,994.72 | 625.28 | 7,503.34 | 3,762.29 |
| 18 02 | 1802 | 0-1 | 422 | | 1,343,500 | 0.1437% | 0.1552% | 1,042.22 | 1,616.45 | 506.70 | 6,080.42 | 3,166.12 |
| 18 03 | 1803 | 0-1 | 488 | | 1,474,463 | 0.1578% | 0.1817% | 1,235.40 | 1,916.68 | 600.81 | 7,209.77 | 4,165.32 |
| 18 04 | 1804 | 0-1 | 425 | | 1,369,000 | 0.1578% | 0.1817% | 1,235.40 | 1,916.68 | 680.81 | 7,209.77 | 3,745.20 |
| 18 05 | 1805 | 1-1 | 682 | | 2,057,463 | 0.1394% | 0.1564% | 1,064.59 | 1,649.59 | 517.09 | 6,205.11 | 3,250.20 |
| 18 06 | 1806 | 0-1 | 435 | | 1,291,500 | 0.1348% | 0.1552% | 1,061.61 | 1,627.54 | 525.85 | 6,310.24 | 3,285.01 |
| 18 07 | 1807 | 1-1.5 | 791 | | 3,250,500 | 0.1580% | 0.1590% | 1,161.93 | 1,627.54 | 525.85 | 6,310.24 | 3,110.96 |
| 18 08 | 1808 | 0-1 | 474 | | 1,387,940 | 0.2388% | 0.2773% | 1,886.22 | 2,925.46 | 917.03 | 11,004.41 | 3,728.71 |
| 18 09 | 1809 | 1-1.5 | 741 | | 2,159,163 | 0.1710% | 0.1710% | 1,162.91 | 1,903.63 | 565.38 | 6,784.54 | 3,551.92 |
| 18 10 | 1810 | 1-1.5 | 781 | | 2,301,638 | 0.2961% | 0.2963% | 2,869.67 | 2,986.73 | 879.82 | 10,557.79 | 5,490.23 |
| 18 11 | 1811 | 0-1 | 466 | | 1,374,000 | 0.1363% | 0.1570% | 1,067.78 | 1,656.09 | 519.33 | 6,229.93 | 5,858.89 |
| 18 12 | 1812 | 0-1 | 540 | | 1,486,500 | 0.1591% | 0.1833% | 1,245.43 | 1,932.33 | 605.72 | 7,368.63 | 3,243.10 |
| 19 01 | 1901 | 0-1 | 532 | | 1,543,500 | 0.1652% | 0.1903% | 1,293.85 | 2,006.42 | 628.95 | 7,547.35 | 3,783.05 |
| 19 02 | 1902 | 0-1 | 422 | | 1,355,000 | 0.1521% | 0.1544% | 1,050.18 | 1,629.62 | 510.57 | 6,126.97 | 3,924.02 |
| 19 03 | 1903 | 0-1 | 488 | | 1,482,663 | 0.1587% | 0.1827% | 1,242.67 | 1,927.34 | 604.16 | 7,264.46 | 3,189.44 |
| 19 04 | 1904 | 0-1 | 425 | | 1,278,500 | 0.1368% | 0.1576% | 1,071.55 | 1,661.94 | 520.96 | 6,251.56 | 3,774.16 |
| 19 05 | 1905 | 1-1 | 682 | | 2,016,175 | 0.2158% | 0.2484% | 1,689.82 | 2,620.86 | 821.55 | 9,858.61 | 3,254.40 |
| 19 06 | 1906 | 0-1 | 435 | | 1,300,500 | 0.1390% | 0.1660% | 1,088.72 | 1,687.94 | 529.71 | 6,349.75 | 5,302.37 |
| 19 07 | 1907 | 1-1.5 | 791 | | 2,250,500 | 0.2405% | 0.2784% | 1,892.26 | 2,953.16 | 920.76 | 11,048.41 | 3,305.42 |
| 19 08 | 1908 | 0-1 | 474 | | 1,396,500 | 0.1494% | 0.1721% | 1,176.45 | 1,815.23 | 560.95 | 6,830.24 | 4,751.62 |
| 19 09 | 1909 | 1-1.5 | 741 | | 2,167,363 | 0.2320% | 0.2671% | 1,816.54 | 2,817.59 | 883.28 | 10,597.39 | 5,554.89 |
| 19 10 | 1910 | 1-1.5 | 781 | | 2,309,638 | 0.3472% | 0.2846% | 1,935.95 | 3,002.94 | 941.21 | 11,294.55 | 5,127.09 |
| 19 11 | 1911 | 0-1 | 460 | | 1,320,000 | 0.1413% | 0.1627% | 1,106.34 | 1,715.89 | 537.87 | 6,454.48 | 5,876.70 |
| 19 12 | 1912 | 0-1 | 540 | | 1,495,500 | 0.1600% | 0.1843% | 1,251.43 | 1,944.03 | 632.59 | 7,312.64 | 3,360.10 |
| 20 01 | 2001 | 0-1 | 532 | | 1,552,500 | 0.1661% | 0.1913% | 1,301.20 | 2,018.12 | 632.61 | 7,312.64 | 3,806.84 |
| 20 02 | 2002 | 0-1 | 422 | | 1,262,000 | 0.1351% | 0.1555% | 1,057.72 | 1,640.50 | 514.24 | 6,170.88 | 3,951.93 |
| 20 03 | 2003 | 0-1 | 488 | | 1,492,400 | 0.1597% | 0.1839% | 1,250.83 | 1,940.60 | 608.12 | 7,297.44 | 3,212.46 |
| 20 04 | 2004 | 0-1 | 425 | | 1,287,500 | 0.1379% | 0.1588% | 1,079.10 | 1,673.64 | 524.63 | 6,295.57 | 3,708.95 |
| 20 05 | 2005 | 1-1 | 682 | | 2,025,300 | 0.2168% | 0.2496% | 1,697.55 | 2,632.95 | 825.31 | 9,903.72 | 3,277.37 |
| 20 06 | 2006 | 0-1 | 435 | | 1,308,400 | 0.1400% | 0.1612% | 1,096.28 | 1,700.29 | 532.98 | 6,395.81 | 5,359.72 |
| 20 07 | 2007 | 1-1.5 | 791 | | 2,336,000 | 0.2500% | 0.2878% | 1,957.80 | 3,036.61 | 951.87 | 11,422.48 | 3,329.55 |
| 20 08 | 2008 | 0-1 | 474 | | 1,406,000 | 0.1505% | 0.1733% | 1,184.81 | 1,827.68 | 572.92 | 6,875.00 | 5,940.36 |
| 20 09 | 2009 | 1-1.5 | 741 | | 2,177,100 | 0.2330% | 0.2683% | 1,824.70 | 2,830.05 | 887.12 | 10,645.59 | 3,579.01 |
| 20 10 | 2010 | 1-1.5 | 781 | | 2,319,063 | 0.2482% | 0.2859% | 1,943.68 | 3,014.59 | 944.97 | 11,339.66 | 5,541.87 |
| 20 11 | 2011 | 0-1 | 460 | | 1,291,500 | 0.1382% | 0.1591% | 1,082.45 | 1,678.64 | 526.26 | 6,315.13 | 5,902.34 |
| 20 12 | 2012 | 0-1 | 540 | | 1,504,500 | 0.1610% | 0.1854% | 1,260.97 | 1,955.72 | 613.05 | 7,356.63 | 3,283.55 |
| 21 01 | 2101 | 0-1 | 532 | | 1,562,000 | 0.1672% | 0.1924% | 1,309.16 | 2,030.47 | 636.48 | 7,637.81 | 3,829.75 |
| 21 02 | 2102 | 0-1 | 422 | | 1,271,000 | 0.1360% | 0.1566% | 1,065.27 | 1,652.19 | 517.91 | 6,214.89 | 2,476.12 |
| 21 03 | 2103 | 1-1 | 995 | | 2,660,900 | 0.2848% | 0.3275% | 2,230.19 | 3,458.95 | 1,084.26 | 13,011.16 | 3,235.57 |
| 21 04 | 2104 | 1-1 | 682 | | 2,033,650 | 0.2179% | 0.2508% | 1,706.15 | 2,646.18 | 829.49 | 9,953.84 | 6,773.40 |
| 21 06 | 2106 | 0-1 | 435 | | 1,318,000 | 0.1411% | 0.1624% | 1,104.66 | 1,713.59 | 537.00 | 6,443.70 | 5,101.01 |
| 21 07 | 2107 | 1-1.5 | 845 | | 2,567,500 | 0.2748% | 0.3164% | 2,151.91 | 3,337.54 | 1,046.08 | 12,527.93 | 5,435.66 |
| 21 08 | 2108 | 0-1 | 501 | | 1,509,500 | 0.1701% | 0.1959% | 1,332.21 | 2,066.22 | 647.60 | 7,772.27 | 4,046.12 |
| 21 09 | 2109 | 1-1.5 | 807 | | 2,520,000 | 0.2698% | 0.3106% | 2,112.92 | 3,277.07 | 1,027.25 | 12,327.03 | 4,395.03 |
| 21 10 | 2110 | 1-1.5 | 775 | | 2,340,675 | 0.3453% | 0.2832% | 1,920.00 | 2,972.95 | 933.49 | 11,201.89 | 4,417.29 |
| 21 11 | 2111 | 0-1 | 460 | | 1,373,500 | 0.1421% | 0.1636% | 1,112.62 | 1,725.28 | 540.93 | 6,491.16 | 5,831.26 |
| 21 12 | 2112 | 0-1 | 540 | | 1,539,500 | 0.1648% | 0.1898% | 1,290.31 | 2,001.22 | 627.32 | 7,527.79 | 3,329.19 |
| 22 01 | 2201 | 0-1 | 532 | | 1,572,000 | 0.1682% | 0.1937% | 1,317.54 | 2,043.47 | 640.56 | 7,686.70 | 3,852.80 |
| 22 02 | 2202 | 0-1 | 422 | | 1,282,500 | 0.1373% | 0.1580% | 1,074.91 | 1,667.14 | 522.59 | 6,271.12 | 3,264.64 |
| 22 03 | 2203 | 1-1 | 995 | | 2,674,663 | 0.2859% | 0.3292% | 2,239.23 | 3,472.91 | 1,088.65 | 13,063.79 | 6,800.80 |
| 22 05 | 2205 | 1-1 | 682 | | 2,046,413 | 0.2190% | 0.2522% | 1,715.17 | 2,660.17 | 833.87 | 10,006.47 | 5,209.23 |
| 22 06 | 2206 | 0-1 | 435 | | 1,328,500 | 0.1422% | 0.1637% | 1,113.13 | 1,726.04 | 541.14 | 6,493.68 | 3,341.74 |
| 22 07 | 2207 | 1-1.5 | 845 | | 2,579,000 | 0.2760% | 0.3178% | 2,161.54 | 3,352.49 | 1,050.84 | 12,610.69 | 5,564.92 |
| 22 08 | 2208 | 0-1 | 501 | | 1,648,000 | 0.1762% | 0.2031% | 1,381.24 | 2,142.26 | 671.53 | 8,058.33 | 4,195.03 |
| 22 09 | 2209 | 1-1.5 | 807 | | 2,532,263 | 0.2710% | 0.3120% | 2,122.92 | 3,291.77 | 1,031.65 | 12,382.16 | 6,445.99 |
| 22 10 | 2210 | 1-1.5 | 775 | | 2,301,638 | 0.2461% | 0.2839% | 1,929.08 | 2,991.94 | 937.87 | 11,254.46 | 5,858.89 |
| 22 11 | 2211 | 0-1 | 460 | | 1,337,500 | 0.1431% | 0.1648% | 1,121.08 | 1,738.48 | 545.00 | 6,540.03 | 3,404.69 |
| 22 12 | 2212 | 0-1 | 540 | | 1,549,500 | 0.1658% | 0.1909% | 1,298.28 | 2,014.22 | 631.18 | 7,576.68 | 3,404.68 |
| 23 01 | 2301 | 0-1 | 532 | | 1,583,500 | 0.1695% | 0.1951% | 1,327.18 | 2,058.42 | 645.24 | 7,742.94 | 4,070.85 |
| 23 02 | 2302 | 0-1 | 422 | | 1,292,500 | 0.1383% | 0.1593% | 1,083.57 | 1,680.14 | 526.67 | 6,320.02 | 3,241.10 |
| 23 03 | 2303 | 0-1 | 488 | | 1,524,648 | 0.1632% | 0.1879% | 1,277.89 | 1,981.67 | 621.28 | 7,455.36 | 3,900.14 |
| 23 04 | 2304 | 0-1 | 425 | | 1,318,000 | 0.1411% | 0.1624% | 1,104.66 | 1,713.59 | 537.00 | 6,443.70 | 5,237.90 |
| 23 05 | 2305 | 1-1 | 682 | | 2,057,688 | 0.2202% | 0.2536% | 1,724.62 | 2,674.37 | 838.34 | 10,061.60 | 5,255.35 |
| 23 06 | 2306 | 0-1 | 435 | | 1,339,500 | 0.1434% | 0.1651% | 1,122.98 | 1,741.36 | 545.49 | 6,549.83 | 5,310.70 |
| 23 07 | 2307 | 1-1.5 | 845 | | 2,299,900 | 0.2463% | 0.2837% | 2,989.16 | 3,367.44 | 1,055.30 | 11,324.00 | 3,453.42 |
| 23 08 | 2308 | 0-1 | 501 | | 1,436,500 | 0.1537% | 0.1770% | 1,203.98 | 1,867.32 | 585.35 | 7,024.03 | 1,656.65 |
| 23 09 | 2309 | 1-1.5 | 741 | | 2,274,475 | 0.2435% | 0.2803% | 1,906.31 | 2,956.63 | 927.01 | 11,124.04 | 5,794.79 |
| 23 10 | 2310 | 1-1.5 | 781 | | 2,331,350 | 0.2546% | 0.2897% | 1,970.74 | 3,056.56 | 958.15 | 11,497.84 | 5,985.42 |
| 23 11 | 2311 | 0-1 | 460 | | 1,348,500 | 0.1443% | 0.1662% | 1,130.23 | 1,752.94 | 549.49 | 6,593.84 | 3,452.65 |
| 23 12 | 2312 | 0-1 | 540 | | 1,561,500 | 0.1671% | 0.1924% | 1,309.16 | 2,030.47 | 636.48 | 7,637.81 | 3,829.75 |
| 24 01 | 2401 | 0-1 | 532 | | 1,595,500 | 0.1708% | 0.1966% | 1,337.24 | 2,074.07 | 650.13 | 7,801.61 | 4,061.50 |
| 24 02 | 2402 | 0-1 | 422 | | 1,305,000 | 0.1397% | 0.1608% | 1,093.94 | 1,696.56 | 531.76 | 6,381.16 | 3,321.92 |
| 24 03 | 2403 | 0-1 | 488 | | 1,534,963 | 0.1642% | 0.1893% | 1,287.53 | 1,996.85 | 625.87 | 7,510.49 | 3,942.49 |
| 24 04 | 2404 | 0-1 | 425 | | 1,370,000 | 0.1466% | 0.1688% | 1,148.24 | 1,780.99 | 558.25 | 6,699.04 | 3,487.38 |
| 24 05 | 2405 | 1-1 | 682 | | 2,084,475 | 0.2550% | 0.2569% | 2,090.38 | 2,693.50 | 844.10 | 10,119.24 | 5,267.00 |
| 24 06 | 2406 | 0-1 | 435 | | 1,361,500 | 0.1448% | 0.1664% | 1,131.90 | 1,755.34 | 550.30 | 6,603.62 | 3,437.71 |
| 24 07 | 2407 | 1-1.5 | 741 | | 2,331,500 | 0.2472% | 0.2848% | 1,937.34 | 3,004.76 | 941.89 | 11,302.66 | 5,883.47 |

**Schedule of Offering Prices and Related Information (1)**
for the Period from April 1, 2010 to March 31, 2011
Projected First Year of Condominium Operation

| FLOOR | UNIT | Number of Bedrooms / Bathrooms (2) | Approx. Unit Area (Sq. Feet) (2) | Approx. Terrace Area/Amenity Area (Sq. Feet) (2) | Offering Price (Per Unit) $ (3) | Common Interest (4) | Proportionate Share of Total Hotel Suite Common Interest and Total Commercial Unit Common Interest(4) | Projected Monthly Overhead Common Charges $ (5) | Projected Monthly Operating Common Charges $ (5) | Projected Monthly R.E. Taxes $ (6) | Projected Annual R.E. Taxes $ (6) | Projected Total Monthly Common Charges, and Real Estate Taxes $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 24 08 | 2408 | 0/1 | 474 | | 1,448,500 | 0.1556% | 0.1785% | 1,314.04 | 1,882.93 | 590.23 | 7,082.82 | 3,687.20 |
| 24 09 | 2409 | 1/1.5 | 741 | | 2,320,665 | 0.2337% | 0.2766% | 1,864.23 | 2,886.89 | 904.48 | 10,858.51 | 5,652.73 |
| 24 10 | 2410 | 1/1.5 | 781 | | 2,365,138 | 0.2529% | 0.2917% | 1,980.62 | 3,021.88 | 982.93 | 11,555.18 | 6,015.44 |
| 24 11 | 2411 | 0/1 | 468 | | 1,411,000 | 0.1510% | 0.1739% | 1,182.61 | 1,854.19 | 573.95 | 6,899.43 | 3,611.74 |
| 24 12 | 2412 | 0/1 | 540 | | 1,624,000 | 0.1738% | 0.2003% | 1,361.13 | 2,141.06 | 661.73 | 7,940.97 | 4,133.92 |
| 25 01 | 2501 | 0/1 | 532 | | 1,608,500 | 0.1721% | 0.1981% | 1,347.72 | 2,060.27 | 655.23 | 7,862.73 | 4,063.21 |
| 25 02 | 2502 | 0/1 | 422 | | 1,317,000 | 0.1409% | 0.1623% | 1,103.82 | 1,711.99 | 536.65 | 6,439.81 | 3,352.46 |
| 25 03 | 2503 | 0/1 | 488 | | 1,548,725 | 0.1657% | 0.1908% | 1,294.08 | 2,003.78 | 631.04 | 7,573.34 | 3,942.45 |
| 25 04 | 2504 | 0/1 | 425 | | 1,342,500 | 0.1437% | 0.1654% | 1,125.19 | 1,743.24 | 547.04 | 6,564.50 | 3,417.57 |
| 25 05 | 2505 | 1/1 | 682 | | 2,087,775 | 0.2228% | 0.2565% | 1,744.80 | 2,706.13 | 848.28 | 10,179.38 | 5,299.22 |
| 25 06 | 2506 | 0/1 | 435 | | 1,365,000 | 0.1460% | 0.1680% | 1,142.38 | 1,771.79 | 555.40 | 6,664.73 | 3,469.56 |
| 25 07 | 2507 | 1/1.5 | 791 | | 2,324,000 | 0.2487% | 0.2864% | 1,947.82 | 3,021.91 | 940.98 | 11,363.80 | 5,915.81 |
| 25 08 | 2508 | 0/1 | 474 | | 1,461,000 | 0.1564% | 0.1802% | 1,224.51 | 1,899.18 | 595.33 | 7,143.94 | 3,719.02 |
| 25 09 | 2509 | 1/1.5 | 741 | | 2,233,475 | 0.2390% | 0.2752% | 1,871.95 | 2,903.33 | 919.10 | 10,921.16 | 5,685.38 |
| 25 10 | 2510 | 1/1.5 | 781 | | 2,375,438 | 0.2542% | 0.2927% | 1,940.93 | 3,087.97 | 967.94 | 11,615.32 | 6,046.75 |
| 25 11 | 2511 | 0/1 | 468 | | 1,423,000 | 0.1523% | 0.1753% | 1,192.66 | 1,849.78 | 579.84 | 6,958.13 | 3,622.29 |
| 25 12 | 2512 | 0/1 | 540 | | 1,636,500 | 0.1751% | 0.2017% | 1,371.60 | 2,127.31 | 666.84 | 8,002.09 | 4,165.76 |
| 26 01 | 2601 | 0/1 | 532 | | 1,620,000 | 0.1734% | 0.1986% | 1,359.28 | 2,105.87 | 660.12 | 7,921.41 | 4,125.26 |
| 26 02 | 2602 | 0/1 | 422 | | 1,379,500 | 0.1423% | 0.1638% | 1,114.30 | 1,728.24 | 541.74 | 6,501.04 | 3,384.28 |
| 26 03 | 2603 | 0/1 | 488 | | 1,462,100 | 0.1672% | 0.1925% | 1,309.25 | 2,030.60 | 636.52 | 7,638.29 | 3,976.37 |
| 26 04 | 2604 | 0/1 | 425 | | 1,354,000 | 0.1449% | 0.1670% | 1,135.67 | 1,761.39 | 552.14 | 6,625.63 | 3,449.19 |
| 26 05 | 2605 | 1/1 | 682 | | 2,107,625 | 0.2309% | 0.2659% | 1,808.36 | 2,804.73 | 870.10 | 10,550.27 | 5,492.50 |
| 26 06 | 2606 | 0/1 | 435 | | 1,376,000 | 0.1473% | 0.1696% | 1,153.27 | 1,788.66 | 560.60 | 6,728.31 | 3,502.65 |
| 26 07 | 2607 | 1/1.5 | 791 | | 2,336,500 | 0.2500% | 0.2878% | 1,957.88 | 3,036.61 | 951.87 | 11,422.48 | 5,946.36 |
| 26 08 | 2608 | 0/1 | 474 | | 1,473,000 | 0.1576% | 0.1815% | 1,234.57 | 1,914.78 | 600.22 | 7,202.62 | 3,749.57 |
| 26 09 | 2609 | 1/1.5 | 741 | | 2,246,800 | 0.2405% | 0.2769% | 1,883.12 | 2,920.65 | 935.53 | 10,986.31 | 5,719.56 |
| 26 10 | 2610 | 1/1.5 | 781 | | 2,389,275 | 0.2557% | 0.2944% | 2,002.55 | 3,105.86 | 973.58 | 11,682.98 | 6,081.97 |
| 26 11 | 2611 | 0/1 | 468 | | 1,436,500 | 0.1537% | 0.1770% | 1,203.98 | 1,867.33 | 585.35 | 7,024.14 | 3,656.65 |
| 26 12 | 2612 | 0/1 | 540 | | 1,648,500 | 0.1764% | 0.2031% | 1,381.66 | 2,142.91 | 671.73 | 8,060.77 | 4,196.31 |
| 27 01 | 2701 | 0/1 | 532 | | 1,633,500 | 0.1748% | 0.2013% | 1,369.99 | 2,123.41 | 665.62 | 7,987.42 | 4,158.12 |
| 27 02 | 2702 | 0/1 | 422 | | 1,391,500 | 0.1438% | 0.1655% | 1,126.01 | 1,745.45 | 547.15 | 6,569.39 | 3,419.42 |
| 27 03 | 2703 | 0/1 | 488 | | 1,474,938 | 0.1687% | 0.1943% | 1,320.85 | 2,048.59 | 642.18 | 7,705.46 | 4,011.60 |
| 27 04 | 2704 | 0/1 | 425 | | 1,368,000 | 0.1464% | 0.1686% | 1,146.57 | 1,778.59 | 553.21 | 6,599.16 | 3,482.26 |
| 27 05 | 2705 | 1/1 | 682 | | 2,108,938 | 0.2257% | 0.2599% | 1,767.57 | 2,741.44 | 859.34 | 10,312.20 | 4,368.56 |
| 27 06 | 2706 | 0/1 | 435 | | 1,389,500 | 0.1487% | 0.1712% | 1,164.50 | 1,806.22 | 566.19 | 6,394.42 | 3,537.01 |
| 27 07 | 2707 | 1/1.5 | 791 | | 2,349,500 | 0.2514% | 0.2895% | 1,969.10 | 3,064.13 | 957.53 | 11,488.49 | 5,980.75 |
| 27 08 | 2708 | 0/1 | 474 | | 1,487,500 | 0.1592% | 0.1833% | 1,246.72 | 1,931.63 | 606.13 | 7,273.52 | 3,786.48 |
| 27 09 | 2709 | 1/1.5 | 741 | | 2,261,638 | 0.2419% | 0.2786% | 1,894.32 | 2,938.64 | 923.16 | 11,053.96 | 5,754.53 |
| 27 10 | 2710 | 1/1.5 | 781 | | 2,402,600 | 0.2572% | 0.2961% | 2,013.70 | 3,123.18 | 979.01 | 11,748.31 | 6,115.80 |
| 27 11 | 2711 | 0/1 | 468 | | 1,449,500 | 0.1551% | 0.1786% | 1,214.87 | 1,884.25 | 590.64 | 7,087.71 | 3,689.75 |
| 27 12 | 2712 | 0/1 | 540 | | 1,662,000 | 0.1779% | 0.2048% | 1,392.98 | 2,160.46 | 677.23 | 8,126.78 | 4,230.67 |
| 28 01 | 2801 | 0/1 | 532 | | 1,647,500 | 0.1763% | 0.2030% | 1,380.82 | 2,141.61 | 671.32 | 8,055.88 | 4,195.76 |
| 28 02 | 2802 | 0/1 | 422 | | 1,357,000 | 0.1452% | 0.1672% | 1,137.35 | 1,763.99 | 552.95 | 6,635.40 | 3,454.29 |
| 28 03 | 2803 | 0/1 | 488 | | 1,490,288 | 0.1702% | 0.1960% | 1,332.87 | 2,067.24 | 848.01 | 7,776.13 | 4,048.13 |
| 28 04 | 2804 | 0/1 | 425 | | 1,382,500 | 0.1480% | 0.1704% | 1,158.72 | 1,797.14 | 563.32 | 6,260.09 | 3,519.19 |
| 28 05 | 2805 | 1/1 | 682 | | 2,123,800 | 0.2273% | 0.2617% | 1,780.03 | 2,760.75 | 885.41 | 10,624.91 | 5,489.20 |
| 28 06 | 2806 | 0/1 | 435 | | 1,404,000 | 0.1503% | 0.1730% | 1,176.74 | 1,825.08 | 572.10 | 6,865.22 | 3,575.95 |
| 28 07 | 2807 | 1/1.5 | 791 | | 2,363,500 | 0.2529% | 0.2912% | 1,981.31 | 3,072.35 | 963.00 | 11,556.95 | 6,016.36 |
| 28 08 | 2808 | 0/1 | 474 | | 1,500,500 | 0.1606% | 0.1849% | 1,257.62 | 1,950.53 | 611.42 | 7,337.09 | 3,819.57 |
| 28 09 | 2809 | 1/1.5 | 741 | | 2,275,500 | 0.2435% | 0.2804% | 1,907.17 | 2,957.96 | 927.22 | 11,126.65 | 5,792.35 |
| 28 10 | 2810 | 1/1.5 | 781 | | 2,488,788 | 0.2663% | 0.3067% | 2,085.86 | 3,235.10 | 1,014.10 | 12,189.16 | 6,335.86 |
| 28 11 | 2811 | 0/1 | 468 | | 1,464,000 | 0.1567% | 0.1804% | 1,227.03 | 1,903.08 | 596.53 | 7,158.61 | 3,726.66 |
| 28 12 | 2812 | 0/1 | 540 | | 1,676,000 | 0.1794% | 0.2065% | 1,404.71 | 2,178.66 | 682.93 | 8,195.24 | 4,266.31 |
| 29 01 | 2901 | 0/1 | 532 | | 1,663,000 | 0.1780% | 0.2049% | 1,393.81 | 2,161.76 | 677.64 | 8,131.67 | 4,233.22 |
| 29 02 | 2902 | 0/1 | 422 | | 1,372,000 | 0.1468% | 0.1691% | 1,149.92 | 1,783.49 | 559.06 | 6,708.73 | 3,492.47 |
| 29 03 | 2903 | 0/1 | 488 | | 1,605,150 | 0.1718% | 0.1978% | 1,345.33 | 2,086.56 | 654.07 | 7,848.84 | 4,085.96 |
| 29 04 | 2904 | 0/1 | 425 | | 1,397,500 | 0.1496% | 0.1722% | 1,171.29 | 1,816.63 | 569.45 | 6,833.44 | 3,557.38 |
| 29 05 | 2905 | 1/1 | 682 | | 2,134,150 | 0.2288% | 0.2635% | 1,792.05 | 2,779.42 | 871.25 | 10,455.04 | 5,442.72 |
| 29 06 | 2906 | 0/1 | 435 | | 1,409,000 | 0.1509% | 0.1737% | 1,223.67 | 1,897.88 | 594.92 | 7,139.05 | 3,716.47 |
| 29 07 | 2907 | 1/1.5 | 791 | | 2,370,600 | 0.2536% | 0.2921% | 1,993.97 | 3,092.96 | 969.46 | 11,632.81 | 6,055.82 |
| 29 08 | 2908 | 0/1 | 474 | | 1,516,500 | 0.1622% | 0.1868% | 1,270.01 | 1,970.67 | 617.74 | 7,412.88 | 3,859.02 |
| 29 09 | 2909 | 1/1.5 | 741 | | 2,299,850 | 0.2451% | 0.2822% | 1,919.26 | 2,976.61 | 933.07 | 11,196.92 | 5,828.89 |
| 29 10 | 2910 | 1/1.5 | 781 | | 2,423,725 | 0.2693% | 0.3097% | 2,038.61 | 3,161.82 | 991.12 | 11,893.49 | 6,191.56 |
| 29 11 | 2911 | 0/1 | 468 | | 1,522,000 | 0.1630% | 0.1879% | 1,375.64 | 1,978.17 | 620.78 | 7,442.22 | 3,874.30 |
| 29 12 | 2912 | 0/1 | 540 | | 1,689,500 | 0.1810% | 0.2084% | 1,417.70 | 2,198.81 | 689.25 | 8,271.03 | 4,305.76 |
| 30 01 | 3001 | 0/1 | 532 | | 1,678,000 | 0.1796% | 0.2068% | 1,406.79 | 2,181.26 | 683.29 | 8,205.02 | 4,271.49 |
| 30 02 | 3002 | 0/1 | 422 | | 1,387,500 | 0.1485% | 0.1710% | 1,162.91 | 1,803.63 | 565.38 | 6,784.54 | 3,531.92 |
| 30 03 | 3003 | 0/1 | 488 | | 1,620,525 | 0.1734% | 0.1997% | 1,358.22 | 2,106.55 | 660.33 | 7,923.98 | 4,125.09 |
| 30 04 | 3004 | 0/1 | 425 | | 1,412,500 | 0.1512% | 0.1741% | 1,184.28 | 1,835.78 | 575.77 | 6,909.23 | 3,596.83 |
| 30 05 | 3005 | 1/1 | 682 | | 2,154,038 | 0.2305% | 0.2654% | 1,805.57 | 2,800.01 | 877.73 | 10,532.73 | 5,483.17 |
| 30 06 | 3006 | 0/1 | 435 | | 1,432,500 | 0.1534% | 0.1766% | 1,201.46 | 1,863.43 | 582.12 | 7,049.47 | 3,649.02 |
| 30 07 | 3007 | 1/1.5 | 791 | | 2,394,000 | 0.2563% | 0.2951% | 2,006.37 | 3,118.88 | 978.41 | 11,708.69 | 6,094.00 |
| 30 08 | 3008 | 0/1 | 474 | | 1,531,500 | 0.1639% | 0.1887% | 1,283.60 | 1,990.82 | 624.06 | 7,488.67 | 3,898.48 |
| 30 09 | 3009 | 1/1.5 | 741 | | 2,385,738 | 0.2468% | 0.2841% | 1,932.51 | 2,997.27 | 939.42 | 11,273.51 | 5,866.32 |
| 30 10 | 3010 | 1/1.5 | 781 | | 2,447,700 | 0.2620% | 0.3016% | 2,051.95 | 3,181.81 | 997.50 | 11,970.67 | 6,230.60 |
| 30 11 | 3011 | 0/1 | 460 | | 1,493,500 | 0.1498% | 0.1840% | 1,251.75 | 1,941.43 | 608.57 | 7,502.66 | 3,801.75 |
| 30 12 | 3012 | 0/1 | 540 | | 1,706,500 | 0.1826% | 0.2103% | 1,431.09 | 2,218.31 | 695.36 | 8,344.30 | 4,345.95 |
| 31 01 | 3101 | 0/1 | 532 | | 1,693,500 | 0.1812% | 0.2087% | 1,419.71 | 2,218.31 | 695.39 | 8,207.83 | 4,310.85 |
| 31 02 | 3102 | 0/1 | 422 | | 1,402,500 | 0.1501% | 0.1728% | 1,174.48 | 1,823.13 | 571.69 | 6,860.33 | 3,531.11 |
| 31 03 | 3103 | 0/1 | 488 | | 1,672,438 | 0.1793% | 0.2013% | 1,372.50 | 2,124.45 | 662.22 | 8,006.88 | 4,148.17 |
| 31 04 | 3104 | 0/1 | 425 | | 1,428,038 | 0.1528% | 0.1760% | 1,196.83 | 1,850.28 | 581.88 | 6,980.23 | 3,635.92 |
| 31 05 | 3105 | 1/1 | 682 | | 2,170,450 | 0.2323% | 0.2673% | 1,819.53 | 2,422.08 | 884.62 | 10,615.43 | 5,526.23 |
| 31 06 | 3106 | 0/1 | 435 | | 1,439,500 | 0.1541% | 0.1774% | 1,207.31 | 1,882.49 | 588.44 | 7,067.21 | 3,680.75 |
| 31 07 | 3107 | 1/1.5 | 791 | | 2,409,500 | 0.2570% | 0.2969% | 2,019.49 | 3,133.37 | 981.92 | 11,784.57 | 6,134.78 |
| 31 08 | 3108 | 0/1 | 474 | | 1,492,000 | 0.1702% | 0.1902% | 1,434.51 | 2,009.47 | 648.71 | 7,784.50 | 4,052.46 |
| 31 09 | 3109 | 1/1.5 | 741 | | 2,322,138 | 0.2361% | 0.2861% | 1,946.26 | 3,018.59 | 946.22 | 11,354.70 | 5,911.07 |
| 31 10 | 3110 | 1/1.5 | 781 | | 2,461,613 | 0.2638% | 0.3037% | 2,065.67 | 3,203.79 | 1,004.28 | 12,051.37 | 6,273.75 |
| 31 11 | 3111 | 0/1 | 460 | | 1,510,000 | 0.1616% | 0.1861% | 1,265.78 | 1,962.07 | 615.29 | 7,383.54 | 3,843.75 |

Schedule of Offering Prices and Related Information (1)
for the Period from April 1, 2010 to March 31, 2011
Projected First Year of Condominium Operation

| FLOOR | UNIT | Number of Bedrooms/ Bathrooms | Approx. Unit Area (Sq. Feet) (2) | Approx. Terrace Area/Amenity Area (Sq. Feet) (2 | Offering Price (Per Unit) $ (3) | Common Interest (4) | Proportionate Share of Total Hotel Suite Common Interest and Total Commercial Unit Common Interest (4) | Projected Monthly Overhead Common Charges $ (5) | Projected Monthly Operating Common Charges $ (5) | Projected Monthly R.E. Taxes $ (6) | Projected Annual R.E. Taxes $ (6) | Projected Total Monthly Common Charges and Real Estate Taxes $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 31 12 | 3112 | 0/1 | 540 | | 1,722,000 | 0.1613% | 0.2152% | 1,441.26 | 2,234.46 | 201.68 | 8,420.17 | 4,383.46 |
| 32 01 | 3201 | 0/1 | 532 | | 1,710,000 | 0.1604% | 0.2107% | 1,435.21 | 2,222.90 | 696.79 | 8,361.49 | 4,354.89 |
| 32 02 | 3202 | 0/1 | 422 | | 1,420,000 | 0.1320% | 0.1750% | 1,190.15 | 1,845.88 | 578.62 | 6,943.46 | 3,614.65 |
| 32 03 | 3203 | 0/1 | 488 | | 1,654,350 | 0.1770% | 0.2050% | 1,386.57 | 2,149.52 | 674.11 | 8,089.38 | 4,211.26 |
| 32 04 | 3204 | 0/1 | 425 | | 1,444,500 | 0.1456% | 0.1803% | 1,210.66 | 1,877.75 | 588.60 | 7,063.26 | 3,677.02 |
| 32 05 | 3205 | 1/1 | 682 | | 2,187,350 | 0.2341% | 0.2695% | 1,831.29 | 2,842.32 | 891.30 | 10,695.62 | 5,567.96 |
| 32 06 | 3206 | 0/1 | 435 | | 1,466,000 | 0.1496% | 0.1806% | 1,228.70 | 1,905.68 | 597.57 | 7,168.50 | 3,733.76 |
| 32 07 | 3207 | 1/1.5 | 791 | | 2,426,000 | 0.2586% | 0.2989% | 2,033.34 | 3,153.60 | 988.55 | 11,862.56 | 6,175.46 |
| 32 08 | 3208 | 0/1 | 474 | | 1,584,000 | 0.1674% | 0.1984% | 1,310.84 | 2,033.07 | 637.50 | 7,647.59 | 3,981.21 |
| 32 09 | 3209 | 1/1.5 | 741 | | 2,339,050 | 0.2603% | 0.2882% | 1,960.43 | 3,040.97 | 953.12 | 11,437.59 | 5,954.12 |
| 32 10 | 3210 | 1/1.5 | 781 | | 2,481,015 | 0.2654% | 0.3052% | 2,079.42 | 3,225.11 | 1,010.96 | 12,134.66 | 6,315.49 |
| 32 11 | 3211 | 0/1 | 460 | | 1,526,000 | 0.1633% | 0.1803% | 1,278.99 | 1,983.67 | 621.81 | 7,461.72 | 3,884.48 |
| 32 12 | 3212 | 0/1 | 540 | | 1,718,500 | 0.1613% | 0.2152% | 1,457.09 | 2,234.93 | 708.40 | 8,500.85 | 4,425.40 |
| 33 01 | 3301 | 0/1 | 532 | | 1,727,000 | 0.1638% | 0.2128% | 1,447.46 | 2,244.96 | 703.72 | 8,444.62 | 4,396.13 |
| 33 02 | 3302 | 0/1 | 422 | | 1,436,500 | 0.1337% | 0.1770% | 1,203.98 | 1,867.53 | 585.35 | 7,024.14 | 3,656.65 |
| 33 03 | 3303 | 2/2.5 | 2,022 | | 6,510,326 | 0.6977% | 0.8033% | 5,464.06 | 8,474.98 | 2,656.50 | 31,877.94 | 16,595.14 |
| 33 04 | 3304 | 0/1 | 791 | | 2,443,000 | 0.2604% | 0.3010% | 2,047.56 | 3,175.76 | 995.47 | 11,945.60 | 6,218.73 |
| 33 08 | 3308 | 0/1 | 474 | | 1,580,000 | 0.1641% | 0.1967% | 1,324.25 | 2,053.87 | 643.82 | 7,725.82 | 4,021.94 |
| 33 09 | 3309 | 1/1.5 | 741 | | 2,356,988 | 0.2522% | 0.2394% | 1,978.47 | 3,063.89 | 960.43 | 11,525.11 | 5,999.78 |
| 33 10 | 3310 | 1/1.5 | 775 | | 2,460,513 | 0.2653% | 0.3032% | 2,062.24 | 3,198.06 | 1,002.61 | 12,031.32 | 6,263.31 |
| 33 11 | 3311 | 0/1 | 460 | | 1,543,500 | 0.1652% | 0.1925% | 1,291.66 | 2,000.42 | 828.95 | 7,547.35 | 3,929.00 |
| 33 12 | 3312 | 0/1 | 540 | | 1,785,500 | 0.1879% | 0.2163% | 1,471.34 | 2,282.00 | 715.33 | 8,583.97 | 4,468.68 |
| 34 01 | 3401 | 0/1 | 532 | | 1,745,500 | 0.1868% | 0.2151% | 1,462.46 | 2,269.00 | 711.26 | 8,535.08 | 4,443.22 |
| 34 02 | 3402 | 0/1 | 422 | | 1,455,000 | 0.1357% | 0.1793% | 1,219.48 | 1,891.38 | 592.88 | 7,114.60 | 3,703.75 |
| 34 03 | 3403 | 1/1 | 905 | | 2,847,963 | 0.3048% | 0.3500% | 2,386.97 | 3,702.12 | 1,161.26 | 13,935.86 | 7,249.92 |
| 34 05 | 3405 | 1/1 | 682 | | 2,223,225 | 0.2370% | 0.2694% | 1,863.36 | 2,890.01 | 905.92 | 10,871.01 | 5,659.29 |
| 34 07 | 3407 | 1/1.5 | 791 | | 2,481,500 | 0.2606% | 0.3010% | 2,080.40 | 3,222.95 | 1,011.13 | 12,133.58 | 6,314.48 |
| 34 08 | 3408 | 0/1 | 474 | | 1,584,000 | 0.2556% | 0.2926% | 2,076.15 | 3,227.79 | 1,088.35 | 13,060.24 | 6,392.64 |
| 34 12 | 3412 | 0/1 | 540 | | 1,774,000 | 0.1890% | 0.2330% | 1,502.35 | 2,330.10 | 656.08 | 7,652.92 | 3,973.17 |
| 35 01 | 3501 | 0/1 | 532 | | 1,764,000 | 0.1883% | 0.2174% | 1,478.47 | 2,293.95 | 718.79 | 8,625.54 | 4,490.31 |
| 35 02 | 3502 | 0/1 | 422 | | 1,473,600 | 0.1376% | 0.1815% | 1,234.97 | 1,914.78 | 600.32 | 7,302.62 | 3,749.55 |
| 35 03 | 3503 | 0/1 | 488 | | 1,708,675 | 0.1824% | 0.2108% | 1,432.10 | 2,221.14 | 686.35 | 8,354.01 | 4,349.26 |
| 35 04 | 3504 | 1/1 | 435 | | 1,493,500 | 0.1662% | 0.1846% | 1,255.54 | 1,947.93 | 610.61 | 7,327.31 | 3,814.36 |
| 35 05 | 3505 | 1/1 | 682 | | 2,241,675 | 0.2390% | 0.2762% | 1,878.82 | 2,913.99 | 913.44 | 10,961.25 | 5,706.25 |
| 35 07 | 3507 | 1/1.5 | 791 | | 2,480,000 | 0.2654% | 0.3172% | 2,273.12 | 1,974.42 | 618.96 | 7,427.54 | 3,866.50 |
| 35 08 | 3508 | 0/1 | 474 | | 1,617,000 | 0.1733% | 0.1993% | 1,345.26 | 2,101.97 | 658.46 | 7,909.74 | 4,103.69 |
| 35 09 | 3509 | 1/1.5 | 741 | | 2,393,575 | 0.2561% | 0.2409% | 2,008.07 | 3,111.19 | 974.25 | 11,703.03 | 6,093.47 |
| 35 11 | 3511 | 0/1 | 460 | | 2,555.150 | 0.2713% | 0.1965% | 2,134.95 | 3,295.33 | 1,033.10 | 12,397.20 | 6,453.79 |
| 35 12 | 3512 | 0/1 | 540 | | 1,793,500 | 0.1916% | 0.2300% | 1,502.55 | 2,330.10 | 643.41 | 7,720.93 | 4,019.99 |
| 36 01 | 3601 | 0/1 | 532 | | 1,782,000 | 0.1907% | 0.2196% | 1,493.55 | 2,316.45 | 726.17 | 8,714.14 | 4,538.48 |
| 36 02 | 3602 | 0/1 | 422 | | 1,491,500 | 0.1598% | 0.1834% | 1,250.08 | 1,938.87 | 607.76 | 7,293.09 | 3,796.46 |
| 36 03 | 3603 | 0/1 | 488 | | 1,728,663 | 0.1850% | 0.2130% | 1,448.85 | 2,247.12 | 703.40 | 8,452.75 | 4,388.15 |
| 36 04 | 3604 | 1/1 | 732 | | 1,517,000 | 0.1621% | 0.1800% | 1,271.45 | 1,971.97 | 618.35 | 7,417.77 | 3,861.57 |
| 36 05 | 3605 | 1/1 | 732 | | 2,539,950 | 0.2719% | 0.3330% | 2,128.82 | 3,311.72 | 1,034.98 | 12,419.75 | 6,465.52 |
| 36 06 | 3606 | 0/1 | 453 | | 1,684,500 | 0.1803% | 0.2076% | 1,411.83 | 2,189.71 | 686.40 | 8,236.80 | 4,287.94 |
| 36 08 | 3608 | 0/1 | 474 | | 2,498,000 | 0.2673% | 0.3076% | 2,090.66 | 3,247.10 | 1,017.89 | 12,214.62 | 6,358.77 |
| 36 09 | 3609 | 1/1.5 | 741 | | 2,413,363 | 0.2583% | 0.2974% | 2,022.72 | 3,137.17 | 866.43 | 7,997.30 | 4,163.21 |
| 36 11 | 3611 | 0/1 | 460 | | 2,555.325 | 0.2733% | 0.3349% | 2,141.70 | 3,331.71 | 1,041.24 | 12,494.93 | 6,504.86 |
| 36 12 | 3612 | 0/1 | 540 | | 1,598,500 | 0.1731% | 0.1970% | 1,339.76 | 2,079.92 | 651.76 | 7,816.28 | 4,060.95 |
| 37 01 | 3701 | 0/1 | 532 | | 1,801,500 | 0.1929% | 0.2220% | 1,509.40 | 2,341.89 | 734.08 | 8,852.91 | 4,608.66 |
| 37 02 | 3702 | 0/1 | 422 | | 1,512,000 | 0.1618% | 0.1863% | 1,267.26 | 1,965.42 | 616.11 | 7,393.32 | 3,848.84 |
| 37 03 | 3703 | 0/1 | 488 | | 1,748,138 | 0.1871% | 0.2154% | 1,465.17 | 2,272.43 | 712.33 | 8,547.98 | 4,449.94 |
| 37 04 | 3704 | 0/1 | 425 | | 1,530,500 | 0.1644% | 0.1803% | 1,287.79 | 1,997.32 | 626.09 | 7,513.12 | 3,911.21 |
| 37 05 | 3705 | 1/1 | 732 | | 2,560,450 | 0.2740% | 0.3355% | 2,146.00 | 3,328.37 | 1,043.33 | 12,519.99 | 6,517.70 |
| 37 07 | 3707 | 1/1.5 | 791 | | 1,705,500 | 0.1825% | 0.2102% | 1,429.44 | 2,217.09 | 694.46 | 8,334.24 | 4,341.00 |
| 37 08 | 3708 | 0/1 | 474 | | 2,517,500 | 0.2694% | 0.3102% | 2,110.00 | 3,272.42 | 1,025.93 | 12,309.97 | 6,408.37 |
| 37 09 | 3709 | 1/1.5 | 741 | | 1,655,500 | 0.1772% | 0.2040% | 1,387.93 | 2,152.01 | 674.58 | 8,094.90 | 4,214.12 |
| 37 10 | 3710 | 1/1.5 | 781 | | 2,432,550 | 0.2604% | 0.2994% | 2,039.47 | 3,163.15 | 991.54 | 11,898.50 | 6,194.16 |
| 37 11 | 3711 | 0/1 | 460 | | 2,575,313 | 0.2755% | 0.3173% | 2,158.45 | 3,347.99 | 1,049.59 | 12,592.66 | 6,555.54 |
| 37 12 | 3712 | 0/1 | 540 | | 1,818,000 | 0.1733% | 0.1993% | 1,356.76 | 2,103.22 | 659.70 | 7,916.53 | 4,119.67 |
| 38 01 | 3801 | 0/1 | 532 | | 1,830,000 | 0.1958% | 0.2255% | 1,533.78 | 2,378.85 | 745.68 | 8,948.26 | 4,658.32 |
| 38 02 | 3802 | 0/1 | 422 | | 1,822,000 | 0.1950% | 0.2245% | 1,527.08 | 2,368.44 | 742.42 | 8,909.14 | 4,637.95 |
| 38 03 | 3803 | 0/1 | 488 | | 1,531,500 | 0.1639% | 0.1897% | 1,283.60 | 1,990.82 | 624.06 | 7,488.67 | 3,898.48 |
| 38 04 | 3804 | 0/1 | 425 | | 1,769,150 | 0.1893% | 0.2182% | 1,482.78 | 2,299.84 | 720.80 | 8,650.72 | 4,503.42 |
| 38 05 | 3805 | 1/1 | 732 | | 1,557,000 | 0.1666% | 0.1919% | 1,304.97 | 2,023.97 | 634.45 | 7,613.56 | 3,963.39 |
| 38 06 | 3806 | 0/1 | 453 | | 2,582,488 | 0.2764% | 0.3182% | 2,164.47 | 3,357.02 | 1,052.34 | 12,627.75 | 6,573.40 |
| 38 07 | 3807 | 1/1.5 | 791 | | 1,726,500 | 0.1847% | 0.2127% | 1,446.62 | 2,243.66 | 703.31 | 8,439.73 | 4,393.48 |
| 38 08 | 3808 | 0/1 | 474 | | 2,538,000 | 0.2716% | 0.3128% | 2,127.18 | 3,299.10 | 1,034.10 | 12,410.21 | 6,460.55 |
| 38 09 | 3809 | 1/1.5 | 741 | | 1,679,000 | 0.1797% | 0.2069% | 1,403.67 | 2,177.35 | 682.53 | 8,190.35 | 4,263.76 |
| 38 10 | 3810 | 1/1.5 | 781 | | 2,496,325 | 0.2675% | 0.3076% | 2,056.64 | 3,186.80 | 1,057.98 | 12,693.41 | 6,346.30 |
| 38 11 | 3811 | 0/1 | 460 | | 1,638,500 | 0.1754% | 0.2018% | 1,373.28 | 2,129.91 | 667.66 | 8,011.87 | 4,170.85 |
| 38 12 | 3812 | 0/1 | 540 | | 1,850,500 | 0.1980% | 0.2283% | 1,552.06 | 2,405.59 | 754.04 | 9,048.50 | 4,710.90 |
| 39 01 | 3901 | 0/1 | 532 | | 1,843,500 | 0.1973% | 0.2272% | 1,545.00 | 2,396.83 | 751.19 | 9,014.29 | 4,692.68 |
| 39 02 | 3902 | 0/1 | 422 | | 1,542,500 | 0.1651% | 0.1915% | 1,301.30 | 2,018.12 | 632.60 | 7,591.15 | 3,951.98 |
| 39 03 | 3903 | 0/1 | 488 | | 1,790,163 | 0.1915% | 0.2208% | 1,500.36 | 2,327.06 | 729.40 | 8,753.47 | 4,556.92 |
| 39 06 | 3906 | 1/1 | 732 | | 1,578,000 | 0.1689% | 0.1948% | 1,322.57 | 2,051.27 | 643.00 | 7,716.04 | 4,016.85 |
| 39 06 | 3906 | 0/1 | 453 | | 2,603,500 | 0.2786% | 0.3215% | 2,183.30 | 3,386.21 | 1,061.71 | 12,740.52 | 6,632.51 |
| 39 07 | 3907 | 1/1.5 | 791 | | 1,748,500 | 0.1871% | 0.2154% | 2,145.20 | 3,327.14 | 712.48 | 8,549.75 | 4,450.86 |

Trump SoHo Hotel Condominium New York
246 Spring Street, New York, NY 10013

Schedule of Offering Prices and Related Information (1)
for the Period from April 1, 2010 to March 31, 2011
Projected First Year of Condominium Operation

| FLOOR UNIT | | Number of Bedrooms/ Bathrooms | Approx. Unit Area (Sq. Feet) (2) | Approx. Terrace Area/Amenity Area (Sq. Feet) (2) | Offering Price (Per Unit) $ (3) | Common Interest (4) | Proportionate Share of Total Hotel Suite Common Interest and Total Commercial Unit Common Interest(4) | Projected Monthly Overhead Common Charges $ (5) | Projected Monthly Operating Common Charges $ (5) | Projected Monthly R.E. Taxes $ (6) | Projected Annual R.E. Taxes $ (6) | Projected Total Monthly Common Charges, and Real Estate Taxes $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 39 08 | 3908 | 0/1 | 474 | | 1,696,500 | 0.1816% | 0.2088% | 1,423.89 | 2,205.31 | 691.29 | 8,295.48 | 4,318.49 |
| 39 09 | 3909 | 1/1.5 | 741 | | 2,474,863 | 0.2649% | 0.3050% | 2,074.26 | 3,217.12 | 1,008.46 | 12,101.49 | 6,299.84 |
| 39 10 | 3910 | 1/1.5 | 781 | | 2,617,330 | 0.2801% | 0.3225% | 2,193.68 | 3,402.32 | 1,066.51 | 12,798.16 | 6,662.51 |
| 39 11 | 3911 | 0/1 | 460 | | 1,659,000 | 0.1775% | 0.2044% | 1,390.46 | 2,156.36 | 676.01 | 8,112.11 | 4,223.03 |
| 39 12 | 3912 | 0/1 | 540 | | 1,872,000 | 0.2003% | 0.2307% | 1,568.98 | 2,433.44 | 762.80 | 9,153.63 | 4,765.23 |
| 40 01 | 4001 | 0/1 | 532 | | 1,865,000 | 0.1996% | 0.2298% | 1,563.12 | 2,424.34 | 759.95 | 9,119.40 | 4,747.41 |
| 40 02 | 4002 | 0/1 | 422 | | 1,574,000 | 0.1684% | 0.1940% | 1,319.22 | 2,046.07 | 641.37 | 7,696.46 | 4,006.66 |
| 40 03 | 4003 | 0/1 | 488 | | 1,812,200 | 0.1939% | 0.2233% | 1,518.86 | 2,355.71 | 738.44 | 8,861.22 | 4,613.01 |
| 40 04 | 4004 | 0/1 | 425 | | 1,599,500 | 0.1712% | 0.1971% | 1,340.59 | 2,079.22 | 651.76 | 7,821.17 | 4,071.57 |
| 40 05 | 4005 | 1/1 | 732 | | 2,628,613 | 0.2813% | 0.3239% | 2,203.13 | 3,416.98 | 1,071.11 | 12,853.29 | 6,691.21 |
| 40 06 | 4006 | 0/1 | 453 | | 1,771,000 | 0.1895% | 0.2182% | 1,484.33 | 2,302.15 | 721.65 | 8,659.77 | 4,508.13 |
| 40 07 | 4007 | 1/1.5 | 791 | | 2,581,000 | 0.2762% | 0.3180% | 2,163.22 | 3,355.06 | 1,051.71 | 12,620.47 | 6,570.01 |
| 40 08 | 4008 | 0/1 | 474 | | 1,718,000 | 0.1839% | 0.2117% | 1,439.91 | 2,233.26 | 700.05 | 8,400.61 | 4,373.22 |
| 40 09 | 4009 | 1/1.5 | 741 | | 2,496,900 | 0.2672% | 0.3077% | 2,092.73 | 3,245.76 | 1,017.44 | 12,209.24 | 6,355.93 |
| 40 10 | 4010 | 1/1.5 | 781 | | 2,638,863 | 0.2824% | 0.3252% | 2,211.72 | 3,430.30 | 1,075.28 | 12,903.41 | 6,717.30 |
| 40 11 | 4011 | 0/1 | 460 | | 1,680,000 | 0.1798% | 0.2070% | 1,408.06 | 2,183.86 | 684.57 | 8,214.80 | 4,276.49 |
| 40 12 | 4012 | 0/1 | 540 | | 1,893,500 | 0.2026% | 0.2333% | 1,587.00 | 2,461.39 | 771.56 | 9,258.76 | 4,819.96 |
| 41 01 | 4101 | 0/1 | 532 | | 1,886,000 | 0.2018% | 0.2324% | 1,580.72 | 2,451.64 | 768.51 | 9,222.09 | 4,800.87 |
| 41 02 | 4102 | 0/1 | 422 | | 1,595,500 | 0.1708% | 0.1966% | 1,337.24 | 2,074.02 | 650.13 | 7,801.61 | 4,061.39 |
| 41 03 | 4103 | 0/1 | 488 | | 1,835,263 | 0.1964% | 0.2261% | 1,538.19 | 2,385.69 | 747.83 | 8,974.00 | 4,671.72 |
| 41 04 | 4104 | 0/1 | 425 | | 1,621,000 | 0.1735% | 0.1997% | 1,358.61 | 2,107.17 | 660.53 | 7,926.30 | 4,126.30 |
| 41 05 | 4105 | 1/1 | 732 | | 2,651,675 | 0.2838% | 0.3267% | 2,222.46 | 3,446.96 | 1,080.50 | 12,966.06 | 6,749.92 |
| 41 06 | 4106 | 0/1 | 453 | | 1,794,500 | 0.1920% | 0.2211% | 1,504.03 | 2,332.70 | 731.22 | 8,774.68 | 4,567.95 |
| 41 07 | 4107 | 1/1.5 | 791 | | 2,602,500 | 0.2785% | 0.3207% | 2,181.24 | 3,383.03 | 1,060.47 | 12,725.60 | 6,624.74 |
| 41 08 | 4108 | 0/1 | 474 | | 1,739,500 | 0.1862% | 0.2143% | 1,457.93 | 2,261.21 | 708.81 | 8,505.74 | 4,427.95 |
| 41 09 | 4109 | 1/1.5 | 741 | | 2,519,963 | 0.2697% | 0.3105% | 2,112.06 | 3,275.74 | 1,026.83 | 12,322.02 | 6,414.64 |
| 41 10 | 4110 | 1/1.5 | 781 | | 2,661,925 | 0.2849% | 0.3280% | 2,231.05 | 3,460.28 | 1,084.68 | 13,016.18 | 6,776.01 |
| 41 11 | 4111 | 0/1 | 460 | | 1,702,500 | 0.1822% | 0.2098% | 1,426.92 | 2,213.11 | 693.73 | 8,324.82 | 4,333.76 |
| 41 12 | 4112 | 0/1 | 540 | | 1,915,000 | 0.2049% | 0.2360% | 1,605.02 | 2,489.34 | 780.32 | 9,363.89 | 4,874.69 |
| 42 01 | 4201 | 2/2.5 | 1,883 | | 9,415,000 | 0.9904% | 1.1403% | 7,756.14 | 12,029.68 | 3,770.90 | 45,250.77 | 23,556.71 |
| 42 02 | 4202 | 2/2 | 1,172 | | 5,860,000 | 0.6340% | 0.7300% | 4,965.15 | 7,700.95 | 2,413.99 | 28,967.86 | 15,080.09 |
| 42 03 | 4203 | 1/1.5 | 791 | | 3,955,000 | 0.4233% | 0.4872% | 3,314.82 | 5,140.12 | 1,611.25 | 19,335.03 | 10,066.18 |
| 42 04 | 4204 | 2/2.5 | 1,194 | | 5,970,000 | 0.6501% | 0.7485% | 5,091.66 | 7,895.94 | 2,475.11 | 29,701.33 | 15,462.71 |
| 42 05 | 4205 | 2/2.5 | 1,802 | | 9,010,000 | 0.9466% | 1.0898% | 7,413.29 | 11,496.71 | 3,603.83 | 43,245.96 | 22,513.82 |
| 43 01 | 4301 | Pent. Suite | 1,600 | | 8,000,000 | 0.8562% | 0.9858% | 6,705.06 | 10,399.33 | 3,259.84 | 39,118.08 | 20,364.24 |
| 43 02 | 4302 | Pent. Suite | 1,662 | | 8,310,000 | 0.8893% | 1.0240% | 6,964.88 | 10,802.31 | 3,386.16 | 40,633.91 | 21,153.35 |
| 43 03 | 4303 | Pent. Suite | 1,797 | | 8,985,000 | 0.9616% | 1.1072% | 7,530.62 | 11,679.75 | 3,661.21 | 43,934.50 | 22,871.58 |
| 43 04 | 4304 | Pent. Suite | 2,331 | 370 | 9,960,000 | 1.0659% | 1.2273% | 8,347.80 | 12,947.17 | 4,058.56 | 48,702.01 | 25,353.48 |
| 44 05 | 4405 | Pent. Suite | 1,797 | | 8,985,000 | 0.9616% | 1.1072% | 7,530.62 | 11,679.75 | 3,661.21 | 43,934.50 | 22,871.58 |
| 44 06 | 4406 | Pent. Suite | 10,045 | 462 | 50,225,000 | 5.3753% | 6.1895% | 42,096.79 | 65,294.65 | 20,467.67 | 245,612.03 | 127,859.11 |
| Total Hotel Suite Units | | | 246,077 | 1,202 | 811,694,544 | 86.8508% | 100.0000% | 680,177.97 | 1,054,933.93 | 330,686.17 | 3,968,234.00 | 2,065,798.05 |
| Antenna Unit | | | 50 | - | | 0.0176% | 0.1342% | - | 85.82 | 33.48 | 401.79 | 119.31 |
| Restaurant Unit | | | 8,915 | | - | 3.1456% | 23.9220% | | 15,302.40 | 5,969.97 | 71,639.60 | 21,272.37 |
| Lobby Bar Unit | | | 2,113 | | | 0.7455% | 5.6699% | | 3,626.92 | 1,414.98 | 16,979.75 | 5,041.90 |
| Pool Bar Unit | | | 995 | 1,751 | | 0.3511% | 2.6699% | | 1,707.90 | 666.31 | 7,995.67 | 2,374.20 |
| Spa Unit | | | 9,680 | 2,928 | - | 3.4155% | 25.9747% | | 16,615.51 | 6,482.25 | 77,787.02 | 23,097.76 |
| Accessory Unit | | | 12,627 | - | | 4.4553% | 33.8825% | | 21,673.97 | 8,455.72 | 101,468.67 | 30,129.69 |
| Retail Unit | | | 441 | | | 0.1556% | 1.1834% | | 756.97 | 295.32 | 3,543.81 | 1,052.28 |
| Club Unit | | | 2,446 | - | - | 0.8630% | 6.5634% | - | 4,198.51 | 1,637.97 | 19,655.69 | 5,836.48 |
| Total Commercial Units | | | 37,267 | 4,679 | | 13.1492% | 100.0000% | - | 63,967.99 | 24,956.00 | 299,472.00 | 88,923.99 |
| Total | | | 283,344 | 5,961 | 811,694,544 | 100.0000% | | 680,177.97 | 1,118,901.93 | 355,642.17 | 4,267,706.00 | 2,154,722.04 |

* Units 809 and 810 have shared use of amenity area with Unit 807

# EXHIBIT "B-7"

# SEVENTH AMENDMENT
## TO
## COMMERCIAL CONDOMINIUM OFFERING PLAN
## FOR
## TRUMP SOHO HOTEL CONDOMINIUM NEW YORK

This Seventh Amendment (this "Amendment") modifies and supplements the terms of the Commercial Condominium Offering Plan for the premises known as Trump SoHo Hotel Condominium New York, 246 Spring Street, New York, New York 10013, first accepted for filing on August 3, 2007 (as amended, the "Plan") and is incorporated into and should be read in conjunction with the Plan. The terms of this Amendment are as follows:

1. **Purpose of Amendment**

   The purpose of this Amendment is to extend the term of the Plan.

2. **Building Permit**

   On or about December 19, 2008, the New York State Supreme Court issued a ruling rejecting and dismissing the challenge brought by SoHo Alliance Inc against Sponsor (among others). The ruling reaffirms the Building's status as a hotel condominium and sustains the May 8, 2008 resolution issued by the New York City Board of Standards and Appeals to uphold the issuance of a construction permit for the Building by the New York City Department of Buildings. A copy of the Supreme Court's decision and judgment is annexed hereto as Exhibit A.

   In a written determination issued on November 24, 2008, the Department of Buildings rejected the additional objections to the building permit that had been raised by certain community groups, and reaffirmed its prior issuance of a permit and its subsequent approval of an amendment to the permit. On December 23, 2008, one of those community groups, SoHo Alliance, filed an appeal from the determination of the Department of Buildings with the Board of Standards and Appeals. Both Sponsor and the Department of Buildings will respond to that appeal. A copy of the Department of Building's determination and the SoHo Alliance appeal are available for inspection at Sponsor's office. Sponsor believes such appeal will be found to be without merit and will be rejected. The Offering Plan will be further amended to disclose the outcome of the SoHo Alliance appeal, and any similar subsequent actions.

3. **Extension of Period of Plan**

   The effective period for the term of the Plan is extended for a period of six (6) months from the date of filing of this Amendment.

4.  **Definitions**

Except as otherwise herein defined, all capitalized terms used in this Amendment which are defined in the Plan shall have the respective meaning ascribed to such terms in the Plan.

5.  **Incorporation of the Plan**

The Plan, as modified and supplemented by this Amendment, and the revised Condominium Documents described herein are incorporated herein by reference with the same force and effect as if set forth at length.

6.  **No Material Changes in the Plan**

There have been no material changes in the Plan except as set forth in this Amendment. The Plan, as hereby amended, does not knowingly omit any material fact.

Dated:   January 22, 2009

BAYROCK/SAPIR ORGANIZATION LLC

- 2 -

KL3 2600923.4

**Exhibit A**

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK: PART 4**
------------------------------------------X
SOHO ALLIANCE INC.

               Petitioner,

For a Judgment under Article 78         Index No. 108064/08
of the Civil Practice Law and Rules,

      -against-                 **Judgment/Decision**

THE CITY OF NEW YORK, THE NEW YORK CITY
DEPARTMENT OF BUILDINGS, THE NEW YORK
CITY BOARD OF STANDARDS AND APPEALS,
BAYROCK/SAPIR ORGANIZATION LLC,

               Respondents.
------------------------------------------X

**KIBBIE F. PAYNE, J.:**

    In this Article 78 proceeding, petitioner Soho Alliance Inc.

("SAI") seeks nullification of the May 8, 2008 resolution issued

by respondent the New York City Board of Standards and Appeals

("BSA"), which upheld the September 28, 2007 determination of the

New York City Department of Buildings ("DOB"). That

determination approved permits for the construction of a "Use

Group 5 transient hotel" at 246 Spring Street, New York, New York

(the "Building"). Respondents the City of New York, the New York

City Department of Buildings ("DOB"), the New York City Board of

Standards and Appeals ("BSA") (collectively, the "City") and

Bayrock/Sapir Organization LLC ("BSO") have answered, opposing

the instant petition.

    The subject of this proceeding is a transient hotel, located

UNFILED JUDGMENT
This judgment has not been entered by the County Clerk
and notice of entry cannot be served based hereon. To
obtain entry, counsel or authorized representative must
appear in person at the Judgment Clerk's Desk (Room
141B).

1

at 246 Spring Street in Manhattan (the "Site"). On May 17, 2007,
the DOB issued New Building Permit No. 104403334 to BSO for the
proposed transient hotel at the Site. The Site is located in an
M1-6 zoning district and, according to the DOB permit, the
proposed Building would be a "J-1 occupancy" transient hotel.
Prior to the issuance of the permit, on April 26, 2007, BSO-the
Building owner-executed a Restrictive Declaration, which included
the following provisions:

> the New Building shall contain upon
> completion and thereafter, (A) no less than
> 40,000 square feet of space that is used for
> one or more uses (other than guest rooms or
> suites) that are accessory to a transient
> hotel use, including food and beverage,
> conference, spa, gym, retail, back of house
> or other function facilities and (B) a Class
> J Fire Safety System and . . . shall not
> include . . . a central chute for rubbish or
> individual mailboxes for each Unit, and no
> standard guestroom shall have a stove, oven
> or fixed rangetop, a dishwasher or a
> washer/dryer
> \*     \*     \*
> No Unit may be occupied by its Unit Owner or
> by any other individual: (i) for a continuous
> period of more than 29 days in any 36 day
> period; or (ii) for a total of more than 120
> days in any calendar year

> (Petition, Ex. F at 2).

Petitioner appealed the issuance of the permit, arguing that
the DOB improperly determined that the Building constitutes a
"transient hotel" as defined by New York City Zoning Regulation §
12-10. The petitioner claims that since the Site is in an M1-6
manufacturing zone, a Use Group 5 transient hotel would be

2

permitted, whereas a Use Group 2 residential building would be prohibited. According to petitioner, despite the DOB's determination, the Building falls in the prohibited Use Group 2 category. In a resolution dated May 8, 2008, the BSA denied petitioner's appeal.

Article 78 provides that:

> The only questions that may be raised in a proceeding under [it] are . . . whether the body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction; or . . . whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed

(CPLR 7803 [2], [4]).

The court's review of an administrative decision is limited to an assessment of whether it is arbitrary and capricious—"whether there is a rational basis for the administrative determination without disturbing underlying factual determinations" (*Heintz v. Brown*, 80 NY2d 998, 1001 [1992]). Only the evidence and arguments raised before the agency at the time of the administrative determination will be considered (*HLV Assocs. v. Aponte*, 223 AD2d 362, 363 [1st Dept 1996]). A zoning "board determination may not be set aside in the absence of illegality, arbitrariness or abuse of discretion", and "will be sustained if it had a rational basis and is supported by substantial evidence" (*SoHo Alliance v. New York City Bd. of Stds. & Appeals*, 95 NY2d

3

437, 440 [2000] citing *Matter of Consolidated Edison Co. v*
*Hoffman,* 43 NY2d 598, 608 [1978]) Additionally, the Board's
determination merits "substantial judicial deference and, even
when a contrary determination would be reasonable and
sustainable, a reviewing court may not substitute its judgment
for that of the agency if the determination is supported by
substantial evidence" (*Soho Alliance v. New York City Bd. of*
*Stds. & Appeals,* 264 AD2d 59, 63 [1st Dept 2000], *affd* 95 NY2d
437).

Here, the thrust of petitioner's argument is that the BSA
acted outside its authority in denying petitioner's appeal of the
permit. Specifically, petitioner argues that the BSA varied the
terms of the Zoning Resolution in finding that the Building fell
into Use Group 5, rather than Use Group 2. The court is
unpersuaded with this argument.

NY City Zoning Resolution § 12-10 defines a transient hotel
as follows:

> A "transient hotel" is a building or part of
> a building in which:
> (a) living or sleeping accommodations are
> used primarily for transient occupancy, and
> may be rented on a daily basis;
> (b) one or more common entrances serve all
> such living or sleeping units; and
> (c) twenty-four hour desk service is
> provided, in addition to one or more of the
> following services: housekeeping, telephone,
> or bellhop service, or the furnishing or
> laundering of linens.
>
> Permitted accessory uses include restaurants,

4

> cocktail lounges, public banquet halls,
> ballrooms, or meeting rooms.

While petitioner does not dispute that the Building will meet the requirements of § 12-10 (b) and (c), it claims that somehow the provision in § 12-10 (a), *viz.*, that the hotel "*may* be rented on a daily basis[,]" mandates that the hotel *must only* be rented on a daily basis. However, the plain wording of the Zoning Resolution statute evidences no such requirement (*see Mayor of the City of New York v. Council of the City of New York*, 38 AD3d 89, 100 [1st Dept 2006], *affd* NY3d 23 [2007]; *cf. Aetna Cas. & Sur. Co. v. County of Nassau*, 221 AD2d 107, 115 [2d Dept 1996]). Thus, the BSA did not vary the terms of the Zoning Resolution as the petitioner alleged.

Although petitioner relies heavily on the case of *Raritan Dev. Corp. v. Silva*, (91 NY2d 98 [1997]), that matter is distinguishable from the dispute before this court. In *Raritan*, the "BSA's interpretation [of the Zoning Resolution] conflict[ed] with the plain statutory language" and, thus, the Court of Appeals found that the BSA's interpretation could not be sustained (*Raritan,* 91 N.Y.2d at 103). Here, the BSA's interpretation of § 12-10 (a) does not conflict with its plain language.

Furthermore, while the Zoning Resolution defines a transient hotel as one with primarily "transient occupancy," it fails to

5

provide further definition for "transient," leaving this term subject to the BSA's interpretation. Petitioner argues that because of this lack of a definition, Zoning Regulation § 11-22 applies. Pursuant to § 11-22:

> Whenever any provision of this Resolution and any other provisions of law, whether set forth in this Resolution or in any other law, ordinance or resolution of any kind, impose overlapping or contradictory regulations over the use of land, or over the use or bulk of buildings or other structures, or contain any restrictions covering any of the same subject matter, that provision which is more restrictive or imposes higher standards or requirements shall govern.

However, petitioner has failed to cite any provision of law that is more restrictive than Zoning Resolution § 12-10. Indeed, it is petitioner's contention that it is § 12-10—compared with other statutes, including the New York Rent Stabilization Code—that is *more restrictive,* requiring day-to-day occupancy in transient hotels. As discussed above, though, the plain language of § 12-10, and its use of the permissive word "may" rather than the imperative word "shall," renders any such argument devoid of merit.

Additionally, petitioner argues that issuing the permit for the Building, "undermines" the purpose of Zoning Regulation § 41-00 (b), which identifies one purpose of manufacturing districts as follows:

> To provide, as far as possible, that such space will be available for use for

6

> manufacturing and related activities, and to
> protect residences by separating them from
> manufacturing activities and by generally
> prohibiting the use of such space for new
> residential development.

In light of the fact that the BSA had a rational basis for
determining that the Building is *not* residential in nature but
is, as discussed above, a transient hotel, the petitioner's
argument is not compelling. Ample evidence exists, for the BSA's
determination. The Restrictive Declaration provides that no
owner or individual may occupy a unit in the Building for more
than 120 in any calendar year, nor for any period of more than 29
days in a 36-day period. Additionally, the Building has been
designed without kitchens in the guestrooms and without other
residential amenities such as mailboxes or common garbage chutes.
Thus, the BSA's determination that the Building would not qualify
as residential is neither arbitrary nor capricious.

In its resolution, the BSA determined that despite
petitioner's claim that a secure closet is a "hallmark of
residential use," the locked closet:

> is instead evidence of the transient nature
> of the unit, . . . [as] no need for a secure
> storage closet would exist if the unit were
> indeed used as a permanent residence, because
> a unit owner who had unrestricted access and
> control of the unit's occupancy would not
> require a secure place to store personal
> effects
>                           (Resolution, ¶¶ 80-81).

Petitioner argues that the Resolution is in error, since the

7

"owner's secure closet," as shown in the Building plans, is not among the permitted accessory uses of transient hotels, enumerated in § 12-10.

The court notes that § 12-10 provides that in transient hotels "[p]ermitted accessory uses *include* restaurants, cocktail lounges, public banquet halls, ballrooms, or meeting rooms" (emphasis supplied). Despite petitioner's seeming contention, the plain language of § 12-10 does not limit accessory uses to those enumerated therein. Indeed, the Zoning Resolution specifically provides that "[t]he word 'includes' shall not limit a term to the specified examples, but is intended to extend its meaning to all other instances or circumstances of like kind or character" (NY City Zoning Resolution § 12-01 [i]).

In relevant part, Zoning Resolution § 12-10 specifies that an "accessory use":

> (a) is a use conducted on the same zoning lot
> as the principal use to which it is related
> (whether located within the same or an
> accessory building or other structure, or as
> an accessory use of land) . . . ; and
> (b) is a use which is clearly incidental to,
> and customarily found in connection with,
> such principal use; and
> (c) is either in the same ownership as such
> principal use, or is operated and maintained
> on the same zoning lot substantially for the
> benefit or convenience of the owners,
> occupants, employees, customers, or visitors
> of the principal use.

Of this three-prong test used to determine whether a use qualifies as an accessory use, paragraph (b) is the only test at

8

issue here. In defining the term "accessory use," relevant case law "has accorded significant flexibility to the term, albeit turning on particular factual circumstances, so that the application of the term, it seems, remains ad hoc" (*Mason v. Dep't of Bldgs.*, 307 AD2d 94, 101 [1st Dept 2003]). Determining whether a proposed accessory use is clearly incidental to and customarily found in connection with the principal use will depend upon "an analysis of the nature and character of the principal use of the land in question in relation to the accessory use, taking into consideration the over-all character of the particular area in question" (*New York Botanical Garden v. Board of Stds. & Appeals*, 91 NY2d 413, 420 [1998]). The Court "may not lightly disregard [the BSA's] determination" on this issue (*Id.* at 420).

Here, the BSA determined that the presence of the locked storage closet "is instead evidence of the transient nature of the unit." No such storage closet would be needed if the unit owners had permanent access to the units. The fact that the closet exists has no effect upon the timing restrictions for the length of time owners, or any other guests, may stay in the Building. Viewing the BSA's determination favorably, as this court is compelled to do, the determination was neither arbitrary nor capricious.

Finally, respondents are correct. The BSA cannot deny a

9

permit to the Owner upon mere conjecture and speculation that, in the future, the Building might be improperly used for residential purposes. When rendering a determination upon whether a permit may be issued, "[t]he standard to be applied [thereto] is the actual use of the building in question, not its possible future use" (*Di Milia v. Bennett*, 149 AD2d 592, 593 [2d Dept 1989]). A building permit may not be withheld due to the "mere possibility of a future illegal use" (*Matter of 9th & 10th St. L.L.C. v. Board of Stds. & Appeals of the City of New York*, 10 NY3d 264, 270 [2008]).

The record clearly indicates the Owner has demonstrated that the Building will be a Use Group 5, transient hotel. Petitioner maintains theoretically that the use of the Building in the future could be residential, thus argues that the Owner failed to establish an intent to comply with zoning regulations. In support of this argument petitioner *Matter of 9th & 10th St.* as a compelling authority for denial of the permit, that case is inapposite on the facts. In the *Matter of 9th & 10th St.*, the proposed building, a dormitory, could not at the outset meet the applicable Zoning Criteria as it had no affiliation with an educational institution. Whereas, in this case, the proposed Building has met the BSA's requirements for a Use Group 5 building. The fact that it could, at some future time, be misused for another purpose is insufficient reason to deny the

permit now.  Accordingly, it is

ORDERED and ADJUDGED that the petition is denied and the proceeding is dismissed.

The foregoing constitutes the judgment and order of this court.

Dated:    December 19, 2008

ENTER:

_____
KIBBIE F. PAYNE
J.S.C.

UNFILED JUDGMENT
This judgment has not been entered by the County Clerk and notice of entry cannot be served based hereon. To obtain entry, counsel or authorized representative must appear in person at the Judgment Clerk's Desk (Room 141B).

11

# EXHIBIT "B-8"

# THIRD AMENDMENT
## TO
## COMMERCIAL CONDOMINIUM OFFERING PLAN
## FOR
## TRUMP SOHO HOTEL CONDOMINIUM NEW YORK

This Third Amendment (this "Amendment") modifies and supplements the terms of the Commercial Condominium Offering Plan for the premises known as Trump SoHo Hotel Condominium New York, 246 Spring Street, New York, New York 10013, first accepted for filing on August 3, 2007, the First Amendment thereto dated November 9, 2007 and the Second Amendment thereto dated December 10, 2007 (the "Plan") and is incorporated into and should be read in conjunction with the Plan. The terms of this Amendment are as follows:

1. **Purpose of Amendment**

The purpose of this Amendment is to update and/or revise certain information with respect to the Hotel Suite Units and the Commercial Units.

2. **Hotel Suite Units**

The Plan states that the Building will have 413 Hotel Suite Units. There will now be 400 Hotel Suite Units located in the Building, and as a result the Common Interest of each of the Hotel Suite Units as well as the size and configuration of certain Hotel Suite Units have been adjusted. All references in the Plan to the number of Hotel Suite Units are hereby deemed amended accordingly.

3. **Commercial Units**

The Plan states that the Building will have 7 Commercial Units. There will now be 8 Commercial Units located in the Building, and as a result the Common Interest of each of the Commercial Units has been adjusted. The new Commercial Unit will be known as the "Club Unit" and will be located on the 46th floor of the Building. It is anticipated that the Club Unit will be used as a lounge, which may or may not be open to the general public or to Unit Owners. Upon a determination of same, the Plan will be further amended to disclose whether or not the Club Unit will be open to the general public or to Unit Owners. All references in the Plan to the number of Commercial Units are hereby deemed amended accordingly.

4. **Revisions to Schedule A**

Schedule A in Part I of the Plan (entitled "Schedule of Offering Prices and Other Related Information") is hereby deemed amended and restated in its entirety as set forth in Exhibit A annexed hereto. The Schedule reflects, among other things, revisions to the Common Interest as well as the estimated Common Charges and Real Estate Taxes of each Unit as a result to changes set forth in this Amendment.

5.   **Revisions to Schedule B**

Schedule B in Part I of the Plan (entitled "Projected Budget for First Year of Condominium Operation Trump SoHo Hotel Condominium New York") is hereby deemed amended and restated in its entirety as set forth in Exhibit B annexed hereto.

6.   **Revised Floor Plans**

The Floor Plans set forth in Exhibit 5 of Part II of the Plan are hereby deemed amended and restated in their entirety as set forth in Exhibit C annexed hereto. The Floor Plans reflect revisions on account of the changes set forth in this Amendment and also include Floors Plans for those Hotel Suite Units which will comply with the Legal Requirements applicable to use by disabled persons. The By-Laws have been amended to insert a new Section 6.7.7 as follows:

> In addition to the other provisions of Section 6.7, the Hotel Suite Units designated as complying with the Legal Requirements applicable to use by disabled persons (the "Accessible Units") shall not be reconfigured, altered or modified in any respect without the consent of the Board. The Board shall ensure that the Building at all times contains no less than the minimum number of Accessible Units required under all applicable Legal Requirements in effect from time to time. The Board shall further be responsible for the performance, at its sole cost, of any alteration, modification or other work required with respect to the Accessible Units as mandated by changes in the Legal Requirements applicable thereto from time to time.

7.   **Revisions to Description of Property and Proposed Building**

The Description of Property and Proposed Building set forth in Exhibit 4 in Part II of the Plan has been amended. A blackline of the changed pages are set forth in Exhibit D annexed hereto and are hereby deemed inserted therein. All relevant sections of the Plan are hereby deemed amended accordingly.

8.   **Revised Real Estate Tax Opinion of Counsel**

The opinion of counsel prepared by Marcus & Pollack LLP, Real Estate Tax Counsel to Sponsor, and set forth in Section U in Part I of the Plan entitled "Opinions of Counsel" is hereby deemed amended and restated in its entirety as set in Exhibit E annexed hereto. All relevant sections of the Plan are hereby deemed amended accordingly.

9.   **Vestibules**

A new Special Risk No. 38 is hereby deemed inserted in the Plan with respect to the location of, and the responsibility for, vestibules between certain of the Hotel Suite Units as shown on the Floor Plans set forth in Exhibit C annexed hereto. The Declaration and the By-Laws have been amended accordingly. Special Risk No. 38 states as follows:

- 2 -

Vestibules appurtenant to Hotel Suite Units are identified in the Floor Plans set forth in Part II of the Plan. A Vestibule is a Limited Common Element of the Hotel Suite Unit Owners of such Units, and the use thereof shall be subject to and in accordance with the Declaration, By-Laws and Rules and Regulations as in effect from time to time. The doors to the Vestibules will be equipped with locks, and the Vestibules will not be permitted to be used for any purpose other than as a passage between Hotel Suite Units. The Hotel Management Company, at such Hotel Suite Unit Owner's sole cost and expense, will be responsible for all ordinary maintenance and cleaning of its Vestibule; however, the costs and expenses of any repairs or replacements, structural or otherwise (unless caused by or attributable to such Hotel Suite Unit Owner), will be charged to all Unit Owners as a Common Expense.

10. **Plaza**

As described in Special Risk #2 and Section 5(c) in Section B in Part I of the Plan, a portion of the Plaza may be reclassified as a Limited Common Element exclusively appurtenant to the Restaurant Unit under certain circumstances. Said section is hereby deemed amended to provide that a portion of the Plaza may also be reclassified as a Limited Common Element exclusively appurtenant to the Retail Unit. All relevant sections of the Plan are hereby deemed amended. Section 7.5 of the Declaration has been amended accordingly.

11. **Unit Management Agreement**

The last sentence of the second paragraph of Special Risk #13 is hereby deleted in its entirety, and the Unit Management Agreement is deemed amended accordingly.

12. **Department of Buildings Submission**

On or about October 26, 2007, a submission was made to the Board of Standards and Appeals appealing the Department of Buildings determination to uphold the issuance of the building permit for the construction of the Building (the "BSA Appeal"). The BSA Appeal asserts that the Department of Buildings ("DOB") erred in not revoking the permits issued for the proposed hotel because allegedly: (1) the hotel is a residential use and occupancy as opposed to a transient hotel under the City's zoning and building codes; (2) the restrictive declaration (the "RD") entered into by the developer fails to comport with DOB's own rules regarding restrictive declarations; (3) there is prior DOB precedent disallowing a similar hotel in a manufacturing zoning district; and (4) the enforcement mechanism contained in the RD is beyond DOB's authority and expertise to implement and monitor. The DOB previously addressed such assertions and, in its opinion, found them to be either inapplicable, without merit and/or irrelevant, as more particularly set forth in the copy of the Department of Buildings letter which is annexed hereto as Exhibit F. Sponsor believes the BSA Appeal is completely without merit and will be rejected. A copy of the BSA Appeal and the Department of Buildings prior rejection of such assertions is available for inspection at Sponsor's office. The Offering Plan will be further amended to disclose the outcome of the BSA Appeal and any similar subsequent actions.

13. **Stop Work Order**

On January 14, 2008, an accident involving a formwork and supporting scaffolding collapse with respect to the 42nd floor (construction) occurred while construction of the Building was in progress. The accident resulted in one fatality. As a result, the Department of Buildings issued a stop work order. An investigation into the matter is ongoing, and upon completion of same. Sponsor will file a new amendment disclosing the results of same. Sponsor represents that it maintains sufficient insurance (subject to customary deductibles) to cover the costs associated with the accident, including any potential liability with respect thereto. Further, as of the date of this Amendment, Sponsor represents that the anticipated First Closing which is scheduled to occur in or about June 2009 will not be delayed as a result of this occurrence.

14. **Convenience Fee**

Sponsor hereby amends the defined term "Convenience Fee" to be reflected as "Hotel Share". All references to the contrary in the Plan, Declaration, By-Laws and Rules and Regulations are hereby deemed amended.

15. **Definitions**

Except as otherwise herein defined, all capitalized terms used in this Amendment which are defined in the Plan shall have the respective meaning ascribed to such terms in the Plan.

16. **Incorporation of the Plan**

The Plan, as modified and supplemented by this Amendment, and the revised Condominium Documents described herein are incorporated herein by reference with the same force and effect as if set forth at length.

17. **No Material Changes in the Plan**

There have been no material changes in the Plan except as set forth in this Amendment. The Plan, as hereby amended, does not knowingly omit any material fact.

Dated:  January 25, 2008


BAYROCK/SAPIR ORGANIZATION LLC

KL3 2601892.13

# EXHIBIT F

[Department of Buildings Letter]



NYC Department of Buildings
280 Broadway, New York, NY 10007

Patricia J. Lancaster, FAIA, Commissioner

**Mona Sehgal**
General Counsel
Office of the General Counsel
212.566.3353
212.566.3843 fax
monas@buildings.nyc.gov

August 14, 2007

Stuart Klein, Esq.
498 7th Avenue, 8th Floor
New York, NY 10018

Re: 246 Spring Street, Manhattan
NB Job Application No. 10440334

Dear Mr. Klein:

This responds to your July 24, 2007 letter regarding the NYC Department of Buildings ("Buildings") permit issued under Application No. 10440334 for a transient hotel at 246 Spring Street, Manhattan. The proposed hotel is located in an M1-6 zoning district in which Use Group 5 transient hotels are allowed as-of-right and residential uses are prohibited. You raise the following issues each of which are addressed below: (1) that the restrictive declaration dated April 26, 2007 does not comply with LPPN #1/05 because it does not contain language that failure to comply with the terms of the restrictive declaration may result in the revocation of the building permit or certificate of occupancy; (2) that the monetary penalty provision in the restrictive declaration provides an improper financial benefit to Buildings; (3) that the proposed sale of the hotel units violates zoning; and (4) that Buildings allowed construction of the proposed development without "taking note" of the purported SEC restrictions regarding securities.

With respect to the first issue, LPPN #1/05 is inapplicable to this restrictive declaration. As stated in LPPN #1/05, it applies to regulatory restrictive declarations and easements agreements that provide for alternate means of compliance with building code requirements or are necessary for compliance with certain provisions of zoning. Here, the restrictive declaration, which the developer voluntarily signed, is not a regulatory one that was required for compliance with either the building code or zoning. You are also mistaken with respect to the second issue. Any monetary penalty as set forth in section 2.08 of the declaration is expressly made payable to the City of New York, not Buildings.

The third issue - that the sale of hotel units in itself violates zoning - is without merit. The proposed condominium form of ownership that is contemplated for the Use Group 5 hotel does not alter the prohibition against long-term residential occupancy. The proposed hotel remains fully subject to transient use limitations in accordance with zoning. Your reliance on the matter of 848 Washington Street, Manhattan, is misplaced; nothing in Buildings' determination with respect to 848 Washington prohibited individual ownership of hotel units that are occupied in

August 14, 2007

accordance with the transient use requirements. Finally, your claim that Buildings issued a permit without "taking note" of the SEC requirements is irrelevant to the determination that the permit comports with building code and zoning requirements.

I trust this addresses the issues you raise in your letter.

Very truly yours,

Mona Seligal
General Counsel

Cc:    Phyllis Arnold
       Felicia Miller
       Christopher Santulli
       Gabriel Taussig √
       David Karnovsky